## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY
## ASHLAND DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| APPALACHIAN FUELS, LLC | CASE NO. 09-10343 |
| APPALACHIAN HOLDING COMPANY, INC. | CASE NO. 09-10372 |
| APPALACHIAN PREMIUM FUELS, LLC | CASE NO. 09-10373 |
| APPALACHIAN ENVIRONMENTAL, LLC | CASE NO. 09-10374 |
| KANAWHA DEVELOPMENT CORPORATION | CASE NO. 09-10375 |
| APPALACHIAN COAL HOLDINGS, INC. | CASE NO. 09-10405 |
| SOUTHERN EAGLE ENERGY, LLC | CASE NO. 09-10406 |
| DEBTORS | |

## DEBTORS' AND COMMITTEES' JOINT DISCLOSURE STATEMENT TO ACCOMPANY JOINT PLAN OF ORDERLY LIQUIDATION AND DISTRIBUTION

This Disclosure Statement ("Disclosure Statement") and the accompanying ballots are being furnished by the Debtors, the Committee, and the AppPremFuels Committee (the Committee and the AppPremFuels Committee, together being the "Committees" and the Committees, together with the Debtors, being the "Plan Proponents") to the Debtors' Creditors and holders of Interests pursuant to Code §§ 1125(a) and 1126(b) in connection with a solicitation by the Debtors and the Committees of ballots for the acceptance of the Plan of Orderly Liquidation and Distribution ("Plan") under Chapter 11 of the Code.

All capitalized phrases, words or terms as used in this Disclosure Statement, unless the context dictates otherwise, shall have the definitions contained in the Plan, a copy of which is attached hereto as Exhibit 1, which should be read first. All references to docket entries or document numbers shall refer to those filed in the AppFuels Case, except as otherwise provided.

Pursuant to Rule 3018 of the Bankruptcy Rules and the Code, the Bankruptcy Court ("Court") has fixed the close of business on _____ as the record date for the receipt of ballots accepting or rejecting the Plan. This solicitation period for ballots will expire at 5:00 p.m. local time in Lexington, Kentucky on the aforesaid date (the "Voting Deadline"), unless and until the Court, in its discretion, extends the period of time in which ballots may be accepted. EXCEPT TO THE EXTENT ALLOWED BY THE COURT, BALLOTS THAT ARE RECEIVED AFTER THE EXPIRATION OF THE VOTING DEADLINE MAY NOT BE

ACCEPTED OR USED BY THE DEBTOR IN CONNECTION WITH THE DEBTOR'S MOTION FOR CONFIRMATION OF THE PLAN OR ANY MODIFICATION THEREOF.

Pursuant to Code § 1126, certain holders of impaired claims or interests, as determined by the Court, will be entitled to vote to accept or to reject the Plan, or, in some cases, will be deemed to have accepted the Plan without voting.

All Creditors and holders of Interests are advised and encouraged to read this Disclosure Statement and the Plan in their entirety. Plan summaries and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan, any exhibits, and the Disclosure Statement as a whole.

This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan, and nothing contained herein shall constitute an admission of any fact or liability, stipulation, or waiver by the Debtors, or be deemed advice on the legal effect of the Plan on or to any Claimant. Some items of information in this Disclosure Statement are estimates and assumptions which, though made in good faith, may prove not to be true or realistic, and some financial projections may be materially different from actual future experience.

This Disclosure Statement shall not be admissible in any non-bankruptcy proceeding involving the Debtors and any party, nor shall it be construed to be conclusive advice on the tax or other legal effects of the Plan as to Holders of Claims against, or Interests in, the Debtors; provided, however, that in the event the Debtors default under the Plan, the Disclosure Statement may be admissible in a proceeding relating to such default for the purpose of establishing the existence of such default.

Amendments to the Plan's classification of Creditors and treatment of those Classes that do not materially and adversely change the treatment of that Class or the other Classes may be made to the Plan either before or after the Confirmation hearing without re-solicitation of Creditors in the Classes that are not impaired by such an amendment.  Although amendments may occur on or prior to the hearing on confirmation of the Plan resulting in amendments to the Plan, no such amendments are envisioned at this time.

The Debtors are required under Code §1122 to classify the Claims of their Creditors or Interests of their shareholders into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class. While the Plan Proponents believe that they have classified all Claims and Interests in compliance with Code §1122, it is possible that a party may challenge the Plan Proponents classification of such Claims or Interests and the Court may find that a different classification is required for the Plan to be confirmed. In such event, the Plan Proponents may jointly modify the Plan to provide for whatever reasonable classification might be required by the Court for Confirmation and to use the acceptances received from any Creditor pursuant to this Disclosure Statement for obtaining the approval of the Class or Classes in which such Creditor or Interest-holder is ultimately deemed to be a member. Any such reclassification of Creditors and Interests could adversely affect the Class in which such Creditor or Interest was initially a member, or any other Class under the Plan, by changing the composition of such Class and the required vote thereof for approval of the Plan. A reclassification of the Claims of

Creditors and Interests after approval of the Plan could necessitate the re-solicitation of ballots for a completely new plan of liquidation and distribution.

Likewise there are often changes required by the Court in the Plan, which changes arise during the Confirmation hearing. These changes often are technical matters relating to Code provisions; other times they are substantive matters that affect only one or a limited number of Creditors or Interests. If such changes are required to the Plan, the Plan Proponents may make those changes so without obtaining the approval of the Class or Classes affected so long as such change or changes do not materially and adversely affect the rights of other Creditors and Interests.

The statements contained in this Disclosure Statement are made as of the date hereof, and neither the delivery of this Disclosure Statement nor any exchange of rights made in connection with the Plan shall, under any circumstances, create any implication that the information contained herein is correct as of any time subsequent to the date hereof.

This Disclosure Statement has been prepared by the Plan Proponents using financial information and other information available to them from the Debtors and/or other parties, the pleadings, and their preliminary investigations. The valuations placed upon Assets are based upon information provided by the Debtors. **NO INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY AN INDEPENDENT PUBLIC ACCOUNTANT TO THE KNOWLEDGE OF THE PLAN PROPONENTS. THE REPRESENTATIONS IN THIS DISCLOSURE STATEMENT ARE THOSE OF THE PLAN PROPONENTS. NO REPRESENTATIONS CONCERNING THE PLAN PROPONENTS ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THIS PLAN WHICH ARE OTHER THAN AS CONTAINED IN THIS DOCUMENT SHOULD NOT BE RELIED UPON BY ANY PERSON.**

**THE DEBTORS ARE REPRESENTED BY BUNCH AND BROCK, 805 SECURITY TRUST BUILDING, 271 WEST SHORT STREET, LEXINGTON, KENTUCKY 40507. THE APPALACHIAN FUELS, LLC COMMITTEE IS REPRESENTED BY DELCOTTO LAW GROUP PLLC, 200 NORTH UPPER STREET, LEXINGTON, KENTUCKY 40507 AND THE APPALACHIAN PREMIUM FUELS, LLC COMMITTEE IS REPRESENTED BY MILLER GRIFFIN & MARKS, PSC, 271 WEST SHORT STREET, SUITE 600, LEXINGTON, KY 40507. BUNCH AND BROCK, DELCOTTO LAW GROUP PLLC, AND MILLER GRIFFIN & MARKS, PSC, AND THEIR RESPECTIVE ATTORNEYS, HAVE NOT EXPRESSED AN OPINION ON ANY INFORMATION SET FORTH HEREIN. BUNCH AND BROCK, DELCOTTO LAW GROUP PLLC, AND MILLER GRIFFIN & MARKS, PSC HAVE NO ACTUAL KNOWLEDGE OF ANY INFORMATION WHICH WOULD CONFLICT WITH THE INFORMATION SET FORTH HEREIN.**

## THE DISTRIBUTION PROPOSED BY THE PLAN

All of the Debtors' assets have been or will be liquidated during the Chapter 11 process, except the prosecution and collection of the various Causes of Action being prosecuted by the Committee and its litigation counsel.   After Confirmation of the Plan, the Debtors' CLO, who holds only cash, will pay funds held by him in cash to the AppFuels Liquidating Trust and to the AppPremFuels Committee Counsel pursuant to an allocation formula defined in the Plan and described in this Disclosure Statement.   Net proceeds from the collections from the prosecution of the Causes of Action will also be paid over to the Liquidating Trust or the AppPremFuels Committee Counsel, as their interests may appear.

The Liquidating Trustee and the AppPremFuels Committee Counsel will reserve funds to pay for the administration of the two succeeding entities, their professionals, U.S. Trustee fees and related expenses.   At some point in time (normally after reconciliation of all outstanding Creditors' Claims, distribution will be made to the Creditors in the order of the priorities set forth in the Plan.   Distributions will continue until all funds are exhausted, at which time the Liquidating Trust shall terminate and the AppPremFuels Committee Counsel shall be discharged of his duties.

The Debtors and the Committees believe this Plan accounts for the various rights of the multiple Classes of Creditors.   They unanimously recommend a vote favorable to Confirmation of the attached Plan.

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................ 8
       A.    General ................................................................ 8
       B.    Purpose of Disclosure Statement .......................... 8

II.    HISTORY OF THE DEBTOR .......................................... 9
       A.    Background AND Events Preceding the Bankruptcies .......... 9
       B.    Activities During Chapter 11 ................................ 10
       C.    Litigation ...................................................... 13
       D.    Future Operations............................................. 14

III.   RECOMMENDATION OF THE DEBTOR .................... 14

IV.   THE PLAN ................................................................ 14
       A.    Concept of the Plan ........................................... 14
       B.    Classification and Treatment of Claims and Interests .............................15

V.    BACKGROUND OF THE DEBTOR ............................ 19

VI.   METHODS OF EFFECTING PAYMENTS TO CLASSES .......... 19
       A.    Duties of Liquidating Trustee and, as applicable, the AppPremFuels Committee Counsel............................................. 19
       B.    Transfer of the AppPremFuels Funds ........................ 20
       C.    Transfer of Assets to the AppFuels Creditors Trust ................. 20
       D.    Establishment of Liquidating Trust ......................... 20
       E.    Distributions from the Liquidating Trust (and AppPremFuels Funds).... 23
       F.    Post-Effective Date Involvement of Professionals ................... 26

VII.  PROVISIONS FOR ENVIRONMENTAL WORK ...................... 27

VIII. TREATMENT OF EXECUTORY CONTRACTS ................... 27
       AND UNEXPIRED LEASES

IX.   LEGALLY BINDING EFFECT; DISCHARGE OF ................. 28
       CLAIMS AND INTERESTS

X.    MODIFICATION OF THE PLAN ................................ 28

XI.   JURISDICTION OF THE BANKRUPTCY COURT ................. 28

XII.  CLAIMS AND CAUSES OF ACTION ........................... 29

XIII.   FEASIBILITY OF THE PLAN ....................................................................... 30
        A.      Discussion of Feasibility ..................................................... 30
        B.      Disclaimer of Projections ..................................................... 30

XIV.    VOTING PROCEDURES AND REQUIREMENTS ..................................... 31
        A.      Ballots and Voting Deadline ................................................. 31
        B.      Classes Entitled to Vote ....................................................... 31
        C.      Vote Required For Class Acceptance ................................... 32
        D.      Confirmation Hearing ........................................................... 32
        E.      Requirements for Confirmation of the Plan............................. 32
                of the Plan
        F.      Conditions Precedent to Confirmation ................................. 34
        G.      Effect of Confirmation ......................................................... 35
        H.      Incorporation of Exhibits....................................................... 35

XV.     CONCLUSION ........................................................................................... 35

**INDEX TO EXHIBITS**

1. Joint Plan
2. Liquidating Trust Agreement
3. List of Active Litigation and Potential Litigation Targets
4. Methodology for Allocation of Funds Between AppFuels and AppPremFuels
5. Liquidation Analysis

# I. INTRODUCTION

## General

The Plan Proponents are furnishing this Disclosure Statement and ballots to all the Debtors' Creditors and Interest holders as of the date hereon pursuant to Code §§ 1125 and 1126 and Bankruptcy Rule 3018 for the purpose of soliciting ballots from the holders of Claims in Impaired Classes for the acceptance of the Plan. As required by the Code, confirmation of a reorganization plan pursuant to Chapter 11 depends upon receipt of a sufficient number of votes in favor of the Plan. **YOUR VOTE IS IMPORTANT**.

The Plan is being jointly proposed by the Plan Proponents after extensive negotiations and editing.

The Confirmation of the Plan described herein is subject to other conditions in addition to the acceptances by one or more Classes of Impaired Creditors and there can be no assurance that such Plan will be confirmed or ultimately consummated.

This Disclosure Statement describes various transactions contemplated under the Plan. **A copy of the Plan is attached hereto as Exhibit 1 and is made a part of this Disclosure Statement**. The following overview is qualified in its entirety by the specified information contained in the Plan, and the terms and phrases defined in the Plan are used in this Disclosure Statement. You are urged to read carefully the entire Plan and to consult with your attorney about the Plan and its impact upon your legal rights prior to voting for or against the Plan. Any inconsistency between statements in this Disclosure Statement and terms in the Plan shall be governed by the terms of the Plan.

## A.  Purpose of Disclosure Statement

The Debtors could not feasibly reorganize as a going concern and have systematically liquidated their assets during the pendency of the Cases. The Plan Proponents believe that the Plan will provide for the Debtors' Creditors with the maximum possible recovery from the Debtors' collected assets and the funds that may be derived from the prosecution of the Causes of Action.

For a Class of Claims to accept the Plan, votes representing at least two-thirds in amount and more than half in number of Claims voting in that Class must be cast votes in favor of acceptance of the Plan with regard to each Debtor. If, upon the expiration of the Voting Deadline, the Debtors receive ballots approving the Plan from the requisite number of holders of Claims in each Class of Impaired Classes voting on the Plan, the Debtors, subject to certain conditions described herein, will move the Court for confirmation of the Plan. For the Plan to be confirmed, the Plan must be accepted by at least one Impaired Class of Claims or Interests with regard to each Debtor. A Claim that will not be repaid in full or as to which legal rights are altered, or an

interest that is adversely affected, is "impaired." Generally, a holder of an impaired Claim or Interest is entitled to vote to accept or reject the Plan if such Claim or Interest has been at least provisionally allowed under Code § 502. Certain impaired Creditors may not be authorized to vote because their Class will be legally deemed to have voted to reject or to accept the Plan.

The Plan Proponents also believe that this Disclosure Statement contains information that is in compliance with the "adequate information" requirement of Code § 1125(a). Under the Code, the solicitation of acceptances of a plan of reorganization or plan of liquidation must be preceded or accompanied by disclosure materials containing information of a kind, sufficient in detail, to enable solicited Creditors to make informed judgments about the Plan and the acceptance or rejection thereof. The Plan Proponents believe that this Disclosure Statement contains information that is sufficient to enable the Debtors' impaired Creditors to make an informed judgment in regard to the Plan, and to the best of the Plan Proponents' knowledge, the contents of this Disclosure Statement are accurate and complete in all material respects.

## II.  HISTORY OF THE DEBTORS

### A.  Background and Events Preceding the Bankruptcies

AppFuels was organized as a Kentucky limited liability company on January 12, 2001. The May 20, 2009 Annual Report filed with the Kentucky Secretary of State listed Stephen Addington as the sole member. AppFuels' principal place of business as listed on the May 20, 2009 Annual Report was 1500 N. Big Run Rd., Ashland, Kentucky 41102.

AppHold, a foreign corporation incorporated in the State of Delaware, filed its Application for Certificate of Authority on October 26, 2005 with the Kentucky Secretary of State. The initial officers were Stephen Addington, President, Jeffrey L. Muncy, Vice President and Julie Hudson, Secretary. The May 20, 2009 Annual Report filed with the Kentucky Secretary of State listed the officers as Stephen Addington, President; Gregory L. Mason, Vice President; and Julie Hudson, Secretary. AppHold's principal place of business as listed on the May 20, 2009 Annual Report was 1500 N. Big Run Rd., Ashland, Kentucky 41102.

AppPremFuels is a foreign limited liability company organized in the State of West Virginia on September 1, 2004. At the time of formation, the name of the company was Appalachian UG Mining, LLC, and the manager was John C. Smith, Jr.  The name of AppPremFuels was changed to its present form effective October 4, 2004.  The May 20, 2009 Annual Report filed with the Kentucky Secretary of State listed the current manager as Stephen Addington. AppPremFuels' principal place of business as listed on the May 20, 2009 Annual Report was 1500 N. Big Run Rd., Ashland, Kentucky 41102.

AppEnv is a Kentucky limited liability company formed on October 1, 2003. The organizer was John C. Smith, Jr. The May 20, 2009 Annual Report filed with the Kentucky Secretary of

State listed the sole member as Stephen Addington. AppEnv's principal place of business as listed on the May 20, 2009 Annual Report was 1500 N. Big Run Rd., Ashland, Kentucky 41102.

KanDevCorp is a West Virginia corporation formed March 17, 1993. According to the West Virginia Secretary of State's website, the most recent officers were Stephen Addington, President; Gregory L. Mason, Vice President; and Julie Hudson, Secretary. KanDevCorp's principal place of business was 1500 N. Big Run Rd., Ashland, Kentucky 41102.

AppCoalHold is a Kentucky corporation formed on October 8, 2003. The May 20, 2009 Annual Report filed with the Kentucky Secretary of State listed the officers as being Stephen Addington, President; Gregory L. Mason, Vice President; and Julie Hudson, Secretary. AppCoalHold's principal place of business as listed on the May 20, 2009 Annual Report was 1500 N. Big Run Rd., Ashland, Kentucky 41102.

SouthEagle is a West Virginia Limited Liability corporation formed on May 10, 2009. Its initial manager was Stephen Addington. SouthEagle's principal place of business was 1500 N. Big Run Rd., Ashland, Kentucky 41102.

Stephen Addington, Gregory L. Mason, and Julie M. Hudson have resigned their positions as officers of the above-described entities.

On May 26, 2009, Stephen Addington, as President of AppHold and each of its subsidiaries caused AppHold and thirteen affiliated companies[1] to execute a Trust Agreement and Assignment for the Benefit of Creditors of Appalachian Holding Company, Inc. and its Subsidiaries and Deeds of Assignment assigning their assets to James H. Frazier, III, as Assignee. On the following day, James H. Frazier, III, was appointed Assignee by the Fayette District Court (Kentucky) in the ABC Action.

On June 11, 2009, three Petitioning Creditors (RAMCO Trucking, Inc., Philip Morris USA Inc., and Kentucky Oil and Refining Company) filed an involuntary Chapter 7 petition for relief against AppFuels pursuant to Code § 303 [Doc. No. 1].

## B.  Activities During Chapter 11

Two weeks later, on June 26, 2009, the Assignee caused voluntary Chapter 11 petitions to be filed for AppEnv (Case No. 09-10374); AppHold (Case No. 09-10372); AppPremFuels (Case No. 09-10373); and KanDevCorp (Case No. 09-10375). Thereafter, on July 9, 2009, voluntary Chapter 11 petitions were filed on behalf of debtors SouthEagle (Case No. 09-10406) and AppCoalHold (Case No. 09-10405).

---

[1]        In addition to the seven Debtors, Appalachian Ventures, LLC; Appalachian Fuels Services, LLC; Mega Mining, LLC; Appalachian Resources, LLC; Bryant Mining Company, LLC; Appalachian Land Company; and Huff Creek Energy Company were parties to the ABC Action.

Also on June 26, 2009, AppFuels filed a motion to convert its Case to a case under Chapter 11 of the Code [Doc No. 99]. On June 29, 2009, the Chapter 7 Order for Relief [Doc. No. 117] was entered and on July 2, 2009, the Court entered an Order Converting the case to a Chapter 11 case [Doc. No. 144]. On July 2, 2009, James H. Frazier, III was appointed CLO [Doc. No. 147]. The Debtors employed Bunch & Brock as their counsel for bankruptcy matters in the Chapter 11 Case [Doc. No. 256] and McBrayer, McGinnis, Leslie & Kirkland PLLC as Special General Counsel [Doc. No. 257]. During the course of the Case, the Debtors employed various other professional consultants, realtors, and auctioneers.

On July 14, 2009, the United States Trustee appointed the Committee [Doc. No. 194] pursuant to Code § 1102(a). The Committee retained the DelCotto Law Group PLLC as its bankruptcy counsel [Doc. No. 356], Development Specialists, Inc. ("DSI") as its financial advisor [Doc. No. 338], Gess Mattingly & Atchison, PSC as special conflicts counsel [Doc. No. 675], Diamond McCarthy LLP ("Diamond McCarthy") as Special Litigation Counsel for Related Party Claims [Doc. No. 876] and additional experts for document review and forensic accounting [Doc. No. 1389].

On July 14, 2009, the United States Trustee appointed the AppPremFuels Committee [AppPremFuels Doc. No. 15] pursuant to Code § 1102(a). The AppPremFuels Committee retained Miller, Griffin & Marks PSC as its bankruptcy counsel [AppPremFuels Doc. No. 49].

During the pendency of the Cases, the Debtors, the CLO and the Professionals sold nearly all of the Debtors' assets. The following is a list of substantially all post-petition sales:

- By Order dated October 13, 2009 [Doc. No. 604] the Court approved the employment of Robert M. Craycraft as Realtor to sell Debtors' Real Property in Boyd County, including:  8010 Lake Bonita Road, Catlettsburg, Kentucky and 14350 Twin Ridge Road, Cannonsburg, Kentucky.   In the Boyd County Residence Sale [Doc. No. 910], $48,537.74 was brought to the estates. In the Boyd County Office Building Sale to Mining Services, LLC [Doc. No. 923], $325,000 was brought to the estates.

- By Order dated November 5, 2009 [Doc. No. 710] the Court approved the employment of James R. Gambill as Realtor to sell Debtors' Real Property in Pike County, consisting of three tracts of real estate in Ransom, Pike County, Kentucky, known as 1352 Big Blue Springs, 1462 Big Blue Springs, and 1486 Big Blue Springs. The Pike County Real Estate was sold to various parties [Doc. No. 840] and which sales brought $52,500 to the estates.

- In the Ritchie Brothers Auction (Sale No. 1) [Doc. No. 626], the majority of the Debtors' mining equipment was sold by Ritchie Bros and which sale brought $4,921,519.25 to the estates.

- In the Alloy Sale (Sale No. 2) [Doc. No. 552], the Debtors sold certain assets, and

certain leases were assumed and assigned, to A. T. Massey Coal Co. The Alloy Sale brought $5,112,692.00 to the estates. The Alloy Sale included twenty-two (22) permits with a total bond exposure amount of $15,062,112 and an estimated reclamation risk on the ground of $3,663,290. All permits related to the Alloy property were sold to the A.T. Massey Coal Company, with the exception of the Remaining Alloy Permits. Lyndon was released from liability on its bonds related to the Remaining Alloy Permits and $979,192 was placed in escrow with the West Virginia Parties to account for Remaining Alloy Permits.

- In the Dante Sale (Sale No. 3) [Doc. No. 667], the Debtors sold their interests in the Dante Mining Complex in Alloy, West Virginia. Certain leases were assumed, cured, and assigned, and certain permits were sold to A. T. Massey Coal Co. The Dante Sale brought $6,100,000 to the estates. The sale of the Dante property included six (6) permits with a total bond exposure amount of $1,276,103 and an estimated reclamation risk on the ground in the amount of $436,700. Lyndon has or will be released from liability on its bonds when the Dante reclamation bonds are replaced.

- In the Bent/Bevins Sale (Sale No. 4) [Doc. No. 659], the Debtors sold their interests in the Bent Mountain and Bevins Branch coal mines, certain leases were assumed, cured, and assigned and certain permits were sold to The New London Tobacco Market Inc.. The Bent/Bevins Sale brought $310,000 to the estates. The Bent/Bevins Sale included three (3) permits with a total bond exposure amount of $5,111,500 and an estimated risk on the ground of $5,111,500. The Bevins Branch property consisted of one permit with a total bond exposure amount of $4,723,000 with an estimated risk on the ground being greater than or equal to the bond amount. Collectively, the properties had a combined bond exposure amount of $4,723,000 and reclamation risk on the ground of $9,834,500. Lyndon has or will be released from liability on its bonds when the Bent Mountain and Bevins Branch reclamation bonds are replaced.

- In the M-21/Hannco Sale (Sale No. 5) [Doc. No. 832], the Debtors sold their interests in M-21 and Hannco Liabilities to Revelation Energy LLC. The M-21/Hannco Sale brought $10,000 to the estates. The M-21/Hannco Sale included one (1) permit with a total bond exposure amount of $5,181,400 and an estimated risk on the ground of $4,434,816.  Additionally, Revelation Energy LLC assumed permits known as the "non-Rowdy" permits with total bond exposure amounts of $3,015,600 and estimated reclamation risk on the ground of $979,144. Lyndon has or will be released from liability on its bonds when the M-21/Hannco reclamation bonds are replaced.

- In the Mining Services, LLC Sale (Sale No. 6) [Doc. No. 674], the Debtors' mining equipment which was not sold in the Ritchie Brothers Auction Sale No. 1 was sold to Mining Services, LLC, and which sale brought $825,000 to the estates.

- In the WV-3 Sale (Sale No. 7) [Doc. No. 1269], the Debtors' interest in WV-3 was sold to Greenthorn, LLC. The WV-3 Sale brought $20,000 to the estates. The WV-3 sale

included three (3) permits with a total bond exposure amount of $1,972,640 and an estimated reclamation risk on the ground of $910,000. Lyndon has or will be released from liability on its bonds when the WV-3 reclamation bonds are replaced.

- In the K-2 Sale (Sale No. 8) [Doc. No. 1270), the Debtors' interest in K-2 was sold to Greenthorn, LLC. The K-2 Sale brought $20,000 to the estates. The K-2 Sale included five (5) permits with a bond exposure amount of $1,657,700 and an estimated reclamation risk on the ground of $1,057,890. Lyndon has or will be released from liability on its bonds when the K-2 reclamation bonds are replaced.

- In the WV-1 Sale (Sale No. 9) [Doc. No. 1683), the Debtors' interest in WV-1 is expected to be sold to Argus Energy, LLC. The WV-1 Sale included three (3) permits with bond exposure amounts of $2,740,008 and an estimated reclamation risk on the ground of $1,863,361. Lyndon has or will be released from liability on its bonds when the WV-1 bonds are replaced.

- Additionally, the Debtor has engaged in certain *de minimis* sales pursuant to a Court Order establishing procedures for such *de minimis* sales [Doc. No. 740]. Such *de minimis* sales have brought at least $7,500 to the Debtors' estates.

As evidenced by the above (excluding the WV-1 Sale) as well as the sales noticed and approved by the Court, the Debtors have reduced the outstanding face amount of the prepetition bond amounts by no less than $17,704,211.25 and reduced the estimated risk on the ground by $18,744,885.

## C.  Litigation

The Court has entered orders conferring standing upon the Committee to investigate, prosecute, enforce, settle, adjust, collect or otherwise dispose of claims of the Debtors, including but not limited to, claims of the Debtors arising under Chapter 5 of the Code, and to avoid and recover certain transfers made by the Debtors. [Doc. Nos. 907, 933, and 1480].

Diamond McCarthy, LLP ("Diamond McCarthy") was retained as Special Litigation Counsel for Related Party Claims [Doc. No. 876] and additional experts have been retained for document review and forensic accounting [Doc. No. 1389].

Since its appointment, Diamond McCarthy has been identifying and investigating potential causes of actions to assert on behalf of the Estates. Prior to the filing of this Disclosure Statement, Diamond McCarthy's work has resulted in a settlement of $1,000,000 from MST Aviation, LLC to settle the claims asserted in Adversary No. 10-01006, styled *Official Committee of Unsecured Creditors of Appalachian Fuels, LLC v. MST Aviation, LLC* with respect to a helicopter owned by the Debtors and sold to MST for less than reasonably equivalent value.

DelCotto Law Group PLLC and Gess Mattingly Atchison, PSC were also employed to investigate, prosecute, enforce, settle, adjust, collect or otherwise dispose of Recovery Actions (as such term is defined in Doc. No. 1509).

The Committee has filed a number of additional adversary actions or entered into tolling agreements with certain targets of Causes of Action and which actions are summarized in **EXHIBIT 3** to this Disclosure Statement, which is incorporated herein by reference. Additional informant on these claims may be found by reviewing the docket in the AppFuels bankruptcy and each individual adversary proceeding.

### D.  Future Operations

The Debtors have ceased all coal mining operations and no future operations are contemplated by the Plan.

### III.  RECOMMENDATION OF THE PLAN PROPONENTS

The Plan Proponents have approved the terms of the Plan and believe that the Plan is in the best interests of all of the Creditors; will permit the maximum recovery for all Classes of Claims; and is the fairest method of distribution of the AppFuels' Assets and the AppPremFuels Funds. The Plan Proponents believe all Classes voting will support the Plan with favorable votes on the Plan.

### IV.  THE PLAN

Set forth below is a brief description of the Plan which highlights its major terms and provisions. The following description is qualified in its entirety by reference to the Plan itself, a copy of which is attached hereto as Exhibit 1.

### A.  Concept of the Plan

The concept of the Plan is to allow the Creditors of AppFuels and AppPremFuels to receive distributions based on the priority of their Claims to the extent funds are attributable to each of these Debtors. Because all of the Debtors' scheduled assets of value have been liquidated, only cash remains, along with potential recoveries from prosecution of the Causes of Action. None of the other five Debtors had any assets listed in its Schedules and/or did not realize proceeds from the Debtors' liquidation sales and their Creditors will receive no distribution under the Plan. A detailed explanation of the formula for allocating net liquidation proceeds is attached hereto as **EXHIBIT 4**; an abbreviated summary of said formula follows using information available as of August 8, 2011 (the "Calculation Date"):

1. According to the check register reflecting all receipts and disbursements made by the Debtors from the Petition Date through the Calculation Date. The gross receipts received by the CLO during this period are approximately $22,065,212.

2. Utilizing the Debtors' fixed asset ledgers, the Debtors' gross receipts between AppFuels and AppPremFuels based on the ownership of the assets sold. Of all receipts received by the CLO, $19,465,903 (or 88.21%) was allocated to AppFuels and $2,599,309 (or 11.78%) was allocated to AppPremFuels.

3. From the gross receipts, DSI then allocated administrative expenses and Professional Claims using the same percentages provided in the preceding paragraph. Through the Calculation Date, total administrative expenses were $7,284,209 and total Professionals' Claims incurred were $5,859,412. Together, disbursements through the Calculation Date, totaled $13,143,621, leaving net receipts of $8,921,591. Based on the foregoing proration, $11,595,285 of disbursements are attributed to AppFuels and $1,548,336 of disbursements are attributable to AppPremFuels.

4. After reducing the amounts attributable to AppFuels and AppPremFuels to account for total disbursements, the net receipts allocable to AppFuels are $7,870,617 and the net proceeds allocable to AppPremFuels are $1,050,973. The amount attributable to AppPremFuels constitutes the beginning balance of the AppPremFuels Funds and the amount attributable to AppFuels constitutes the beginning balance of the Liquidating Trust, both subject to the reductions set forth below.

5. The amounts listed in paragraph 4 are subject to further reduction by Professionals' Claims and Allowed Administrative Claims incurred or allowed from the Calculation Date through the Effective Date which shall be allocated using the same percentages set forth in paragraph 2 above. Upon the Effective Date, the Debtors' CLO will distribute the two allocations to the Liquidating Trust and to the AppPremFuels Committee Counsel. Any United States Trustee's Fees, Professionals' Claims or Allowed Administrative Claims incurred but not paid by the Debtors prior to the Effective Date shall be paid by the Liquidating Trustee and the AppPremFuels Committee Counsel using the same percentages set forth in paragraph 2 above. The funds remaining after these payments will ultimately be distributed pursuant to the terms of the Plan.

6. After the Effective Date, the Liquidating Trustee will pay or turn over to the AppPremFuels Committee Counsel the net litigation proceeds from the collections on the litigation of the Causes of Action that are attributable to AppPremFuels, as AppPremFuels' interests may appear.

## B.  Classification and
### Treatment of Claims and Interests

- 15 -

Code § 1123 provides that a plan of reorganization shall classify the claims of each respective Debtor's Creditors and Interest holders. The Plan divides Claims and Interests into Classes and sets forth the treatment afforded to each Class. Under the Plan, each Claim or Interest is either unimpaired or impaired. A Claim is unimpaired under the Plan if the Plan (i) leaves unaltered the legal, equitable and contractual rights of the holder of such Claim, (ii) provides for cash payment of the full amount of such Claim on the effective date of the Plan or (iii) notwithstanding any contractual provision or law that entitles the holder of the Claim to demand or receive accelerated payment after the occurrence of a default, cures any such default, reinstates the maturity of the Claim as it existed before the default, and compensates the holder of the Claim for any damages incurred as a result of any reasonable reliance by such holder on any provision or law that entitles the holder of such Claim to demand accelerated payment. All Claims that are not unimpaired by the definition set out above are impaired. As discussed below, only the Creditors that are or may be impaired under the Plan are entitled to vote to accept or reject the Plan, excepting those impaired creditors who will be legally deemed to have voted to reject the Plan.

Similarly, Code § 1123(a)(4) requires that a plan must provide the same treatment for each Claim or interest of a particular Class, unless the holder of a particular Claim or interest agrees to a less favorable treatment of its Claim or Interest. The Plan Proponents believe that they have complied with Code § 1123(a)(4).

The following is a summary of the various Classes of Creditors' Claims of the respective Debtors under the Plan and of the payment provisions made therein for each Class.

<u>Unclassified Claims</u>

The Unclassified Claims comprise the various Claims granted priority under Code §§ 503(b) and 507(b) and all fees and charges assessed against the estate under Chapter 123 of Title 28, United States Code, including the U.S. Trustee's fees. Such fees and expenses normally include all allowances of compensation and reimbursement of expenses to the extent allowed by the Code for attorneys, accountants and other professionals designated in the Plan as "Professionals."

<u>Professionals</u>. All Professionals seeking payment of Professional Claims must file their respective requests for allowance and payment thereof no later than thirty (30) days after the Effective Date.  Professionals who do not file and serve a request for allowance and payment by the aforesaid bar date will be forever barred from asserting such Claims; provided, however, that Professionals who have previously had their Claims Allowed by Court Order do not need to file any further Application or request for Allowance unless the amount they are seeking has increased subsequent to entry of said Order.  Any Allowed Professional Claim will be paid by the Liquidating Trust or AppPremFuels Committee Counsel, as appropriate, after entry of a Final Order allowing such Claim, before any distribution to those Claims treated under Plan Article IV.

The U.S. Trustee Fees. All U.S. Trustee fees due and owing for all Debtors will be paid in full on or before the Effective Date by the CLO.  The Liquidating Trustee will pay the post-Effective Date U.S. Trustee fees for AppFuels in the ordinary course as they are incurred until its Case is converted, dismissed or closed, whichever occurs first. AppPremFuels Committee Counsel will pay the post-Effective Date U.S. Trustee's fees from the AppPremFuels Funds, in the ordinary course as they are incurred until its Case is converted, dismissed or closed, whichever occurs first.   Upon the Effective Date, the obligations to pay U.S. Trustees fees in the KanDevCo, AppCoalHold, AppHold, AppEnv and SouthEagle will end.

Administrative Claims. Each Claimant, other than Professionals, holding an Administrative Claim will receive either: (i) the amount of such Claimant's Allowed Administrative Claim in one cash payment on the Effective Date or as soon thereafter as is practicable if the Claim is Allowed as of the Effective Date; (ii) the amount of such Claimant's Allowed Administrative Claim shall be paid as soon as practicable if the Claim becomes an Allowed Administrative Claim after the Effective Date; or (iii) such other treatment agreed upon by the Liquidating Trustee or the AppPremFuels Committee Counsel and such Claimant. All Claimants seeking payment of Administrative Claims must file their respective requests for allowance and payment thereof no later than thirty (30) days after the Effective Date.

Debtors' Claims and Classification

The Debtors have various and different Claims asserted against them, determined by the Plan to be Classified Claims.  These Claims are treated differently in the Plan in conformity with the priorities set forth in the Code.   These Classifications and the estimated amounts of Claims in each Class are set forth as follows:

**AppFuels**

| | |
|---|---|
| Class 1 – Commonwealth of Kentucky | $0 |
| Class 2 – State of West Virginia | $0 |
| Class 3 – Lyndon | $0 |
| Class 4 – CTB Secured Claim | $0 |
| Class 5 – Town Square Bank Secured Claim | $0 |
| Class 6 – Heritage Bank Secured Claim | $0 |
| Class 7 – Other Secured Claims | $7,484,601 |
| Class 8 – Priority Wage Claims | $2,705,455 |
| Class 9 – Priority Medical Claims | $275,305 |
| Class 10 – Priority Tax Claims | $838,141 |
| Class 11 – Unsecured Claims | $279,461,969 |
| Class 12 – Intercompany Claims | |
| Class 13 – AppHold Interest | $0 |

**AppPremFuels**

|  |  |
|---|---|
| Class 1 - Commonwealth of Kentucky | $0 |
| Class 2 – State of West Virginia | $0 |
| Class 3 – Intentionally Omitted | |
| Class 4 – All Other Secured Claim | $1,975,570 |
| Class 5 – Priority Wage Claims | $279,052 |
| Class 6 – Priority Medical Claims | $51,570 |
| Class 7 – Priority Tax Claims | $589,582 |
| Class 8 – Unsecured Claims | $9,300,101 |
| Class 9 – Intercompany Claims | |
| Class 10 – AppFuels Interest | |

**AppHold**

|  |  |
|---|---|
| Unsecured Claims | $282,929 |

**SouthEagle**

|  |  |
|---|---|
| Priority Claims | $10,668 |

**KanDevCo**

|  |  |
|---|---|
| Secured Claims | $2,599,324 |
| Unsecured Claims | $3,475,086 |

**AppEnv**

|  |  |
|---|---|
| Unsecured Claims | $104,901 |

**AppCoalHold**

|  |  |
|---|---|
| Priority Claims | $200 |
| Unsecured Claims | $4,386 |

Under the Plan, distribution will be made to creditors of AppFuels and AppPremFuels in the order of priority established by the Code. No distributions will be made to the Creditors of AppHold, SouthEagle, KanDevCo, AppEnv and AppCoalHold, and treatment of the various Claims will be as follows:

A.    AppFuels.  Creditors in AppFuels Class 1 and AppFuels Class 2 will receive no distribution from the Liquidation Trust. The AppFuels Class 3 Claims will be determined by the outcome of the Lyndon Adversary; similarly, the Claims of Creditors in AppFuels Classes 4, 5 and 6 will be determined based on the adjudication of the Lyndon Adversary.  AppFuels Class 7 Creditors that hold Allowed Claims will receive the value of their Claim at such time as funds are available. Allowed Claims of Creditors in AppFuels Classes 8, 9, and 10 will be paid in full an amount equal to their Allowed Claim; if, however, there are insufficient funds to pay all such Allowed Claims in Full, then such Allowed Claims shall be paid Pro Rata at such time as funds are available. AppFuels Class 11 Allowed Claims shall receive Pro Rata payments from the

Liquidating Trust following payment in full of the Allowed AppFuels Class 10 Claims at such time as funds are available. The AppFuels Classes 12 and 13 are impaired and are deemed to have rejected the Plan.  No property will be distributed to or retained by the holders of Interests in AppFuels Classes 12 or 13 on account of such Interests, and upon the Effective Date, such Interests shall be nullified and any Claim related thereto shall be deemed disallowed.

B.      AppPremFuels. Creditors in AppPremFuels Class 1 and AppFuels 2 will receive no distribution from the AppPremFuels Funds. AppPremFuels Class 4 Creditors that hold Allowed Claims will receive the value of their Allowed Claim at such time as funds are available. Creditors in AppPremFuels Classes 5,6 and 7 will be paid in full an amount equal to their Allowed Claim; however, if there are insufficient funds to pay all such Allowed Claims in full, then such Allowed Claims shall be paid Pro Rata at such time as funds are available.   AppPremFuels Class 8 Claims shall receive Pro Rata payments from the AppPremFuels Funds following payment in full of the Allowed AppPremFuels Class 7 Claims at such time as funds are available. The AppPremFuels Classes 9 and 10 are impaired and are deemed to have rejected the Plan.  No property will be distributed to or retained by the holders of Interests in AppPremFuels Class 9 or 10 on account of such Interests, and upon the Effective Date such Interests shall be nullified and any Claim relating thereto shall be deemed disallowed.

## V.  BACKGROUND OF THE LIQUIDATING TRUSTEE
## AND THE APPPREMFUELS COMMITTEE COUNSEL

A.      Liquidating Trustee - Development Specialists, Inc. Development Specialists, Inc. (DSI) is a national turnaround management and consulting firm headquartered in Chicago, IL. DSI has over thirty years experience in providing management and consulting services to lending institutions, secured and unsecured creditors, shareholders, bondholders, and business owners DSI regularly serves in post confirmation trust positions in cases across the country.  More information on DSI and its expertise can be found at www.dsi.biz.

B.      AppPremFuels Committee Counsel – Miller, Griffin & Marks, PSC. Miller, Griffin & Marks, PSC is a Lexington, Kentucky law firm with extensive experience representing both individuals and business entities in debt disputes.  It has over 30 years experience in bankruptcy and insolvency matters, with a focus on creditors' rights.  It routinely represents contractors, vendors, suppliers, guarantors, landlords, homeowner associations, and financial institutions in bankruptcy, federal, and state court proceedings, including the regular litigation of lien priority, avoidance, preference, and non-dischargeability  matters, as well as the pursuit and defense of claims for fraudulent transfers.

## VI.  METHODS OF EFFECTING PAYMENTS TO CLASSES

A. Duties of Liquidating Trustee and, as applicable, the AppPremFuels Committee Counsel

The Plan provides that the CLO will deliver to the Liquidating Trustee all Assets and to the AppPremFuels Committee Counsel all the AppPremFuels Funds. Thereafter, the Liquidating Trustee for AppFuels and the AppPremFuels Committee Counsel for AppPremFuels shall be charged with carrying out the terms of the Plan.

Transfer of the AppPremFuels Funds: On the Effective Date, the CLO will deliver or pay over to the AppPremFuels Committee Counsel all of the AppPremFuels Funds in his possession to AppPremFuels Committee Counsel. The AppPremFuels Committee Counsel will have all rights, responsibilities and duties of the Liquidating Trustee and the Liquidating Trust as set forth in this Plan, solely with respect to the AppPremFuels Funds and Creditors of AppPremFuels, except neither AppPremFuels nor the AppPremFuels Committee Counsel will have any right to (i) pursue any Causes of Action, (ii) assert any claim against any of the other Debtors, their Professionals, or the Liquidating Trust, (iii) dissolve AppPremFuels or (iv) make any claim against Lyndon, the CTB Collateral, the Heritage Bank Collateral, or the Town Square Bank Collateral. Post-Confirmation, the Liquidating Trustee will pay to the AppPremFuels Committee Counsel any net litigation proceeds that are attributed to AppPremFuels, as AppPremFuels' interests may appear. All such assets transferred to the AppPremFuels Committee Counsel will be subject to the Allowed Claims of the AppPremFuels' Creditors and the terms of this Plan.   AppPremFuels Committee Counsel is appointed as representative of the AppPremFuels estate under Code §1123(b)(3)(B), but will not be subject to the provisions of Plan §§ 6.3, 6.6, 6.7.4, 6.7.6 and 6.12 of this Plan, except as otherwise specifically referred to by the terms of the Plan.

Transfer of Assets to the AppFuels Creditors Trust.    On the Effective Date, the Debtors grant, release, transfer, convey and deliver to the Liquidating Trustee and its successors, to be held in trust and to be applied as specified in the Plan, the Confirmation Order, and this Liquidating Trust Agreement, the Liquidating Trust Assets.   Through the transfer of each Estate's assets, and except as otherwise provided herein or in the Plan, such assets are Liquidating Trust Assets and the Liquidating Trust has the sole and exclusive right, title and interest in and possession of the Liquidating Trust Assets.

Establishment of Liquidating Trust: The terms of this paragraph and all bullets thereunder are not applicable to the AppPremFuels Committee Counsel.   On the Effective Date, AppFuels will execute the Liquidating Trust Agreement in substantially the form attached as Exhibit 2 to the Disclosure Statement.   The Liquidating Trust Agreement will be incorporated into the Plan. The terms of the Liquidating Trust Agreement shall control over the summary below. The Liquidating Trustee will be authorized and directed to take all steps necessary in furtherance of the Plan and fulfillment of the purpose of the Liquidating Trust.   On the Effective Date, the Assets and all rights to the Assets will be delivered, transferred to or paid over to the Liquidating Trust. Thereafter all such Assets will be vested in and owned by the Liquidating Trust.

  • Purpose of Liquidating Trust:  The Liquidating Trust shall be established on behalf of and for the sole benefit of the Beneficiaries and for the sole purpose of liquidating the Liquidating Trust Assets and distributing the Liquidating Trust

Assets or proceeds thereof to the Beneficiaries pursuant to the Plan and in accordance with Treas. Reg. § 301.7701-4(d). The Liquidating Trust has no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the sole purpose of the Liquidating Trust. It shall not be the objective or purpose of this Liquidating Trust to, and the Liquidating Trustee shall have no authority to, conduct a trade or business except as reasonable and necessary to, and consistent with, the liquidation of the Liquidating Trust Assets. In particular, the Liquidating Trust, through the Liquidating Trustee, will do the following: (a) accept and place all Liquidating Trust Assets into the Liquidating Trust; (b) litigate and enforce all Causes of Action, claims and interests belonging to the Debtors, Debtors in Possession and/or the Estates in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, including without limitation, Avoidance Actions, (c) administer the Estates and Assets, (d) object to and resolve all Disputed Claims, (e) make all distributions in accordance with the Plan to the extent such distributions are to be made from the Liquidating Trust Assets including the payment of United States Trustee fees accruing in the Chapter 11 Cases after the Effective Date until the termination of the Liquidating Trust, (f) take all actions and executing all agreements, instruments, and other documents necessary to implement the provisions of the Plan, (g) retain professionals and other agents, and (h) take such steps as are reasonable and necessary to accomplish the Liquidating Trust's purpose, all as provided in, and subject to the terms and provisions of, the Plan, the Confirmation Order and this Liquidating Trust Agreement. The Liquidating Trust Assets shall be held for the exclusive and sole benefit of the Beneficiaries and shall only be used to fund distributions to such Beneficiaries in accordance with the Plan and to fund payment of costs, fees, and expenses incurred in connection with the administration of the Liquidating Trust or the Plan.

- <u>Appointment of the Liquidating Trustee</u>. Development Specialists, Inc. will be the trustee of the Liquidating Trust and is appointed as the representative of the AppFuels estate under Code §1123(b)(3)(B). In the event that Development Specialists, Inc. ceases to serve as Liquidating Trustee for any reason, a successor will be designated pursuant to the Liquidating Trust Agreement. Upon the designation of the Liquidating Trustee or successors, the identity and connections of said trustee, if any, with the Debtors, their creditors, any parties in interest in the Bankruptcy Cases or the United States Trustee must be disclosed in writing and filed with the Court.

- <u>Powers of the Liquidating Trustee</u>. The Liquidating Trustee will have the powers, rights and interests of a trustee under Code §1106. The powers of the Liquidating Trustee will include all rights and powers necessary and appropriate to implement the provisions of the Liquidating Trust Agreement

and to administer the Liquidating Trust, including, without limitation, the power to:  (i) administer each Debtor's estate (but not AppPremFuels) and the Assets; (ii) prosecute and collect all Causes of Action and distribute the net collected proceeds attributable to AppPremFuels to the AppPremFuels Committee Counsel; (iii) make all distributions in accordance with this Plan to the extent such distributions are to be made from the Assets, including the payment of United States Trustee fees accruing in the AppFuels Case after the Effective Date until the closing or dismissal of the AppFuels Case; (iv) retain professionals and other agents; (v) take such steps as are reasonable and necessary to accomplish the Liquidating Trust's purpose; (vi) file all post-Effective Date tax returns on behalf of the Liquidating Trust; and (vii) otherwise perform the functions and take actions provided for or permitted in the Plan, the Liquidating Trust Agreement, all as provided in and subject to the terms and provisions of the Plan, the Confirmation Order and the Liquidating Trust Agreement. The Liquidating Trustee will be responsible for paying or satisfying all liabilities including: (a) any post-Effective Date expenses necessary or appropriate on the part of the Liquidating Trust in respect of consummation of the Plan; (b) any post-Effective Date expenses incurred for the benefit of or in connection with the operation of the Liquidating Trust; and (c) any other obligations of the Liquidating Trust expressly set forth in the Plan or the Liquidating Trust Agreement. Without limiting the foregoing, from and after the Effective Date, the Liquidating Trust will dispose of the assets of the Liquidating Trust in accordance with the provisions of the Plan, the Confirmation Order and the Liquidating Trust Agreement.

•   <u>Tax Treatment</u>.   The Debtors, the Liquidating Trustee and the Beneficiaries shall treat the Liquidating Trust as a "liquidating trust" within the meaning of Treasury Regulation § 301.7701-4(d) and any comparable provision of state or local law.   For income tax purposes, the Debtors, the Trustee and the Beneficiaries shall treat the transfer of the Liquidating Trust Assets by the Debtors to the respective Beneficiaries, followed by the transfer of such assets by the Beneficiaries to the Liquidating Trust in exchange for their beneficial interests therein.   The Beneficiaries shall be treated for tax purposes as the grantors and deemed owners of their respective shares of the Liquidating Trust Assets, and shall include in their taxable incomes their allocable share of each item of the Liquidating Trust's income, gain, deduction, loss and credit.   All items shall be allocated by the Liquidating Trustee to the Beneficiaries using any reasonable allocation method.

•   <u>Termination of the AppFuels Creditors Trust</u>.   The Liquidating Trust shall terminate on the earlier of (1) the complete liquidation, administration and distribution of its assets in accordance with the Plan and the full performance of all other duties and functions set forth in the Plan and this Liquidating Trust Agreement or (2) the fifth anniversary of the date of the formation of the

- 22 -

AppFuels Creditors Trust, subject to one or more finite extensions approved by the Bankruptcy Court.

    <u>Distributions from the Liquidating Trust (and AppPremFuels Funds)</u>. All distributions from the Liquidating Trust to the holders of interests in the Liquidating Trust (and all distributions of the AppPremFuels Funds by the AppPremFuels Committee Counsel) will be made in accordance with such claimants' respective Pro Rata shares of the beneficial interests held therein at such time and in such amounts as determined by the Liquidating Trustee or the AppPremFuels Committee Counsel, as appropriate, pursuant to the Liquidating Trust Agreement and/or this Plan. The Liquidating Trustee will make distributions as when appropriate; however, the Liquidating Trustee will cause the Liquidating Trust to retain sufficient funds as reasonably necessary for the Liquidating Trust to: (a) meet contingent liabilities and maintain the value of its assets during liquidation; (b) pay reasonable expenses of administering the Liquidating Trust that have been incurred (including, but not limited to, any taxes imposed on the Liquidating Trust or fees and expenses in connection with the post-Effective Date administration and liquidation of the assets of the trust); and (c) satisfy other post-Effective Date liabilities incurred by the Liquidating Trust in accordance with the Plan.  Subject to Plan Section 6.12 (or Plan Section 6.13 in the case of AppPremFuels),the distributions from the Liquidating Trust will be subject to the following provisions:

- <u>Interim Distribution</u>:   Interim distributions to a Class of Claims under the Plan will occur as soon as practicable after (i) all objections to any such Claims have been resolved or reserved for, and (ii) Claims in prior classes have been paid or satisfactory reserves for payment of such Claims and other fees and/or charges required or permitted to be paid under the Plan and/or the Liquidating Trust Agreement have been made.

- <u>Final Distribution</u>:    Final Distribution to Creditors under the Plan will occur as soon as practicable after (i) all of the Assets (including Causes of Action) are liquidated and all proceeds of the liquidation are deposited into the Liquidating Trust, and (ii) all objections to Claims have been resolved.

- <u>Disclaimer</u>: The Liquidating Trustee, the AppPremFuels Committee Counsel and its agents and attorneys are under no duty to take any action to either (a) attempt to locate any Creditor, (b) obtain an executed Internal Revenue Service Form W-8 or W-9 from any Creditor, or (c) issue IRS 1099 forms to the Creditors.

- <u>Monitoring of Disbursements</u>. The terms of this paragraph are not applicable to the AppPremFuels Committee Counsel.   The Trust Committee may monitor the collection, accounting, treatment and distribution of all proceeds by the Liquidating Trustee.   The Liquidating Trustee will make available its books and records to any member of the Trust Committee at any reasonable

- 23 -

time, upon reasonable written notice; provided however, the Liquidating Trustee will have no obligation to share any information that may be subject to any privilege or may hinder the prosecution of any Cause of Action.

- <u>Delivery of Distributions; Undeliverable and Unclaimed Distributions</u>: All distributions under the Plan on Allowed Claims will be sent to the address of a Creditor as listed on their proof of claim unless the Liquidating Trustee or the AppPremFuels Committee Counsel, as appropriate, has been notified in writing of a change of address. Six months after any distribution date, all undeliverable or unclaimed payments or distributions made to any Creditor under the Plan, including but not limited to, un-negotiated checks or drafts, shall revert to the Liquidating Trust or the AppPremFuels Funds to be redistributed pursuant to the terms of this Plan, and will be forfeited as to the affected Creditors. Any Creditor whose payment is forfeited under this provision will thereafter be treated as having a Disallowed Claim, and the holder of any such Claim will not be entitled to any other or further distribution under this Plan on account of such Claim.   EACH CREDITOR MUST KEEP THE LIQUIDATING TRUSTEE OR THE APPPREMFUELS COMMITTEE COUNSEL, AS APPROPRIATE, ADVISED OF ANY CREDITOR'S CHANGE OF ADDRESS.

- <u>Minimum Distributions:</u>   If a distribution to be made to a Creditor holding an Allowed Claim would be $50.00 or less in the aggregate, notwithstanding any contrary provision of this Plan, no such distribution will be made to such holder by the Trust Committee or the AppPremFuels Committee Counsel.

- <u>Set Off and Recoupment Rights:</u>   Except as specifically provided in the Plan, no Person will retain any contractual or statutory right to set off or to recoup any asset in which the Liquidating Trust or the AppPremFuels Committee Counsel has an interest in satisfaction of that Claimant's prepetition Claim. Any right to set off or to recoup a Claim against an Asset, any asset of the Liquidating Trust or the AppPremFuels Funds that is not specifically retained by a Creditor is waived and forever barred.

- <u>Allocations of Distributions Between Principal and Interest</u>: To  the extent that any Allowed Tax Claim entitled to a distribution under the Plan by the Liquidating Trust or the AppPremFuels Committee Counsel is comprised of indebtedness and accrued but unpaid interest thereon, such distribution will be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest, unless otherwise specifically set forth herein.

• No Interest on Claims:   Except as specifically provided for Plan Section 6.7.10, interest will not accrue on any Claims and no Claimant will be entitled to interest accruing on or after the Petition Date from the Liquidating Trust or the AppPremFuels Funds.

Professionals and Employees:   The Liquidating Trust, with the consent of the Trust Committee, and the AppPremFuels Committee Counsel may from time to time retain any professionals, including but not limited to, attorneys, financial advisors or accountants, as may be appropriate under the circumstances. The Liquidating Trustee and the AppPremFuels Committee Counsel will, in the ordinary course of business and without the necessity for any approval by the Court, pay on behalf of the Liquidating Trust and AppPremFuels Committee Counsel the reasonable and necessary fees and expenses of such professionals retained by the Liquidating Trust and the AppPremFuels Committee Counsel.  The Liquidating Trust and AppPremFuels Committee Counsel may also hire such employees as the Liquidating Trustee and the AppPremFuels Committee Counsel deems appropriate under the circumstances.

Conflicts Between Trust and Plan.   If there arises any inconsistencies between the Liquidating Trust Agreement provisions and the provisions of the Plan pertaining to AppFuels, then the provisions of the Plan shall control.

Surcharge:   If any Creditor claims a security interest in the proceeds of any asset or any other cash on deposit in any of the Debtors' accounts as of the Effective Date, the Liquidating Trustee and the AppPremFuels Committee Counsel will, pursuant to Code §506(c), be entitled to surcharge such claimed collateral for the payment of all Allowed Administrative Claims and the initial funding of the Liquidating Trust and the AppPremFuels Funds without further order of the Court.

ABC Action. Upon agreement between the Liquidating Trustee and James H. Frazier, III, in his capacity as Assignee, the ABC Action may be dismissed by the Assignee.

Documents and Privileges.   For the avoidance of any doubt, on the Effective Date, the Debtors and the Committees shall irrevocably transfer, assign and deliver to the Liquidating Trust (i) any and all the right, title and interest in and to any and all papers, documents, maps, records, files, or other communications, whether in paper of electronic format, in its possession or in the possession of its professionals or custodians and (ii) without waiver, all of their respective rights, title and interests in and to any attorney client privilege, work product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) associated with the Claims and Causes of Action transferred to the Liquidation Trust (collectively, "Privileges"), which shall vest in the Liquidating Trustee, in trust, and, consistent with Code § 1123(b)(3)(B), for the benefit of the Liquidating Trust Beneficiaries.

Payment Over to Liquidating Trustee.   All collections of proceeds from prosecution of the Causes of Action will be paid or turned over to the Liquidating Trustee.   Pursuant to Plan Section

6.2, the Liquidating Trustee will pay or turn over to the AppPremFuels Committee Counsel the net litigation proceeds from the collections on the litigation of the Causes of Action that are attributable to AppPremFuels, as AppPremFuels' interests may appear.

Insurance Policies.  Any of the Debtors' insurance policies which provide liability or indemnity coverage to directors, officers, and/or employees with respect to all past, present or future actions, suits, and proceedings against the Debtors or their past or present directors, officers, and/or employees will remain in full force and effect for their prescribed terms.  Nothing contained herein constitutes or be deemed a waiver of any Cause of Action that the Debtors or their respective estates may hold against any entity, including, without limitation, the insurer under any of the Debtors' policies of insurance.  Nothing in this paragraph should be interpreted to be an indemnification or guarantee for the benefit of any defendant in the Causes of Action.

Distributions Relating to Allowed Insurance Claims.  Payments from the Debtor's insurance carrier(s) to a Claimant on an Allowed Insurance Claims are deemed to be in full satisfaction of such Creditor's Claim, which Claim will be disallowed upon receipt by such Creditor of any insurance policy proceeds.   Nothing contained herein will constitute or be deemed a waiver of any Cause of Action that the Debtors may hold against any Person, including, without limitation, insurers under any policies of insurance for any wrongful settlement or non-settlement decisions, or any reason whatsoever.

**Stay of Pending Litigation.   Except to the extent that (i) relief from stay has previously been granted or (ii) any Person waives its claim against the Liquidating Trust and/or the AppPremFuels Funds to pursue only any Insurance Claims, then on the Effective Date all prepetition lawsuits, litigation, administrative actions or other proceedings, judicial or administrative, against any of the Debtors or their Assets, will be permanently stayed, except to the extent that such Debtors' names, as necessary parties under applicable procedural rules, may be used but the judgment shall not be collectible from the Debtors, the Committee, the Liquidating Trust, the AppPremFuels Committee or the AppPremFuels Funds.   Except as set forth in this Article, the entry of the Confirmation Order will have no effect on any insurance coverage of the Debtors with respect to any Claim.   The Debtors, the Committee, the Liquidating Trustee and/or the AppPremFuels Committee Counsel reserve the right to seek approval and enforcement of an alternative dispute resolution process for the resolution of any Claim or Insurance Claim.   The foregoing will not be deemed consent to such a process by the Debtors, the Committee, the Liquidating Trustee and/or the AppPremFuels Committee Counsel, or as a waiver of any right to oppose the imposition of such a process by the Debtors, the Committee, the Liquidating Trustee, or the AppPremFuels Committee by any Person.**

B.  Post-Effective Date Involvement of Professionals

The Confirmation Order will constitute an Order of withdrawal of all Professionals employed by the Debtors as of the Effective Date, except for McBrayer, McGinnis, Leslie and

Kirkland, PLLC who may continue to serve as special counsel to the Liquidating Trustee. After the Effective Date, the DelCotto Law Group, PLLC, Development Specialists, Inc., Gess, Mattingly & Atchison, P.S.C. and Diamond McCarthy LLP shall continue to serve the Liquidating Trustee unless and until such time as the Liquidating Trustee retains alternative counsel or professionals pursuant to Section 6.10 of the Plan. Also after the Effective Date, Miller Griffin & Marks, PSC shall continue to serve as AppPremFuels Committee Counsel.

C. Quarterly Reports and U.S. Trustees Fees

The Liquidating Trustee will file with the U.S. Trustee all quarterly reports until such time as the AppFuels' case is closed or dismissed and serve copies of the same on all such parties requesting a copy of same. The AppPremFuels' Committee Counsel will file with the U.S. Trustee all quarterly reports until such time as the AppPremFuels' case is closed or dismissed and serve copies of the same on all such parties requesting a copy of same. Upon the termination of the Liquidating Trust, the Liquidating Trustee will file a final report of distribution with the Court; upon the exhaustion of the AppPremFuels Funds, the AppPremFuels Committee Counsel will file a final report of distribution with the Court.

## VII.  PROVISIONS
## FOR ENVIRONMENTAL WORK

On October 29, 2010, the Debtors, Lyndon, the Committee and the Kentucky Parties entered into the Settlement Agreement and Release [Doc. No. 1319].  Pursuant to this agreement, a reclamation fund was established with $5,804,500.  The Debtors contributed $1,474,075 of this amount from unencumbered funds of the estates and $4,330,425 from the collateral held by Lyndon pursuant to the Lyndon Bonding Agreement.  Lyndon also wrote a $1,000,000 performance bond on behalf of Revelation Energy, LLC.  The reclamation fund will provide for the satisfaction of any remaining Kentucky Reclamation Claims. As part of the settlement, the Debtors' estates were given a full release by the Kentucky Parties and a partial release from Lyndon.

All of the Debtors' West Virginia Reclamation Claims except for the West Virginia Permits have been transferred or settled by agreement with the West Virginia Parties.  On December 2, 2010, the Court entered the Agreed Order of Abandonment [Doc. No. 1348] regarding the Dingess Rum permit. It is believed that the only permits that remain in West Virginia that have potential liability are the Remaining Alloy Permits for which $979,192 was placed in escrow with the West Virginia Parties. On the Effective Date, the West Virginia Parties shall relinquish any right to these escrowed funds and said funds shall be transferred to the Liquidating Trust (or the AppPremFuels Funds, as appropriate).

## VIII.  TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

Under Code § 365, the Debtors may assume or reject executory contracts and unexpired leases. Except as otherwise provided in the Confirmation Order, on the Confirmation Date all executory contracts and unexpired leases that existed Pre-Petition between the Debtors' and any Person will be deemed rejected and their resulting Rejection Claims, if any, will become General Unsecured Claims with respect to the appropriate Debtor or Debtors. The bar date for asserting Claims arising from the rejection of executory contracts or unexpired leases expired on March 14, 2010 pursuant to a Court order [Doc. No. 830].

## IX. LEGALLY BINDING EFFECT;
## DISCHARGE OF CLAIMS AND INTERESTS

Upon Confirmation, the provisions of the Plan will bind all Creditors and the Debtors, whether or not they accept the Plan. The distributions provided for in the Plan will be in exchange for and in complete satisfaction of all Claims against the Debtors or any of their Assets, including any Claim or interest accruing after the Chapter 11 filing date.

## X. MODIFICATION OF THE PLAN

The Debtors, the Committee and the AppPremFuels Committee may jointly propose amendments to or modifications of this Plan under Code §1127 at any time prior to the Confirmation and may jointly revoke or withdraw the Plan at any time prior to the Confirmation Hearing. After the Effective Date, the Liquidating Trustee and the AppPremFuels Committee Counsel may jointly remedy any defects or omissions and may reconcile any inconsistencies in this Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of this Plan so long as the interests of the Creditors are not materially and adversely affected.

## XI. JURISDICTION OF BANKRUPTCY COURT

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court will retain such jurisdiction over any matter arising under the Bankruptcy Code, or arising in or related to the Chapter 11 Cases or the Plan after Confirmation and after the Effective Date, and any other matter or proceeding that is within the Court's jurisdiction pursuant to 28 U.S.C. § 1334 or 28 U.S.C. § 157, including, without limitation, jurisdiction: (a) to hear and determine all controversies relating to or concerning the classification or allowance of Claims, including Professional Fees, disputed, contingent, or unliquidated Claims; (b) to determine and fix all Claims arising from the rejection of any executory contracts or leases; (c) to hear any pending motions for rejection, assumption or assignment of any executory contract or lease and to fix and determine any amounts alleged due and owing thereunder in order to cure defaults; (d) to enable the Debtors, Committee, the AppPremFuels Committee Counsel or the Liquidating Trustee to commence all and consummate any proceedings which they may bring prior to the closing of the Bankruptcy Cases to set aside any liens or encumbrances, to recover any assets, or damages to

which the Debtors, Committee or Liquidating Trustee may be entitled under applicable provisions of the Bankruptcy Code or other federal, state, or local law; (e) decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, including Causes of Action and objections to Claims, involving a Debtor, the Committee, or the AppPremFuels Committee that may be pending as of the Effective Date, or that may be filed by the Liquidating Trustee or the AppPremFuels Committee Counsel after the Effective Date; provided, however, the Liquidating Trustee shall reserve the right to prosecute Causes of Action in all proper jurisdictions; (f) to recover all Assets and properties of the Debtors, wherever located; (g) to permit amendments to the Schedules; (h) to make such orders as are necessary or appropriate to carry out the provisions of the Plan, including ruling on motions regarding the liquidation of the Assets and the AppPremFuels Funds contemplated under the Plan; (i) to modify this Plan pursuant to the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure at the request of the Liquidating Trustee or the AppPremFuels Committee; (j) to hear any matters regarding interpretation, implementation or consummation of the Plan and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order; (k) to decide issues concerning federal tax liability, reporting and withholding which may arise in connection with the Confirmation or consummation of the Plan; (l) to enter final decrees closing these Chapter 11 Cases.   Nothing herein limits the Court's powers under Code §105 and Bankruptcy Rule 9011.

## XII. CLAIMS AND CAUSES OF ACTION

Notice to Targets of Causes of Action.   All Creditors and other parties in interests are hereby expressly advised and notified that the Liquidating Trust will have the right to investigate, prosecute, enforce, settle, adjust, collect, or otherwise dispose of the Causes of Action. **ALL CREDITORS, PERSONS, ENTITIES, AND OTHER PARTIES WHO RECEIVED DIRECTLY OR INDIRECTLY, PAYMENTS, OFFSETS, RECOUPMENTS AND/OR REBATES, OR TRANSFERS OF PROPERTY FROM THE DEBTORS WITHIN THE ONE (1) YEAR PERIOD PRECEDING THE PETITION DATE OR WITHIN SUCH LONGER PERIOD OF TIME AS MAY APPLY UNDER APPLICABLE LAW INCLUDING, WITHOUT LIMITATION, PERSONS INCLUDED IN THE LIST OF TARGETS OF CAUSES OF ACTION, ATTACHED AS <u>EXHIBIT 3</u> TO THIS DISCLOSURE STATEMENT (AND INCORPORATED HEREIN BY THIS REFERENCE, THE SAME AS IF SET FORTH AT LENGTH HEREIN), ARE HEREBY NOTIFIED THAT THEY MAY BE SUBJECT TO SUIT TO RECOVER ANY PREFERENCES, FRAUDULENT TRANSFERS, OR OTHER AVOIDABLE TRANSFERS AND TO PURSUE ANY OTHER CAUSES OF ACTION.  The inclusion in or omission of a Person in <u>Exhibit 3</u> to this Disclosure Statement does not mean that a decision has been made to assert, or not to assert, a Cause of Action against such Person.   In addition, all officers and current and former officers, directors, shareholders, members, employees, partners, investors, agents, attorneys, accountants, equity holders, responsible parties and any other professional Person of the Debtors, their affiliates, or their parents are hereby notified that they may be subject to an action under applicable law as a result of any action or inaction, decision or lack of decision or transaction or non-transaction, made or**

incurred pre-petition that resulted, directly or indirectly, in harm to one or more of the Debtors.  The AppFuels Committee has filed the following lawsuits against the listed defendants as set out in Exhibit 3 to this Disclosure Statement and such claims and causes of action (as now asserted or as amended henceforth) are to be transferred, retained and enforced by the Liquidating Trust.  Moreover, the AppFuels Committee, for the benefit of the Liquidating Trust, has retained and preserved for enforcement and prosecution potential claims and causes of action (including, but not limited to, negligence, professional malpractice, fraud, breach of fiduciary duty, aiding & abetting breach of fiduciary duty, civil conspiracy, unjust enrichment, fee disgorgement, preference, and fraudulent transfer) against pre-petition professionals arising out of their relationship and/or engagements with the Debtors.

Reservation of Causes of Action Beyond Confirmation. The Debtors and the  AppFuels Committee specifically reserve the Causes of Action to the Liquidating Trust and expressly reserve such rights to survive beyond Confirmation, the finality of Confirmation, and all other legal effects of Confirmation, provided, however, this reservation shall not mean and will not be construed to mean that the exclusion of any Person from Exhibit 3 in the Disclosure Statement, frees, releases or exonerates that Person from Causes of Action, and the Liquidating Trust and its attorneys will have the right to investigate, pursue, prosecute and collect any unknown, but later discovered, Causes of Action against any Person, specifically including the right to add parties to existing adversaries as discovery in those proceedings uncovers additional parties that have received avoidable transfers or have taken acts that have harmed the Debtors.

## XIII. FEASIBILITY OF THE PLAN

### A. Discussion of Feasibility

A review of attached Exhibits, taken together, indicate viability of the Plan and feasibility of performance. The Plan is one of an orderly liquidation and distribution which, based on the complexities of the Cases and the Professionals knowledge of these matters, better serves the Creditors' interests as a Chapter 11 liquidation rather than as a Chapter 7 liquidation.

### B. Disclaimer of Projections

The financial projections present the expected results of distribution of the Debtors' assets to the best of the Plan Proponents' belief. WHILE THE PLAN PROPONENTS BELIEVE THAT THE ASSUMPTIONS SET FORTH ABOVE ARE REASONABLE, THEIR VALIDITY MAY BE AFFECTED BY THE OCCURRENCE OF EVENTS AND THE EXISTENCE OF CONDITIONS NOT NOW CONTEMPLATED AND BY OTHER FACTORS, MANY OF WHICH ARE BEYOND THE CONTROL OF THE DEBTORS, THE LIQUIDATING TRUSTEE AND THE APPPREMFUELS COMMITTEE COUNSEL. THE PROJECTIONS ARE, THEREFORE, NOT INTENDED TO BE REPRESENTATIONS OF ACTUAL FUTURE PERFORMANCE. ACTUAL OPERATING RESULTS DURING THE PROJECTED

PERIODS WILL VARY FROM THE PROJECTIONS AND SUCH VARIATIONS MAY BE MATERIAL.

## XIV.  VOTING PROCEDURES AND REQUIREMENTS

ACCEPTANCE OR REJECTION OF THE PLAN WILL BE DETERMINED, PURSUANT TO THE BANKRUPTCY CODE, BASED UPON THE BALLOTS OF THE CREDITORS HOLDING ALLOWED CLAIMS THAT ACTUALLY VOTE ON THE PLAN. IT IS THEREFORE IMPORTANT THAT CLAIMANTS EXERCISE THEIR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN.

### A.  Ballots and Voting Deadline

A ballot form to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement. Creditors should read the Ballot carefully and follow the instructions contained therein.   In voting to accept or reject the Plan, you must use only the Ballot sent to you with this Disclosure Statement.   Creditors entitled to vote must complete, sign, and return their ballots to counsel for the Debtors on or before the Voting Deadline.  Bankruptcy Rule 3018(a) permits a Creditor, for cause, to petition the Court to permit it to change or withdraw its vote on a plan.   Any such petition must be made before the Confirmation Hearing, unless otherwise permitted by the Court. The Debtors will present the results of the voting to the Bankruptcy Court at the Confirmation Hearing.

Pursuant to Bankruptcy Rule 3018, the Court has fixed a specific date shown on the face of the enclosed ballot as the deadline for impaired Creditors to submit their acceptances or rejections of the Plan and for them to be received by Counsel. Except to the extent allowed by the Court, ballots that are received after the expiration of the aforesaid date will not be accepted or counted by the Debtors for Confirmation of the Plan or any modification thereof.

### B.  Classes Entitled to Vote

Only Classes that are impaired under the Plan are entitled to vote to accept or reject the Plan. Code § 1124 provides that a class of claims or interest is considered to be impaired under a plan of reorganization unless the plan does not alter the legal, equitable, and contractual rights of the holders of such claims or interests. Such classes are considered impaired unless all outstanding defaults, other than defaults relating to the insolvency or financial condition of the Debtors or the commencement of a bankruptcy case, are to be cured and the holders of claims or interests in such classes are to be compensated for any damages incurred as a result of any reasonable reliance by such holders on any contractual provisions or applicable law to demand accelerated payment. Pursuant to these reasons, the Plan Proponents have determined that not all the Classes of Creditors are impaired under the Plan and only some impaired Classes will be entitled to vote for or against the Plan as set forth therein.

Contested, disputed, contingent, and/or unliquidated Claims are not entitled to vote to accept or reject the Plan.   If your Claim has been estimated for voting purposes, then you will be allowed to vote your Claim in the amount estimated by that order.   If Ballots are erroneously sent to a Creditor not entitled to vote, then the Ballot will not be counted in the calculation of the Creditors voting to accept or reject the Plan.   If you are a Creditor holding a contested or disputed claim, you may ask the Court to have your Claim temporarily allowed for the purpose of voting pursuant to Bankruptcy Rule 3018.

## C.  Vote Required For Class Acceptance

The Court will determine whether the impaired Classes described above have accepted the Plan by determining whether sufficient acceptances have been received from the holders of Allowed Claims in such classes. An impaired Class of Claims will be determined to have accepted the Plan if the holders of Allowed Claims in that class casting votes in favor of the Plan (i) hold at least two-thirds of the allowed amount of the Allowed Claims of the holders in such class who vote and (ii) comprising more than one-half the number of holders of the allowed claims in such class voting on the Plan. Ballots of holders of impaired claims that are signed and returned, but not expressly voted either for acceptance or rejection of the Plan, will be counted as ballots for the acceptance of the Plan. Except as may be allowed by the Bankruptcy Court, a ballot accepting the Plan may not be revoked. Ballots that are not signed, but are otherwise completed and regular, shall be counted as a vote.

## D.  Confirmation Hearing

The Code requires the Court, after the return of the ballots and by notice, to hold a Confirmation Hearing. The Confirmation Hearing will be heard on the date fixed by notice to the Creditors, a few days after the Voting Deadline has lapsed. The Confirmation Hearing may be adjourned from time to time by the Court without further notice except for an announcement made at the Confirmation Hearing. The Confirmation Hearing will be scheduled for a day and time certain in Lexington, Kentucky, and a separate notice thereof will be sent to all creditors.

## E.  Requirements For Confirmation Of The Plan

At the Confirmation Hearing, the Court will determine whether the requirements of Code § 1129 have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. Such requirements include:

(A) Best Interests Test. With respect to each impaired class of creditors and interests, each holder of an allowed claim or allowed interest in such class has either (i) accepted the Plan or (ii) receives or retains under the Plan, on account of its claim or interest, property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtors were to be liquidated under Chapter 7 of the Code.

To determine what the holders in each impaired class of claims and interests would receive if the Debtor were to be liquidated, the Court must determine the dollar amount that would be generated from the liquidation of the Debtors' assets in the context of a Chapter 7 liquidation case. The cash amount that would be available for satisfaction of the allowed claims and allowed interests of the Debtors would consist of the funds presently held by the CLO as well as any proceeds realized from the Causes of Action. Such total amount would be reduced by the costs and expenses of the liquidation and by such additional administrative and priority claims that might result from the use of a Chapter 7 proceeding for the purposes of liquidation.

The Debtors' costs of liquidation under Chapter 7 would include the fees payable to the trustee appointed in the Chapter 7 case, as well as those that might be payable to additional attorneys and other professionals that the trustee might engage. Any Chapter 7 trustee and its professionals would need to familiarize themselves with these Cases, likely at substantial costs to the estate. Such costs of liquidation would also include any unpaid expenses incurred by the Debtors during the Chapter 11 Cases, such as compensation for attorneys and accountants. In addition, claims may arise by reason of the breach or rejection of obligations incurred and executory contracts entered into by the Debtors during the pendency of the Chapter 11 case.

To determine if the Plan is in the best interests of each impaired class of the creditors, the present value of the distributions from the proceeds of the liquidation of the Debtors' assets and properties (after subtracting the amounts attributable to the claims described above) are then compared with the present value offered to each of the classes of Creditors recognized under the Plan.

In applying the "best interests" test, it is possible that claims and interests in a Chapter 7 case may not be classified in the same manner as provided in the Plan. In the absence of a contrary determination by the Bankruptcy Court, all allowed claims which have the same rights upon liquidation would be treated as one class for the purpose of determining the potential distribution of the liquidation proceeds under a Chapter 7 case of the Debtors. The distributions from the liquidation proceeds would be calculated *pro rata* according to the amount of the Allowed Claim held by each creditor in such class. The Debtors believes that the most likely outcome of a liquidation proceeding under Chapter 7 would be the application of the rule of absolute priority of distributions. Under that rule, no junior class of creditors receives any distribution until all senior classes of creditors are paid in full with interest, and no interest holder receives any distribution until all creditors are paid in full with interest.

The Plan Proponents believe that Confirmation is preferable to Chapter 7 liquidation because the Plan maximizes the distributions to all Classes of Creditors, and any alternative to Confirmation would result in substantial delays and another layer of administrative expenses, including Trustee's commissions, resulting in less value for the creditors.

(B) Feasibility of the Plan. In order for the Plan to be confirmed, the Court must also determine that the need for further reorganization or a subsequent liquidation of the Debtors is not likely to result following Confirmation of the Plan. Insofar as the Plan contemplates that a complete liquidation and distribution of the Debtors' assets, no further reorganization or subsequent liquidation would be likely.

(C) Acceptance by Impaired Classes. Code § 1129(a)(8) requires that each Impaired Class must accept the Plan by the requisite votes for Confirmation to occur. As described herein, a class of Impaired Claims will have accepted the Plan if at least two-thirds in amount and more than half in number of Claims in such class voting to accept or reject the Plan have voted in favor of acceptance.

## F.  Conditions Precedent to Confirmation

At the Confirmation hearing, the Court will determine whether the Plan meets all the requirements of Code § 1129 governing the Confirmation of a plan of reorganization, including but not limited to:

--That the Plan Proponents have complied with the provisions of Chapter 11, specifically the provisions of Code §§ 1122 and 1123 governing classification of claims and interests and contents of a plan of reorganization.

--That the Plan Proponents have proposed the Plan in good faith and not by means forbidden by law.

--That the Plan Proponents have disclosed any payment made or promised by the Debtor to any person for services in connection with the Chapter 11 case.

--That one or more of the Classes of impaired claims or interests has voted to accept the Plan.

--That the Plan does not discriminate unfairly against and is fair and equitable to any non-accepting class of impaired claims or interests.

--That the Plan is in the best interests of creditors and interest holders, i.e., each holder of an allowed claim or allowed interest either has accepted the Plan or will receive on account of that claim or interest an amount of property with a value, as of the Effective Date of the Plan, that is not less than the amount that the holder would receive if the Debtor was liquidated under Chapter 7 of the Code on the Effective Date. *See* **EXHIBIT 5** for a liquidation analysis.

--That the Plan is feasible, i.e., Confirmation is not likely to be followed by the need for liquidation or further reorganization of the Debtor.

The Plan Proponents believe that the Plan upon Confirmation would satisfy all of the statutory requirements of Chapter 11 of the Code.

### G.  Effect of Confirmation

If the Court orders Confirmation of the Plan, then the Liquidating Trustee and the AppPremFuels Committee Counsel will be obligated to implement the Plan and begin paying the Allowed Claims from either the Liquidating Trust or the AppPremFuels Funds. Confirmation makes the Plan binding upon the Debtors and all Creditors, regardless of whether or not they have accepted the Plan.

### H.  Incorporation of Exhibits

All of the Exhibits attached hereto are incorporated into this Disclosure Statement, the same as if set forth at length herein.

## XV.  FEDERAL TAX CONSEQUENCES OF THE PLAN

A.    <u>Consequences to the Debtor</u>. Although the Debtors have sold assets since the Petition Date, the Plan Proponents believe that any asset sold was sold for less than its tax basis; and the Plan does not provide for the sale of any assets. Consequently, it is not believed that the Debtor would have any tax consequences as a result of this Plan.

B.    <u>Consequences to the Typical Holder of a Claim</u>. For a Creditor, there may be tax consequences. The recipient of a distribution from the Debtor under the Plan may be considered by the IRS and state and/or local taxing authorities to have received taxable income.

C.    <u>Disclosure</u>. Counsel are bankruptcy attorneys and have only limited knowledge of tax matters. They do not anticipate your relying on these representations and strongly recommend you (a) use these suggested tax consequences as alert signs, and (b) consult your own tax attorney and/or CPA regarding the actual tax consequences applicable to your particular circumstance.

## XVI.  CONCLUSION

The Plan constitutes an economically-viable opportunity and a reasonable method for Creditors to receive an orderly distribution of the Debtors' liquidated assets. The Creditors all receive distributions per the Plan's priority schedule until they are paid in full to the maximum extent possible according to the terms therein. Since liquidation in a Chapter 7 would likely produce no greater return for the Unsecured Creditors than compared to the terms of the Plan, the Creditors will receive more money through the Plan as compared to a conversion to Chapter 7.

The acceptance of the Plan is therefore economically justified. To that extent, ultimate potential benefits far outweigh any disadvantages or risks.

The materials provided in this Disclosure Statement are intended to assist you in reviewing the Plan in an informed manner.   If the Plan is confirmed, you will be bound by the terms of the Plan.   You are urged to study these materials and make such further inquiries as you may deem appropriate.

APPALACHIAN FUELS, LLC

APPALACHIAN HOLDING COMPANY, INC.

APPALACHIAN PREMIUM FUELS, LLC.

APPALACHIAN ENVIRONMENTAL, LLC.

KANAWHA DEVELOPMENT CORPORATION

APPALACHIAN COAL HOLDINGS, INC.

SOUTHERN EAGLE ENERGY, LLC.

By:   /s/ James H. Frazier, III
        CHIEF LIQUIDATING OFFICER FOR THE DEBTORS


THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF APPALACHIAN FUELS, LLC

By:   /s/ William H. Schwarzschild
        CHAIRMAN, COUNSEL FOR PHILIP MORRIS USA, INC.



THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF APPALACHIAN PREMIUM FUELS, LLC

By:   /s/ Dick Smith
        CHAIRMAN

JOINTLY PREPARED BY:

**BUNCH & BROCK**
By:      /s/ W. Thomas Bunch, Esq.
         **W. THOMAS BUNCH, ESQ.**
         **MATTHEW B. BUNCH, ESQ.**
         **PETER J. W. BRACKNEY, ESQ.**
         805 Security Trust Building
         271 West Short Street
         Lexington, Kentucky 40507
         (859) 254-5522
**ATTORNEY FOR THE DEBTOR**

**DELCOTTO LAW GROUP, PLLC**
By:      /s/ Dean A. Langdon, Esq.
         **LAURA DAY DELCOTTO, ESQ.**
         **DEAN A. LANGDON, ESQ.**
         **T. KENT BARBER, ESQ.**
         200 North Upper Street
         Lexington, Kentucky 40507
         (859) 231-5800
**COUNSEL FOR THE OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS OF**
**APPALACHIAN FUELS, LLC**

**MILLER GRIFFIN & MARKS, PSC**
By:      /s/ Donald R. Rose, Esq.
         **DONALD R. ROSE, ESQ.**
         **CARROLL M. REDFORD, III, ESQ.**
         **SUSAN Y. W. CHUN, ESQ.**
         600 Security Trust Building
         271 West Short Street
         Lexington, Kentucky 40507
         (859) 255-6676
**COUNSEL FOR THE OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS OF**
**APPALACHIAN PREMIUM FUELS, LLC**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY
### ASHLAND DIVISION

IN RE:

| | |
|---|---|
| APPALACHIAN FUELS, LLC | CASE NO. 09-10343, |
| APPALACHIAN HOLDING COMPANY, INC. | CASE NO. 09-10372, |
| APPALACHIAN PREMIUM FUELS, LLC | CASE NO. 09-10373, |
| APPALACHIAN ENVIRONMENTAL, LLC | CASE NO. 09-10374, |
| KANAWHA DEVELOPMENT CORPORATION | CASE NO. 09-10375, |
| APPALACHIAN COAL HOLDINGS, INC. | CASE NO. 09-10405, |
| SOUTHERN EAGLE ENERGY, LLC | CASE NO. 09-10406 |

CHAPTER 11

DEBTORS

---

## DEBTORS', APPALACHIAN FUELS, LLC COMMITTEE'S AND APPALACHIAN PREMIUM FUELS, LLC COMMITTEE'S JOINT PLAN OF ORDERLY LIQUIDATION AND DISTRIBUTION

---

Respectfully submitted,

BUNCH AND BROCK

/s/ W. Thomas Bunch, Esq.
W. Thomas Bunch, Esq.
Matthew B. Bunch, Esq.
Peter J.W. Brackney, Esq.
805 Security Trust Building
271 West Short Street
Lexington, KY 40507
Telephone: (859) 254-5522
Facsimile: (859) 233-1434
wtb@bunchlaw.com
matt@bunchlaw.com
peter@bunchlaw.com
COUNSEL FOR DEBTORS

and

DELCOTTO LAW GROUP PLLC

/s/ Dean A. Langdon, Esq.
Laura Day DelCotto, Esq.
Dean A. Langdon, Esq.
T. Kent Barber, Esq.
200 North Upper Street
Lexington, KY 40507
Telephone: (859) 231-5800
Facsimile: (859) 281-1179
ldelcotto@dlgfirm.com
kbarber@dlgfirm.com
COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED
CREDITORS OF APPALACHIAN
FUELS, LLC

and

MILLER GRIFFIN & MARKS, PSC

/s/ Donald R. Rose, Esq.
Donald R. Rose, Esq.
Carroll M. Redford, III, Esq.
Susan Y. W. Chun, Esq.
271 W. Short Street, Suite 600
Lexington, KY 40507
Telephone: (859) 255-6676
Facsimile: (859) 259-1562
drr@kentuckylaw.com
COUNSEL FOR THE OFFICIAL
COMMITTEE FOR UNSECURED
CREDITORS OF APPALACHIAN
PREMIUM FUELS, LLC


Dated:  August 11, 2011

# TABLE OF CONTENTS

SectionTitle    Page

I.      DEFINITIONS AND RULES OF CONSTRUCTION ................................................. 1
        1.1     Defined Terms and Rules of Construction ............................................. 1

II.     TREATMENT OF UNCLASSIFIED CLAIMS .......................................................... 9
        2.1     Unclassified Claims .................................................................................. 9
                2.1.1   United States Trustee Fees ...................................................... 9
                2.1.2   Administrative Claims .............................................................. 9
                2.1.3   Professionals' Claims ............................................................... 9

III.    CLASSIFICATION OF CLAIMS AND INTERESTS ............................................ 10
        3.1     Classification of AppFuels Claims and Interests ................................. 10
                3.1.1   Class 1 (Kentucky Reclamation Claims) ............................... 10
                3.1.2   Class 2 (West Virginia Reclamation Claims) ........................ 10
                3.1.3   Class 3 (Lyndon Claim) ......................................................... 10
                3.1.4   Class 4 (CTB Secured Claim) ................................................ 10
                3.1.5   Class 5 (Town Square Bank Secured Claim) ......................... 10
                3.1.6   Class 6 (Heritage Bank Secured Claim) ................................ 10
                3.1.7   Class 7 (All Other Secured Claims) ....................................... 10
                3.1.8   Class 8 (Priority Employee Wage Claims) ............................ 10
                3.1.9   Class 9 (Priority Employee Medical Claims) ........................ 10
                3.1.10  Class 10 (Priority Tax Claims) .............................................. 10
                3.1.11  Class 11 (Unsecured Claims) ................................................. 10
                3.1.12  Class 12 (Intercompany Claims) ............................................ 10
                3.1.13  Class 13 (AppHold Interests) ................................................. 11

        3.2     Classification of AppPremFuels Claims and Interests ........................ 11
                3.2.1   Class 1 (Kentucky Reclamation Claims) ............................... 11
                3.2.2   Class 2 (West Virginia Reclamation Claims) ........................ 11
                3.2.3   Class 3 [Intentionally Omitted] ............................................. 11
                3.2.4   Class 4 (All Other Secured Claims) ....................................... 11
                3.2.5   Class 5 (Priority Wage Claims) ............................................ 11
                3.2.6   Class 6 (Priority Employee Medical Claims) ........................ 11
                3.2.7   Class 7 (Priority Tax Claims) ................................................ 11
                3.2.8   Class 8 (Unsecured Claims) ................................................... 11
                3.2.9   Class 9 (Intercompany Claims) .............................................. 11
                3.2.10  Class 10 (AppFuels Interest) ................................................. 11

        3.3     KanDevCo ............................................................................................ 11
        3.4     AppHold ............................................................................................... 11
        3.5     AppEnv. ................................................................................................ 12
        3.6     AppCoalHold ........................................................................................ 12
        3.7     SouthEagle ........................................................................................... 12

IV.    TREATMENT AND IMPAIRMENT OF CLASSIFIED CLAIMS ......................... 12
         4.1   Treatment of AppFuels Claims ............................................................ 12
                 4.1.1   Class 1 (Kentucky Parties Claims) ...................................... 12
                 4.1.2   Class 2 (West Virginia Parties Claims) ............................... 12
                 4.1.3   Class 3 (Lyndon Claim) ...................................................... 12
                 4.1.4   Class 4 (CTB Secured Claim).............................................. 12
                 4.1.5   Class 5 (Town Square Bank Secured Claim)........................ 13
                 4.1.6   Class 6 (Heritage Bank Secured Claim) ............................... 13
                 4.1.7   Class 7 (All Other Secured Claims)...................................... 13
                 4.1.8   Class 8 (Priority Employee Wage Claims) ........................... 13
                 4.1.9   Class 9 (Priority Employee Medical Claims) ....................... 13
                 4.1.10  Class 10 (Priority Tax Claims) ............................................ 14
                 4.1.11  Class 11 (Unsecured Claims)................................................ 14
                 4.1.12  Class 12 (Intercompany Claims)........................................... 14
                 4.1.13  Class 13 (AppFuels Interests) .............................................. 14

         4.2   Treatment of AppPremFuels Claims ................................................... 14
                 4.2.1   Class 1 (Kentucky Parties Claims) ...................................... 14
                 4.2.2   Class 2 (West Virginia Parties Claims) ............................... 14
                 4.2.3   Class 3 [Intentionally Omitted]............................................ 15
                 4.2.4   Class 4 (All Secured Claims) ............................................... 15
                 4.2.5   Class 5 (Priority Employee Wage Claims) ........................... 15
                 4.2.6   Class 6 (Priority Employee Medical Claims) ....................... 15
                 4.2.7   Class 7 (Priority Tax Claims) .............................................. 15
                 4.2.8   Class 8 (Unsecured Claims).................................................. 15
                 4.2.9   Class 9 (Intercompany Claims)............................................. 16
                 4.2.10  Class 10 (AppFuels Interests) .............................................. 16

         4.3   KanDevCorp ...................................................................................... 16
         4.4   AppHold............................................................................................. 16
         4.5   AppEnv .............................................................................................. 16
         4.6   AppCoalHold. ..................................................................................... 16
         4.7   SouthEagle ......................................................................................... 16

V.     PROVISIONS APPLICABLE TO ALL OR SPECIFIC
         CLASSES OF CLAIMS ................................................................................. 17
         5.1   Bar Date for Claims ........................................................................... 17
                 5.1.1   Employee Medical Claims.................................................... 17
                 5.1.2   Employee Wage Claims........................................................ 17
                 5.1.3   All Other Claims .................................................................. 17
                 5.1.4   Rejection Claims .................................................................. 17
                 5.1.5   Tax Claims ........................................................................... 17
                 5.1.6   [Intentionally Omitted] ........................................................ 17
                 5.1.7   Unknown Claims .................................................................. 17
                            5.1.7.1 Establishment of a Procedure for Notice

for Unknown Claims................................................17
    5.1.7.2 Effect of Unknown Claims Bar Date........................18

5.2    Satisfaction of Claims.................................................18
5.3    Objection to Claims..................................................18
5.4    Estimation of Claims.................................................18
5.5    No Distributions Pending Allowance..............................18
5.6    Distribution of Unsecured Claims..................................19
5.7    Authority to Compromise and Settle Claims without
    Court Approval.......................................................19

VI.    MEANS OF IMPLEMENTATION OF PLAN..............................19
6.1    No Substantive Consolidation or Recharacterization of
    Intercompany Claims and Interests................................19
6.2    Transfer of the AppPremFuels Funds..............................19
6.3    Establishment of Liquidating Trust................................20
    6.3.1    Purpose of Liquidating Trust................................20
    6.3.2    Appointment of the Liquidating Trustee....................20
    6.3.3    Powers of the Liquidating Trustee.........................20
    6.3.4    Investment Powers........................................21
    6.3.5    Liability of Liquidating Trustee and
        AppPremFuels Committee's Counsel...................21

6.4    Dissolution of the Committee and Appointment of
    Trust Committee.....................................................21
6.5    Cessation of the Conduct of Business of the Debtors;
    Post-Effective Date Involvement of Professionals...........22
6.6    Tax Treatment for the Liquidating Trust..........................22
6.7    Distributions from Liquidating Trust (and AppPremFuels Funds)....22
    6.7.1    Interim Distributions......................................23
    6.7.2    Final Distributions.......................................23
    6.7.3    Reporting Duties; Income and Related Information.............23
    6.7.4    Duty to Provide Tax Information by Beneficiaries
        Of the Liquidating Trust.................................23
    6.7.5    Disclaimer...............................................23
    6.7.6    Monitoring of Disbursements..............................23
    6.7.7    Delivery of Distributions; Undeliverable and
        And Unclaimed Distributions............................24
    6.7.8    Minimum Distributions....................................24
    6.7.9    Set Off and Recoupment Rights...........................24
    6.7.10 Allocations of Distributions Between Principal & Interests..24
    6.7.11 No Interest in Claims...................................24

6.8    [Intentionally Omitted]..............................................24
6.9    Expenses of the Liquidating Trust................................24
6.10    Professionals and Employees......................................25

iii

|       | 6.11 | Conflicts Between Trust and Plan | 25 |
|       | 6.12 | Termination of the Liquidating Trust | 25 |
|       | 6.13 | Termination of the AppPremFuels Estate | 25 |
|       | 6.14 | Surcharge | 26 |
|       | 6.15 | ABC Action | 26 |
|       | 6.16 | Transfer and Prosecution of Causes of Action | 26 |
|       | 6.17 | Notice to Targets of Causes of Action | 26 |
|       | 6.18 | Reservation of Causes of Action Beyond Confirmation | 27 |
|       | 6.19 | Notice in Confirmation Order | 27 |
|       | 6.20 | Prosecution and Temporary Disallowances by Liquidating Trust | 27 |
|       | 6.21 | Documents and Privileges | 27 |
|       | 6.22 | Discretion to Pursue or Settle | 27 |
|       | 6.23 | Payment Over to Liquidating Trustee | 28 |
|       | 6.24 | Insurance Policies | 28 |
|       | 6.25 | Distributions Relating to Allowed Insurance Claims | 28 |
|       | 6.26 | Stay of Pending Litigation | 28 |
| VII.  | | EXECUTORY CONTRATS AND LEASES | 29 |
|       | 7.1 | Rejection of Executory Contracts & Unexpired Leases | 29 |
| VIII. | | VOTING AND REQUEST FOR PLAN CONFIRMATION | 29 |
|       | 8.1 | Voting Procedure | 29 |
|       | 8.2 | Classes Entitled to Vote on the Plan | 29 |
|       | 8.3 | Request for Confirmation | 29 |
| IX.   | | MISCELLANEOUS PLAN PROVISIONS | 29 |
|       | 9.1 | Effectuating Documents; Exemption from Certain Transfer Taxes | 29 |
|       | 9.2 | Closing of the Case | 30 |
|       | 9.3 | Modification of Plan | 30 |
|       | 9.4 | Sufficiency of Copies of Confirmation Order | 30 |
|       | 9.5 | Binding Effect | 30 |
|       | 9.6 | Notice of Default | 30 |
|       | 9.7 | No Admissions or Waivers | 30 |
|       | 9.8 | Quarterly Reports; Final Report | 31 |
|       | 9.9 | Retiree Benefit Plans | 31 |
| X.    | | EFFECT OF PLAN CONFIRMATION, RELEASES, AND INJUNCTIONS/STAYS | 31 |
|       | 10.1 | Subordination Rights | 31 |
|       | 10.2 | Injunctions | 31 |
|       | 10.3 | Exculpation for Post-Petition Events and Limitation of Liability | 31 |
| XI.   | | RETENTION OF JURISDICTION | 32 |

XII.   NOTICES ................................................................................................................. 33

The Debtors, the Official Committee of Unsecured Creditors of Appalachian Fuels, LLC (the "Committee") and the Official Committee of Unsecured Creditors of Appalachian Premium Fuels, LLC (the "AppPremFuels Committee") propose the following Joint Plan of Liquidation (the "Plan") to the Creditors of the Debtors pursuant to the provisions of Code § 1121(c):

# ARTICLE I
## DEFINITIONS AND RULES OF CONSTRUCTION

1.1    <u>Defined Terms and Rules of Construction</u>:  All capitalized terms used herein shall have the meanings defined to them below or, if not defined below, then as defined in the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, unless the context clearly requires otherwise. The rules of construction used in Code §102 shall apply to the construction of this Plan.

1.1.1    "ABC Action" shall mean that certain Assignment for Benefit of Creditors' case filed in the Fayette District Court, Lexington, Kentucky, Civil Action No. 09-C-04320 whereby James H. Frazier, III was named the Assignee of the assets of AppFuels, AppCoalHold, AppEnv, AppHold, KanDevCorp, and SouthEagle.

1.1.2    "Administrative Claim" shall mean any claim that is defined in Section 503(b) of the Code as being an "administrative expense" and granted priority under Code Section 507(a)(2) and including: (i) a Claim for any cost or expense of administration in connection with the Bankruptcy Cases, including, without limitation, any actual, necessary cost or expense of preserving the Debtors' estates incurred on or before the Effective Date; and (ii) all fees and charges assessed against the Debtor's estate under Chapter 123 of Title 28 of the United States Code.

1.1.3    "AppHold Interests" shall mean the stock or other ownership interests held by Energy Coal Resources, Inc. (and any other entity directly or indirectly) in AppHold.

1.1.4    "Allowed Administrative Claim" shall mean an Administrative Claim for which the Court has entered a Final Order allowing such claim as an Administrative Claim.

1.1.5    "Allowed Claim" shall mean (a) a Claim allowed by a Final Order, (b) a Claim as to which a timely and proper proof of claim or application for payment has been filed, and as to which proof of claim or application for payment no objection has been made within the time allowed for the making of objections or (c) a Claim allowed under the Plan, notwithstanding any objection filed thereto.  Except as set forth in the preceding sentence, no Claim shall be deemed or constitute an Allowed Claim unless a proof of claim has been filed in accordance with the Court's Final Order [Doc. No. 1264] entered on August 23, 2010 which specifically required all creditors to file a proof of claim notwithstanding the provisions of Bankruptcy Rule 3003. Interest accrued after the Petition Date of the Bankruptcy Cases shall not be part of any Allowed Claim, except as required under the Plan or permitted by law.  "Allowed Claim," when followed by a reference to a Claim of a certain kind, shall mean an Allowed Claim of that kind of Claim.

1

1.1.6   "AppCoalHold" shall mean Appalachian Coal Holdings, Inc., a Debtor in a Chapter 11 Case (No. 09-10405) before this Court.

1.1.7   "AppEnv" shall mean Appalachian Environmental, LLC, a Debtor in a Chapter 11 Case (No. 09-10374) before this Court.

1.1.8   "AppFuels" shall mean Appalachian Fuels, LLC, a Debtor in a Chapter 11 Case (No. 09-10343) before this Court.

1.1.9   "AppHold" shall mean Appalachian Holding Company, Inc., a Debtor in a Chapter 11 Case (No. 09-10372) before this Court.

1.1.10  "AppPremFuels" shall mean Appalachian Premium Fuels, LLC, a Debtor in a Chapter 11 Case (No. 09-10373) before this Court.

1.1.11  "AppPremFuels Committee" shall mean the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee in the AppPremFuels Bankruptcy Case.

1.1.12  "AppPremFuels Committee Counsel" shall mean the law firm of Miller, Griffin and Marks, PSC, Lexington, KY, appointed by the Court on September 28, 2010 as counsel for the committee of Unsecured Creditors in the AppPremFuels Case.

1.1.13  "AppPremFuels Funds" shall mean those funds that are attributable to the liquidation of AppPremFuels assets as determined pursuant to the formula set forth in Article IV.A of the Disclosure Statement, which is incorporated into this Plan pursuant to this reference the same as if it were set forth in its entirety herein, and the net collected proceeds from the prosecution of the Causes of Action attributable to AppPremFuels as AppPremFuels interests may appear.

1.1.14  "Assets" shall mean all cash or other property held by or on behalf of the CLO as of the Effective Date, all cash or other property recovered by or on behalf of the Liquidating Trustee after the Effective Date, the Causes of Action and any other asset as defined by Code § 541 with respect to all Debtors.  "Assets" shall not include the AppPremFuels Funds.

1.1.15  "Bankruptcy Cases" or "Cases" shall mean the Debtors' jointly administered cases under Chapter 11 of the Code, but after joint administration is terminated shall mean the separate Bankruptcy Case for a respective Debtor.

1.1.16  "Bankruptcy Code" or "Code" shall mean the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*., as amended from time to time, as applicable to the Bankruptcy Cases.

1.1.17  "Business Day" shall mean a day other than a Saturday, Sunday or other day on which national commercial banks are authorized or required by law to close.

2

1.1.18 "Causes of Action" shall mean, without limitation, any and all of the Debtors' rights, claims and actions,  including (i) avoidance actions arising under or authorized by Code §§ 510, 542 through 551 and 553; (ii) applicable state law avoidance claims; (iii) actions against Professionals to recover fees and expenses that are disallowed by the Court, if any; (iv) the adversary proceedings filed in the Cases; (v) those claims belonging to the Committee pursuant to the Standing Orders; and (vi) any statutory or common law causes or choses of action, rights, suits, damages, judgments, and demands whatsoever of the Debtors, whether known or unknown, now existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring of fact prior to the Petition Date(s); and all of the foregoing that arose during the course of the Bankruptcy Cases through the Effective Date.

1.1.19 "Claim" shall have the same meaning as set forth in Code §101(5), if such claim against the Debtors were in existence on or as of the Petition Date.  The term Claim, when preceded by a reference to a Class of Claims, shall mean a Claim of that Class, except Insurance Claims.

1.1.20 "CLO" shall mean the Court-appointed Chief Liquidating Officer of the Debtors, James H. Frazier, III.

1.1.21 "Committee" shall mean the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee in the AppFuels Bankruptcy Case.

1.1.22 "Confirmation" shall mean the entry of an Order by the Court approving or confirming this Plan.

1.1.23 "Confirmation Date" shall mean the date upon which an Order of Confirmation is entered by the Court confirming this Plan.

1.1.24 "Confirmation Order" or "Order of Confirmation" shall mean the order of the Bankruptcy Court confirming the Plan.

1.1.25 "Court" shall mean the United States Bankruptcy Court for the Eastern District of Kentucky, Ashland Division, within which the Bankruptcy Cases are pending.

1.1.26 "Creditor" or "Claimant" shall mean the owner or holder of a Claim.

1.1.27 "CTB" shall mean Community Trust Bank, Inc.

1.1.28 "CTB Collateral" shall mean the certificates of deposit pledged to CTB to secure obligations in connection with the CTB Letters of Credit.

1.1.29 "CTB Letters of Credit" shall mean the letters of credit issued by CTB to Lyndon to secure obligations pursuant to the Lyndon Bonding Agreement.

1.1.30 "CTB Loan Documents" shall mean the loan documents executed by Debtors and delivered to CTB in connection with the CTB Letters of Credit.

1.1.31 "Debtors" shall mean AppFuels, AppHold, AppPremFuels, AppEnv, KanDevCorp, AppCoalHold, and SouthEagle. The singular term "Debtor" shall mean that certain Debtor identified in the context of the sentence or paragraph utilizing such term.

1.1.32 "Disallowed Claim" shall mean a Claim, or any portion thereof, that has (a) been disallowed by a Final Order; (b) been withdrawn by a Creditor; (c) been scheduled by any of the Debtors but as to which no proof of Claim has been timely filed with the Court pursuant to any Final Order of the Court; or (d) not otherwise been deemed timely filed under any pre-existing bar claims dates entered by Court Orders during the pendency of the Bankruptcy Cases.

1.1.33 "Disclosure Statement" shall mean the disclosure statement, described in Code §1125 in respect to the Plan, including all exhibits and appendices, amendments and modifications thereto, as finally approved by the Bankruptcy Court for use in the solicitations of the votes of the Classes for or against Confirmation of the Plan.

1.1.34 "Disputed Claim" shall mean a Claim or a portion of a Claim which is not an Allowed Claim or a Disallowed Claim on the Effective Date or thereafter.

1.1.35 "Effective Date" shall mean fourteen (14) days following the date of the Confirmation Order, unless the Confirmation Order is stayed pending appeal, or, if a stay of the Confirmation Order is in effect, then the first Business Day after the stay is vacated.

1.1.36 "Employee Medical Claim" shall mean any Claim accorded priority treatment pursuant to Code §507(a)(5), except to the extent that each Claim exceeds the cap set forth in the aforesaid statute, in which case the excess amount above the cap shall be an Unsecured Claim.

1.1.37 "Employee Wage Claim" shall mean any Claim accorded priority treatment pursuant to Code §507(a)(4), except to the extent that such employee's claim exceeds the cap set forth in the aforesaid statute, in which case the excess amount above the cap shall be an Unsecured Claim.

1.1.38 "Final Order" shall mean an order or judgment of the Court which (a) shall not have been reversed, stayed, modified or amended and for which the time for appeal, or to seek review or rehearing, shall have expired and as to which no appeal or petition for review, rehearing or petition for certiorari is pending, (b) if appealed, shall have been affirmed and no further hearing, appeal or petition for certiorari can be taken or granted, or (c) shall not be subject to a stay, provided, however, that no Order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Federal Rule of Civil Procedure 60 or Bankruptcy Rule of Procedure 9024 may be filed with respect to such order

4

1.1.39 "Heritage Bank" shall mean Heritage Bank of Ashland, Inc. in Ashland, Kentucky.

1.1.40 "Heritage Bank Collateral" shall mean the property, if any, pledged to Heritage Bank to secure obligations in connection with the Heritage Bank Letter of Credit.

1.1.41 "Heritage Bank Letter of Credit" shall mean the Letter of Credit issued by Heritage Bank to Lyndon to secure obligations pursuant to the Lyndon Bonding Agreement.

1.1.42 "Heritage Bank Loan Documents" shall mean the loan documents executed by Debtors and delivered to Heritage Bank in connection with the Heritage Bank Letter of Credit.

1.1.43 "Island Fork Permits" shall mean Permit Nos. O-3029-92 and S-3016-93 issued by the West Virginia Parties.

1.1.44 "Insurance Claim" means any claim arising from an incident or occurrence that is or may be covered under the Debtors' insurance policy or policies in effect prior to, at or after the Petition Date through the Effective Date.

1.1.45 "Intercompany Claims" shall mean all claims held by any one or more of the Debtors against any one or more of the other Debtors.

1.1.46 "Interest" or "Interests" shall mean the ownership rights of any Person in a Debtor.

1.1.47 "KanDevCorp" shall mean Kanawha Development Corporation, a Debtor in a Chapter 11 Case (No. 09-10375) before this Court.

1.1.48 "Kentucky Parties" shall mean the Commonwealth of Kentucky Environmental and Public Protection Cabinet and its successors which now or in the future have responsibility or jurisdiction to enforce Kentucky's laws and regulations with respect to the Debtors' coal mining activities pursuant to K.R.S. Chapters 224 and 350 and regulations promulgated in furtherance thereof, as well as any other statutes and regulations the Kentucky Parties have authority to enforce.

1.1.49 "Liquidating Trust" shall mean the trust established pursuant to Article 6.3 of this Plan.

1.1.50 "Liquidating Trust Agreement" shall mean the legal document creating the Liquidating Trust.

1.1.51 "Liquidating Trustee" shall be the Person acting as the trustee of the Liquidating Trust or any successor trustee thereof.

1.1.52 "Lyndon" shall mean Lyndon Property Insurance Company.

1.1.53 "Lyndon Adversary" shall mean that certain adversary action pending in the Court against Lyndon as Adversary Case No. 11-01004 styled *Official Committee of Unsecured Creditors v. Lyndon Property Insurance Company and Cumberlan [sic] Surety, Inc.*

1.1.54 "Lyndon Bonding Agreement" shall mean that certain Agreement for Bond dated March 25, 2003, between Lyndon, AppFuels and Illinois Fuels, LLC and all amendments and related agreements, including but not limited to riders, bonds or guarantees.

1.1.55 "Lyndon Letters of Credit" shall mean any Letter of Credit held by Lyndon to secure AppFuels' obligations under the Lyndon Bonding Agreements.

1.1.56 "Person" or "Persons" shall have that meaning as contained in Code §101(41).

1.1.57 "Petition Date" shall mean June 11, 2009, for AppFuels; June 26, 2009, for AppEnv, AppHold, AppPremFuels, and KanDevCorp; and July 7, 2009, for SouthEagle and AppCoalHold.  An order for relief was entered on June 29, 2009 for AppFuels.

1.1.58 "Plan" shall mean this plan of orderly liquidation and distribution filed by the Debtors, the Committee and the AppPremFuels Committee in this Court, as it may be further amended, modified or supplemented from time to time as provided therein.

1.1.59 "Priority Claim" shall mean a claim entitled to priority pursuant to Code §507(a).

1.1.60 "Professional Claims" shall mean the fees and expenses allowed to the Professionals by the Court pursuant to Code §§ 327-331 and 503(b).

1.1.61 "Professionals" shall mean Bunch & Brock in its capacity as counsel for the Debtors; DelCotto Law Group, PLLC, in its capacity as counsel for the Committee; McBrayer, McGinnis, Leslie & Kirkland, PLLC, in its capacity as Special General Counsel for the Debtors; Development Specialists, Inc., in its capacity as a financial advisor to the Committee; Gess, Mattingly & Atchison, P.S.C., in its capacity as Special Conflicts Counsel to the Committee and Special Counsel to the Committee; Diamond McCarthy LLP as Special Litigation Counsel to the Committee; Miller Griffin & Marks, PSC, in its capacity as counsel for the Committee for Unsecured Creditors of AppPremFuels; and all attorneys, accountants, appraisers, examiners, consultants, realtors, and other professional Persons properly retained by the Debtors, the Committee and/or the AppPremFuels Committee, and approved by the Court under the Code, which Persons performed professional services for or on behalf of the Debtors, the Committee and/or the AppPremFuels Committee from the Petition Date through and including the Effective Date (with the exception of fees charged for preparation of and arguments for Professionals' Claims), whose services and expenses are allowable by the Court under Code §330.

1.1.62 "Pro Rata" shall mean proportionately so that the ratio of the amount of the distribution or payment made on account of an Allowed Claim to the amount of distribution or payment made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included, is the same as the ratio of the amount of such Allowed Claim to the total amount of all Allowed Claims in such Class.

1.1.63 "Reclamation Claims" shall mean all claims arising out of or relating to any legal obligation or legal duty of the Debtors to reclaim or perform remediation with respect to any real property for which the Debtor was the owner, permittee or was contractually obligated to perform reclamation work held by either the Kentucky Parties or the West Virginia Parties. This term, when preceded by either Kentucky or West Virginia, shall mean the Reclamation Claims of the referenced party.

1.1.64 "Remaining Alloy Permits" shall mean Permit Nos. O-38-84, O-14-81 and H-631 issued by the West Virginia Parties in respect of KanDevCorp's prior operations in West Virginia.

1.1.65 "Schedules" shall mean those schedules and statements of financial affairs filed in the cases by the Debtors under Federal Rule of Bankruptcy 1007.

1.1.66 "Secured Claim" shall mean (a) a Claim secured by a lien or security interest in or on property of a Debtor, which lien or security interest is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly established in the Debtors' Bankruptcy Cases, but only to the extent that such Claim does not exceed the value of the Debtors' Assets which the Bankruptcy Court finds are valid collateral for such Claim or (b) a Claim that is allowed under the terms of this Plan as a Secured Claim.

1.1.67 "Secured Creditor" shall mean the owner or holder of a Secured Claim.

1.1.68 "SouthEagle" shall mean Southern Eagle Energy, LLC, a Debtor in a Chapter 11 Case (No. 09-10406) before this Court.

1.1.69 "Standing Orders" shall mean those orders entered by the Court [Doc. Nos. 907 and 1480] conferring standing upon to the Committee to prosecute and recover, *inter alia,* the Causes of Action.

1.1.70 "Tax Claims" shall mean Claims of any governmental entity for the payment of taxes accorded priority pursuant to Code § 507(a)(8). The term "Secured Tax Claims" shall mean those tax claims secured by valid liens on assets of a Debtor or the Debtors as of the Petition Date.

1.1.71 "Tax Creditor" shall mean the holder of a Tax Claim.

1.1.72 "Town Square Bank" shall mean the Town Square Bank, Inc. in Ashland, Kentucky.

1.1.73 "Town Square Bank Collateral" shall mean the certificates of deposit pledged to Town Square Bank by Debtors to secure obligations in connection with the Town Square Bank Letters of Credit.

1.1.74 "Town Square Bank Letters of Credit" shall mean the letters of credit issued by Town Square Bank to Lyndon to secure obligations pursuant to the Lyndon Bonding Agreement.

1.1.75 "Town Square Loan Documents" shall mean the loan documents executed by Debtors and delivered to Town Square Bank in connection with the Town Square Bank Letters of Credit.

1.1.76 "Trust Committee" shall mean that post-Effective Date committee created by Plan Section 6.4, infra.

1.1.77 "Unknown Claim" shall mean a claim that was (a) neither listed nor scheduled in the Debtors' Schedules filed in the Court and (b) such creditor had no notice or actual knowledge of the pendency of the Cases in time to comply with Court Orders relating to bar claims deadlines.

1.1.78 "Unsecured Claim" shall mean a Claim that is not entitled to secured status pursuant to Code § 506(a).

1.1.79 "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

1.1.80 "West Virginia Parties" shall mean the West Virginia Department of Environmental Protection and its successors which now or in the future have responsibility or jurisdiction to enforce West Virginia's laws and regulations with respect to the Debtors' coal mining activities pursuant to W. Va. Code 22-3-1 et. seq. and regulations promulgated in furtherance thereof, as well as any other statutes and regulations the West Virginia Parties have authority to enforce.

1.1.81 "West Virginia Permits" shall mean the Island Fork Permit, the Remaining Alloy Permits and the WV-1 Permits.

1.1.82 "WV-1 Permits" shall mean Permit Nos. 0-5006-03, S-5009-97, S-5016-94 and S-5019-00 issued by the West Virginia Parties to AppFuels in respect of Debtor's prior operations at the WV-1 mine.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

2.1     <u>Unclassified Claims</u>: Unclassified Claims for all the Debtors' estates shall consist of Allowed Administrative Claims for AppFuels which shall be paid by the Liquidating Trustee and Allowed Administrative Claims for AppPremFuels which will be paid by the AppPremFuels Committee Counsel, and which shall be a carveout from any Secured Claim against the AppPremFuels Funds, as set forth in this Plan.

2.1.1     <u>United States Trustee Fees</u>:  All U.S. Trustee fees due and owing for all Debtors shall be paid in full on or before the Effective Date by the CLO.  Following the Effective Date, AppPremFuels' obligations to pay U.S. Trustee fees for AppPremFuels from the AppPremFuels Funds shall continue until its individual Case is converted, dismissed or closed, whichever occurs first. The Liquidating Trustee shall pay the post-Effective Date U.S. Trustee fees for AppFuels in the ordinary course as they are incurred until its Case is converted, dismissed or closed, whichever occurs first. Upon the Effective Date, the obligations to pay U.S. Trustees fees in the KanDevCo, AppCoalHold, AppHold, AppEnv and SouthEagle shall end.

2.1.2     <u>Administrative Claims</u>:  Each Claimant, other than Professionals, holding an Administrative Claim shall receive either: (i) with respect to Administrative Claims that are Allowed Administrative Claims on the Effective Date, the amount of such Claimant's Allowed Administrative Claim shall be paid in one cash payment on the Effective Date or as soon thereafter as is practicable; (ii) with respect to Administrative Claims that become Allowed Administrative Claims after the Effective Date, the amount of such Claimant's Allowed Administrative Claim shall be paid as soon as practicable following same becoming an Allowed Administrative Claim; or (iii) such other treatment agreed upon by the Liquidating Trustee or the AppPremFuels Committee Counsel and such Claimant.   All Claimants seeking payment of Administrative Claims shall file their respective requests for allowance and payment thereof no later than thirty (30) days after the Effective Date. Claimants who do not file and serve a request for allowance and payment by the aforesaid bar date will be forever barred from asserting such Claims; provided, however, that Claimants who have previously had their Claims allowed by Court Order do not need to file any further request for allowance unless the amount they are seeking has increased subsequent to entry of said Order.

2.1.3     <u>Professionals Claims</u>: All Professionals seeking payment of Professional Claims shall file their respective requests for allowance and payment thereof no later than thirty (30) days after the Effective Date.  Professionals who do not file and serve a request for allowance and payment by the aforesaid bar date will be forever barred from asserting such Claims; provided, however, that Professionals who have previously had their Claims Allowed by Court Order do not need to file any further Application or request for Allowance unless the amount they are seeking has increased subsequent to entry of said Order. Any Allowed Professional Claim shall be paid by the Liquidating Trust or AppPremFuels Committee Counsel, as appropriate, after entry of a Final Order allowing such Claim, before any distribution to those Claims treated under Article IV.

# ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1    <u>Classification of AppFuels Claims and Interests</u>: The following classification of Claims and Interests shall apply with regard to **AppFuels**:

3.1.1    <u>AppFuels Class 1 (Kentucky Reclamation Claims)</u>:    AppFuels Class 1 shall consist of all Allowed Reclamation Claims of the Kentucky Parties against AppFuels.

3.1.2    <u>AppFuels Class 2 (West Virginia Reclamation Claims)</u>:    AppFuels Class 2 shall consist of all Allowed Reclamation Claims of the West Virginia Parties, including Claims arising from the West Virginia Permits, against AppFuels.

3.1.3    <u>AppFuels Class 3 (Lyndon Claim)</u>:  AppFuels Class 3 shall consist of the Allowed Claim of Lyndon, arising from the Lyndon Bonding Agreement, against AppFuels.

3.1.4    <u>AppFuels Class 4 (CTB Secured Claims)</u>:  AppFuels Class 4 shall consist of the Allowed Secured Claims of CTB against AppFuels, secured by the CTB Collateral.

3.1.5    <u>AppFuels Class 5 (Town Square Bank Secured Claim)</u>: AppFuels Class 5 shall consist of the Allowed Secured Claim of Town Square Bank against App Fuels, secured by the Town Square Collateral.

3.1.6    <u>AppFuels Class 6 (Heritage Bank Secured Claim)</u>: AppFuels Class 6 shall consist of the Allowed Secured Claim of Heritage against AppFuels, secured by the Heritage Bank Collateral.

3.1.7    <u>AppFuels Class 7 (All Other Secured Claims)</u>: AppFuels Class 7 shall consist of all other Allowed Secured Claims against AppFuels, not otherwise classified under this Article.

3.1.8    <u>AppFuels Class 8 (Priority Employee Wage Claims)</u>: AppFuels Class 8 shall consist of all Allowed Employee Wage Claims against AppFuels.

3.1.9    <u>AppFuels Class 9 (Priority Employee Medical Claims)</u>: AppFuels Class 9 shall consist of all Allowed Employee Medical Claims against AppFuels.

3.1.10    <u>AppFuels Class 10 (Priority Tax Claims)</u>: AppFuels Class 10 shall consist of all Allowed Priority Tax Claims against AppFuels.

3.1.11    <u>AppFuels Class 11 (Unsecured Claims)</u>:    AppFuels Class 11 shall consist of all Allowed Unsecured Claims against AppFuels.

3.1.12    <u>AppFuels Class 12 (Intercompany Claims)</u>:    AppFuels Class 12 shall consist of Intercompany Claims against AppFuels.

3.1.13  <u>AppFuels Class 13 (AppHold Interests)</u>:    AppFuels Class 13 shall consist of the AppHold Interests in AppFuels.

3.2    <u>Classification of AppPremFuels Claims and Interests</u>: The following classification of Claims and Interests shall apply with regard to **AppPremFuels**:

3.2.1  <u>AppPremFuels Class 1 (Kentucky Reclamation Claims)</u>:    AppPremFuels Class 1 shall consist of all Allowed Reclamation Claims of the Kentucky Parties against AppPremFuels.

3.2.2  <u>AppPremFuels Class 2 (West Virginia Reclamation Claims)</u>: AppPremFuels Class 2 shall consist of all Allowed Reclamation Claims of the West Virginia Parties, including Claims arising from the West Virginia Permits, against AppPremFuels.

3.2.3  <u>AppPremFuels Class 3</u>  [Intentionally Omitted]

3.2.4  <u>AppPremFuels Class 4 (All Other Secured Claims)</u>:  AppPremFuels Class 4 shall consist of all other Allowed Secured Claims against AppPremFuels not otherwise classified under this Article.

3.2.5  <u>AppPremFuels Class 5 (Priority Wage Claim)</u>:    AppPremFuels Class 5 shall consist of all Allowed Priority Wage Claims against AppPremFuels.

3.2.6  <u>AppPremFuels Class 6 (Priority Employee Medical Claims)</u>: AppPremFuels Class 6 shall consist of all Allowed Priority Medical Claims against AppPremFuels.

3.2.7  <u>AppPremFuels Class 7 (Priority Tax Claims)</u>: AppPremFuels Class 7 shall consist of all Allowed Priority Tax Claims against AppPremFuels.

3.2.8  <u>AppPremFuels Class 8 (Unsecured Claims)</u>: AppPremFuels Class 8 shall consist of Allowed Unsecured Claims against AppPremFuels.

3.2.9  <u>AppPremFuels Class 9 (Intercompany Claims)</u>: AppPremFuels Class 9 shall consist of Intercompany Claims against AppPremFuels.

3.2.10  <u>AppPremFuels Class 10 (AppFuels Interests)</u>:    AppPremFuels Class 10 shall consist of the ownerships Interests of AppFuels in AppPremFuels.

3.3    **KanDevCo** did not have any assets listed in its Schedules and/or did not realize any proceeds from the Debtors' liquidation sales so no classification of Claims and Interests is made with respect to KanDevCo.

3.4    **AppHold** did not have any assets listed in its Schedules and/or did not realize proceeds from the Debtors' liquidation sales so no classification of Claims and Interests is made with respect to AppHold.

11

3.5   **AppEnv** did not have any assets listed in its Schedules and/or did not realize proceeds from the Debtors' liquidation sales so no classification of Claims and Interests is made with respect to AppEnv.

3.6   **AppCoalHold** did not have any assets listed in its Schedules and/or did not realize proceeds from the Debtors' liquidation sales so no classification of Claims and Interests is made with respect to AppCoalHold.

3.7   **SouthEagle** did not have any assets listed in its Schedules and/or did not realize proceeds from the Debtors' liquidation sales so no classification of Claims and Interests is made with respect to SouthEagle.


## ARTICLE IV
## TREATMENT AND IMPAIRMENT OF CLASSIFIED CLAIMS

4.1   <u>Treatment of **AppFuels** Claims</u>:  On the respective dates set forth herein, or as soon as practicable following the date a classified claim becomes an Allowed Claim, whichever is later, the Liquidating Trustee shall make the following payments, undertake the considerations hereinafter set forth, and be obligated with respect to such Claims against AppFuels from the balance of the proceeds from the Assets.

4.1.1   <u>AppFuels Class 1 Claims (Kentucky Parties Claims)</u>:  The AppFuels Class 1 Claimants are unimpaired and Claimants in this Class shall not be entitled to vote for or against the Plan.  Upon entry of the Confirmation Order all claims of the Kentucky Parties against AppFuels and the Liquidating Trust are hereby forever disallowed and released in accordance with the Court's order approving the Debtors' settlement with the Kentucky Parties [Doc. No. 1341].

4.1.2   <u>App Fuels Class 2 Claims (West Virginia Parties Claims)</u>:  The AppFuels Class 2 Claimants are unimpaired and shall not be entitled to vote for or against the Plan.  Any claim of the West Virginia Parties related to reclamation obligations of the Debtor have been fully satisfied by the assumption of liabilities by third parties and/or the transfer of any permit on which AppFuels was liable.  Any remaining West Virginia Parties Reclamation Claims not treated previously shall be transferred to and become an AppFuels Class 9 Unsecured Claims.

4.1.3   <u>AppFuels Class 3 Claim (Lyndon Claim)</u>:  The AppFuels Class 3 Claimant holds a contingent claim pending the outcome of the Lyndon Adversary.  The Claim of Lyndon shall be estimated at zero.  Lyndon shall not be entitled to vote for or against the Plan unless the Court determines otherwise and Lyndon shall receive no distribution unless and until the Lyndon Claim becomes an Allowed Claim.

4.1.4   <u>AppFuels Class 4 Claim (CTB Secured Claim)</u>:  The AppFuels Class 4 Claimant may be impaired and shall be treated as impaired pending resolution of the Lyndon Adversary.  If the Committee is successful in the Lyndon Adversary, then there is no risk to

CTB, and the Creditor is unimpaired and shall not be entitled to vote for or against the Plan. The CTB Secured Claim shall be equal to the adjudicated risk on the ground, and all surplus value of the CTB Collateral over said risk shall be released to the Liquidating Trustee. If such adversary is neither settled nor adjudicated in a manner favorable to the plaintiff, then AppFuels, the Committee and/or the Liquidating Trustee, as appropriate, may seek from the Court a determination with regard to the allowance and/or treatment of the CTB Secured Claim.

4.1.5   AppFuels Class 5 Claim (Town Square Bank Secured Claim):   The AppFuels Class 5 Claimant may be impaired and shall be treated as impaired pending resolution of the Lyndon Adversary. If the Committee is successful in the Lyndon Adversary, Town Square Bank is unimpaired and shall not be entitled to vote for or against the Plan. The Town Square Bank Secured Claim shall be equal to the adjudicated risk on the ground, and the surplus value of the Town Square Bank Collateral over said risk shall be released to the Liquidating Trustee. If the Lyndon Adversary is neither settled nor adjudicated in a manner favorable to the plaintiff, then AppFuels, the Committee and/or the Liquidating Trustee, as appropriate, may seek from the Court a determination with regard to the allowance and/or treatment of the Town Square Bank Secured Claim.

4.1.6   AppFuels Class 6 Claim (Heritage Bank Secured Claim):   The AppFuels Class 6 Claimant may be impaired and shall be treated as impaired pending resolution of the Lyndon Adversary. If the Committee is successful in the Lyndon Adversary, Heritage Bank is unimpaired and shall not be entitled to vote for or against the Plan. The Heritage Secured Claim shall be equal to the adjudicated risk on the ground, and the surplus value of the Heritage Bank Collateral over said risk shall be released to the Liquidating Trustee. If the Lyndon Adversary is neither settled nor adjudicated in a manner favorable to the plaintiff, then AppFuels, the Committee and/or the Liquidating Trustee, as appropriate, may seek from the Court a determination with regard to the allowance and/or treatment of the Heritage Bank Secured Claim.

4.1.7   AppFuels Class 7 Claims (All Other Secured Claims):   The AppFuels Class 7 Claimants are impaired and shall be entitled to vote for or against the Plan. Within forty-five (45) days of the Effective Date, the Liquidating Trustee shall either (a) provide the holder of an AppFuels Class 7 Claim notice of its intent to object to the proof of claim of said AppFuels Class 7 Creditor or (b) pay the holder of an Allowed AppFuels Class 7 Claim the value of its Allowed AppFuels Class 7 Claim, from the Liquidating Trust at such time as funds are available.

4.1.8   AppFuels Class 8 Claims (Priority Employee Wage Claims):   The AppFuels Class 8 Claimants are impaired and shall be entitled to vote for or against the Plan. After full payment of the AppFuels Class 7 Claims, all Allowed AppFuels Class 8 Claims shall be paid in full by the Liquidating Trust in amounts equal to their Allowed Claims, provided, however, if there are insufficient funds to pay all such Allowed Claims in full, then such Allowed Claims shall be paid Pro Rata at such time as funds are available.

4.1.9   AppFuels Class 9 Claims (Priority Employee Medical Claims):   The AppFuels Class 9 Claimants are impaired and shall be entitled to vote for or against the Plan. If there are sufficient funds remaining in the Liquidating Trust after payment in full of AppFuels

Class 8, then all Allowed AppFuels Class 8 Claims shall be paid in full by the Liquidating Trust in amounts equal to their Allowed Claims, provided, however, if there are insufficient funds to pay all such Allowed Claims in full, then such Allowed Claims shall be paid Pro Rata at such time as funds are available.

4.1.10  <u>AppFuels Class 10 Claims (Priority Tax Claims)</u>:  The AppFuels Class 10 Claimants are impaired and shall be entitled to vote for or against the Plan.  If there are sufficient funds remaining in the Liquidating Trust after payment in full of AppFuels Class 9, then all Allowed Priority Tax Claims shall be paid in full by the Liquidating Trust in amounts equal to their Allowed Claims, provided, however, if there are insufficient funds to pay all such Allowed Claims in full, then such Allowed Claims shall be paid Pro Rata at such time as funds are available.

4.1.11  <u>AppFuels Class 11 Claims (Unsecured Claims)</u>:  The AppFuels Class 11 Claimants are impaired and shall be entitled to vote for or against the Plan.  Each holder of an Allowed Claim in AppFuels Class 11 shall receive Pro Rata payments from the Liquidating Trust following payment in full of the Allowed AppFuels Class 10 Claims at such time as funds are available.

4.1.12  <u>AppFuels Class 12 Claims (Intercompany Claims)</u>:  The AppFuels Class 12 Claimants are impaired, are deemed to have rejected the Plan, and the Claims in this Class shall be deemed disallowed.  No property will be distributed to or retained by the AppFuels Class 12 Claimants and such Claims shall be treated pursuant to Plan §6.1, <u>infra</u> and pursuant to this Plan section.

4.1.13  <u>AppFuels Class 13 Interests (AppFuels Interests)</u>:  The AppFuels Class 13 AppFuels Interests are impaired and are deemed to have rejected the Plan.  No property will be distributed to or retained by the holders of Interests in AppFuels Class 13 on account of such Interests, and upon the Effective Date, such Interests shall be nullified and any Claim related thereto shall be deemed disallowed.

4.2    <u>Treatment of **AppPremFuels** Claims</u>.  AppPremFuels Committee Counsel shall distribute the AppPremFuels Funds to Persons holding Allowed Claims against AppPremFuels, including any Unclassified Claimants, in conformity with the terms of this Plan.

4.2.1  <u>AppPremFuels Class 1 Claims (Kentucky Parties Claims)</u>:    The AppPremFuels Class 1 Claimants are unimpaired and are therefore not entitled to vote for or against the Plan.  Upon entry of the Confirmation Order all claims of the Kentucky Parties against AppPremFuels and the AppPremFuels Committee Counsel are hereby forever disallowed and released in accordance with the Court's order approving the Debtors' settlement with the Kentucky Parties [Doc. No. 1341].

4.2.2  <u>AppPremFuels Class 2 Claims (West Virginia Parties Claims)</u>:    The AppPremFuels Class 2 Claimants are unimpaired and are therefore not entitled to vote for or against the Plan.  Any claim of the West Virginia Parties related to reclamation obligations of the Debtor have been fully satisfied by the assumption of liabilities by third parties and/or the

14

transfer of any permit on which AppPremFuels was liable.  Any remaining West Virginia
Reclamation Claims not treated previously shall be transferred to and become an AppPremFuels
Class 8 Unsecured Claim as to this Debtor.

4.2.3   AppPremFuels Class 3 Claim – [Intentionally Omitted].

4.2.4   AppPremFuels Class 4 Claims (All Secured Claims):  The AppPremFuels
Class 4 Claimants are impaired and shall be entitled to vote for or against the Plan.  Within forty-
five (45) days of the Effective Date, the AppPremFuels Committee Counsel shall either (a)
provide the holder of a AppPremFuels Class 4 Claim notice of its intent to object to the proof of
claim of said AppPremFuels Class 4 Creditor or (b) pay the holder of an Allowed AppPremFuels
Class 4 Claim the value of its Allowed AppPremFuels Class4 Claim, from the AppPremFuels
Funds at such time as funds are available and in conformity with the terms of this Plan.

4.2.5   AppPremFuels Class 5 Claims (Priority Employee Wage Claims):  The
AppPremFuels Class 5 Claimants are impaired and shall be entitled to vote for or against the
Plan.  After full payment of the AppPremFuels Class 4 Claims, all Allowed AppPremFuels Class
5 Claims shall be paid in full by the AppPremFuels Committee Counsel in amounts equal to their
Allowed Claim, provided, however, if there are insufficient funds to pay all such Allowed
Claims in full, then such Allowed Claim shall be paid Pro Rata at such time as funds are
available.

4.2.6   AppPremFuels Class 6 Claims (Priority Employee Medical Claims):  The
AppPremFuels Class 6 Claimants are impaired and shall be entitled to vote for or against the
Plan.  If there are sufficient funds remaining with the AppPremFuels Committee Counsel after
payment in full of AppPremFuels Class 5, then all Allowed AppPremFuels Class 6 Claims shall
be paid in full in and by the AppPremFuels Committee Counsel in amounts equal to their
Allowed Claim, provided, however, if there are insufficient funds to pay all such Allowed
Claims in full, then such Allowed Claim shall be paid Pro Rata at such time as funds are
available.

4.2.7   AppPremFuels Class 7 Claims (Priority Tax Claims):  The AppPremFuels
Class 7 Claimants are impaired and shall be entitled to vote for or against the Plan.  If there are
sufficient funds remaining with the AppPremFuels Committee Counsel after payment in full of
AppPremFuels Class 6, then all Allowed AppPremFuels Class 7 Claims shall be paid in full in
and by the AppPremFuels Committee Counsel in amounts equal to their Allowed Claim,
provided, however, if there are insufficient funds to pay all such Allowed Claims in full, then
such Allowed Claim shall be paid Pro Rata at such time as funds are available.

4.2.8   AppPremFuels Class 8 Claims (Unsecured Claims):  The AppPremFuels
Class 8 Claimants are impaired and shall be entitled to vote for or against the Plan.  Each holder
of an Allowed Claim in AppPremFuels Class 8 shall receive Pro Rata payments from the
AppPremFuels Committee Counsel following payment in full of the Allowed AppPremFuels
Class 7 Claims at such time as funds are available.

4.2.9   AppPremFuels Class 9 Claims (Intercompany Claims):   The AppPremFuels Class 9 Claimants are impaired, and are deemed to have rejected the Plan upon the Effective Date, the Claims in this Class shall be deemed disallowed.  No property will be distributed to or retained by the holders of Allowed Claims in AppPremFuels Class 9 and such Claims shall be treated pursuant to Plan §6.1, infra and pursuant to this Plan section.

4.2.10   AppPremFuels Class 10 Interests (AppFuels Interests):   The AppPremFuels Class 10 Interests owned by AppFuels are impaired and are deemed to have rejected the Plan.  No property will be distributed to or retained by the holders of Interests in AppPremFuels Class 10 on account of such Interests, and upon the Effective Date such Interests shall be nullified and any Claim relating thereto shall be deemed disallowed.

4.3   **KanDevCorp** did not have any assets listed in its Schedules and/or did not realize proceeds from the Debtors' liquidation sales so no classification of Claims and Interests is made with respect to its liabilities This Debtor may be dissolved at such time as the Liquidating Trustee, in its sole discretion, believes it appropriate to do so.  On the Effective Date, this Debtor's case shall be deemed closed and its case removed from the Court's active docket. There will be no distribution to this Debtor's Creditors.

4.4   **AppHold** did not have any assets listed in its Schedules and/or did not realize proceeds from the Debtors' liquidation sales so no classification of Claims and Interests is made with respect to its liabilities.  This Debtor may be dissolved at such time as the Liquidating Trustee, it its sole discretion, believes it appropriate to do so.  On the Effective Date, this Debtor's case shall be deemed closed and its case removed from the Court's active docket. There will be no distribution to this Debtor's Creditors.

4.5   **AppEnv** did not have any assets listed in its Schedules and/or did not realize proceeds from the Debtors' liquidation sales so no classification of Claims and Interests is made with respect to its liabilities. This Debtor may be dissolved at such time as the Liquidating Trustee, it its sole discretion, believes it appropriate to do so.  On the Effective Date, this Debtor's case shall be deemed closed and its case removed from the Court's active docket. There will be no distribution to this Debtor's Creditors.

4.6   **AppCoalHold** did not have any assets listed in its Schedules and/or did not realize proceeds from the Debtors' liquidation sales so no classification of Claims and Interests is made with respect to its liabilities. This Debtor may be dissolved at such time as the Liquidating Trustee, it its sole discretion, believes it appropriate to do so.  On the Effective Date, this Debtor's case shall be deemed closed and its case removed from the Court's active docket. There will be no distribution to this Debtor's Creditors.

4.7   **SouthEagle** did not have any assets listed in its Schedules and/or did not realize proceeds from the Debtors' liquidation sales so no classification of Claims and Interests is made with respect to its liabilities. This Debtor may be dissolved at such time as the Liquidating Trustee, it its sole discretion, believes it appropriate to do so.  On the Effective Date, this Debtor's case shall be deemed closed and its case removed from the Court's active docket. There will be no distribution to this Debtor's Creditors.

## ARTICLE V
## PROVISIONS APPLICABLE TO ALL OR SPECIFIC CLASSES OF CLAIMS

5.1    Bar Date for Claims:  The bar dates below have been or hereby are established. The Claim of any Person who failed or fails to timely file a proof of claim is hereby disallowed and shall be forever barred from having an Allowed Claim herein.  The Claim of any Creditor who failed to file, or fails to timely file a proof of claim by the appropriate bar date shall receive no payment or distribution from the Liquidating Trust or from the AppPremFuels Committee Counsel and shall be forever barred from attempting to seek payment from any Debtors' Assets or the Liquidating Trust without the need for any Court Order.

5.1.1    Employee Medical Claims. The bar date for asserting Employee Medical Claims expired on October 25, 2010 pursuant to a Court order [Doc. No. 1264].

5.1.2    Employee Wage Claims.   The bar date for asserting Employee Wage Claims expired on March 21, 2011 pursuant to Court notice [Doc. No. 1399].

5.1.3    All Other Claims.   The bar date for asserting all Claims, other than Employee Medical Claims, rejection claims (defined below in Section 5.1.4) and Tax Claims, expired on March 21, 2011 pursuant to Court notice [Doc. No. 1399].

5.1.4    Rejection Claims.   The bar date for asserting Claims arising from the rejection of executory contracts or unexpired leases expired on March 14, 2010 pursuant to a Court order [Doc. No. 830].

5.1.5    Tax Claims. Any holder of a Tax Claim who has yet to file a Claim shall file a Claim no later than thirty (30) days after the Effective Date or such other date as may be fixed by a Court Order.

5.1.6    [Intentionally Omitted].

5.1.7    Unknown Claims.

5.1.7.1 Establishment of a Procedure for Notice for Unknown Claims. Within thirty days after the Effective Date, the Liquidating Trustee and the AppPremFuels Committee Counsel shall place on advertisement in the Lexington Herald Leader in Lexington, Kentucky and The Charleston Gazette in Charleston, West Virginia which shall state as follows:

NOTICE TO CREDITORS OF APPALACHIAN FUELS, LLC AND APPALACHIAN PREMIUMS FUELS, LLC: Your rights may have been affected by a Chapter 11 Plan confirmed by the United States Bankruptcy Court, Eastern District of Kentucky, Lexington, Kentucky.  You may have the right to file a claim against one of these Debtors but you must act within thirty days of

17

this notice to preserve your rights.  For more information, go to
https://sites.google.com/site/appfuelsch11/.

The thirty day time period for Unknown Claims to be filed shall be the Unknown Claims Bar Date.  The proof of claim shall be accompanied by the Creditor's affidavit establishing its qualification as an Unknown Claim as such term is defined in Plan §1.1.77.

        5.1.7.2 Effect of Unknown Claims Bar Date.  A Creditor holding an Unknown Claim must file its Claim before the Unknown Claim Bar Date or its Claim shall be disallowed in all respects.  Holders of an Unknown Claim that do not file a proof of claim by the Unknown Claim Bar Date shall be forever barred from asserting such Claims and from seeking any recovery from the Liquidating Trust or the AppPremFuels Committee Counsel.

        5.2    Satisfaction of Claims:  The payments, distributions and other treatment provided in respect to each Allowed Claim in this Plan shall be in complete satisfaction and release of such Allowed Claim.

        5.3    Objections to Claims:  At all times prior to the Effective Date, the Debtors and the Committee shall be entitled to object to Claims.  Subsequent to the Effective Date, the Liquidating Trustee or, with regard to the Claims against AppPremFuels, the AppPremFuels Committee Counsel, shall be entitled to object to Claims.  Any such objections to Claims shall be filed and served on or before the later of (i) two years after the Effective Date, (ii) any date as may be fixed by the Court, or (iii) 60 days after the filing of an applicable proof of claim.

        5.4    Estimation of Claims:  At any time (a) prior to the Effective Date, the Debtors and the Committee, and (b) subsequent to the Effective Date, the Liquidating Trustee or the AppPremFuels Committee Counsel, may request that the Court estimate any contingent or unliquidated Claim to the extent permitted by Code §502(c).  If the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtors, the Committee, the Liquidating Trustee or the AppPremFuels Committee Counsel, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

        5.5    No Distributions Pending Allowance:  Notwithstanding any other provision hereof or as contained in the Liquidating Trust Agreement, if any Claim or any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.  Pursuant to Code §502(d), no payment or distribution provided hereunder shall be made to any entity unless and until the entity has repaid the amount for which it is liable or turned over to the Liquidating Trustee any property that is recoverable under Code §§ 522(i), 542, 543, 550, or 553, including without limitation, all transfers avoidable pursuant to Code §§ 547 and 548.

5.6     Distribution to Unsecured Claims:  Subject to any applicable restrictions in this Plan, after payment to all prior classes and resolution of all Disputed Claims, the Liquidating Trustee and/or the AppPremFuels Committee Counsel, as applicable, shall commence distribution to the holders of the Allowed Unsecured Claims.  Notwithstanding any provision of this Plan, the Disclosure Statement, or the Confirmation Order to the contrary, distributions shall not be required to be made unless and until the aggregate cash available for distribution, as determined in the Liquidating Trustee's sole discretion (or, in the case of AppPremFuels, the AppPremFuels Committee Counsel's sole discretion), is sufficient to warrant such a distribution.

5.7     Authority to Compromise and Settle Disputed Claims without Court Approval: On and after the Effective Date, pursuant to Federal Rule of Bankruptcy Procedure 9019(b), the Liquidating Trustee (or, in the case of AppPremFuels, the AppPremFuels Committee Counsel) shall have the sole authority to compromise, settle, or otherwise resolve or withdraw any objections to Disputed Claims without approval of the Court.

## ARTICLE VI
## MEANS OF IMPLEMENTATION OF PLAN

6.1     No Substantive Consolidation or Recharacterization of Intercompany Claims and Interests:  Notwithstanding other prior orders of the Court, there shall be no substantive consolidation of the Debtors under this Plan.  The joint administration of the Debtors' Cases set forth in Doc. No. 155 shall be deemed rescinded on the Effective Date and the Claims filed against each Debtor and the rights and remedies of each separate creditor against each Debtor shall be treated in its separate case in conformity with the terms of this Plan.  On the Effective Date, all Intercompany Claims shall be deemed disallowed in conformity with Plan §4.1.12, supra, except as otherwise provided for under this Plan.  **Confirmation of the Plan shall forever bar the holder of an Interest and Intercompany Claim in any of the Debtors from seeking an allowance of such Interests or Claim**.

6.2     Transfer of the AppPremFuels Funds:  On the Effective Date, the CLO shall deliver or pay over to the AppPremFuels Committee Counsel all of the AppPremFuels Funds in his possession.  The AppPremFuels Committee Counsel shall have all rights, responsibilities and duties of the Liquidating Trustee and the Liquidating Trust as set forth in this Plan, solely with respect to the AppPremFuels Funds and Creditors of AppPremFuels, except neither AppPremFuels nor the AppPremFuels Committee Counsel shall have any right to (i) pursue any Causes of Action, (ii) assert any claim against any of the other Debtors, their Professionals, or the Liquidating Trust, (iii) dissolve AppPremFuels or (iv) make any claim against Lyndon, the CTB Collateral, the Heritage Bank Collateral, or the Town Square Bank Collateral.  Post-Confirmation, the Liquidating Trustee shall pay to the AppPremFuels Committee Counsel any net litigation proceeds that are attributed to AppPremFuels, as AppPremFuels' interests may appear. All such Assets transferred to the Liquidating Trust shall be subject to the Allowed Claims of the AppFuels' Creditors and the terms of this Plan and the AppPremFuels Funds transferred to the AppPremFuels Committee Counsel shall be subject to the Allowed Claims of the AppPremFuels' Creditors and the terms of this Plan.  AppPremFuels Committee Counsel is appointed as representative of the AppPremFuels estate under Code §1123(b)(3)(B), but shall not

be subject to the provisions of Plan §§ 6.3, 6.6, 6.7.4, 6.7.6 and 6.12 of this Plan, except as otherwise specifically provided in such sections.

6.3     Establishment of Liquidating Trust: On the Effective Date, AppFuels shall execute the Liquidating Trust Agreement in substantially the form attached as Exhibit 2 to the Disclosure Statement. The Liquidating Trust Agreement shall be incorporated into this Plan as if set out fully herein. The Liquidating Trustee shall be authorized and directed to take all steps necessary in furtherance of this Plan and fulfillment of the purpose of the Liquidating Trust. On the Effective Date, the Assets and all rights to the Assets shall be delivered, transferred to or paid over to the Liquidating Trust. Thereafter all such Assets shall be vested in and owned by the Liquidating Trust.

6.3.1   Purpose of Liquidating Trust: The Liquidating Trust is hereby established for the purposes of pursuing the Causes of Action, receiving and administering the Assets, and liquidating the Assets transferred to it in furtherance of the Plan for the sole benefit of the holders of beneficial interests in the Liquidating Trust and making distributions to holders of AppFuels' Allowed Claims. The Liquidating Trustee shall not continue or engage in the conduct of any trade or business. The Liquidating Trust shall be the transferee of the Assets of AppFuels with the right to act in its name and shall not be deemed to be the same legal entity as AppFuels.

6.3.2   Appointment of the Liquidating Trustee. Development Specialists, Inc. shall be the trustee of the Liquidating Trust and is appointed as the representative of the AppFuels estate under Code §1123(b)(3)(B). In the event that Development Specialists, Inc. ceases to serve as Liquidating Trustee for any reason, a successor shall be designated pursuant to the Liquidating Trust Agreement. Upon the designation of the Liquidating Trustee or successors, the identity and connections of said trustee, if any, with the Debtors, their creditors, any parties in interest in the Bankruptcy Cases or the United States Trustee shall be disclosed in writing and filed with the Court.

6.3.3   Powers of the Liquidating Trustee. The Liquidating Trustee shall have the powers, rights and interests of a trustee under Code §1106. The powers of the Liquidating Trustee shall include all rights and powers necessary and appropriate to implement the provisions of the Liquidating Trust Agreement and to administer the Liquidating Trust, including, without limitation, the power to:   (i) administer each Debtor's estate (but not AppPremFuels) and the Assets; (ii) prosecute and collect all Causes of Action and distribute the net collected proceeds of any recovery attributable to AppPremFuels to the AppPremFuels Committee Counsel; (iii) make all distributions in accordance with this Plan to the extent such distributions are to be made from the Assets, including the payment of United States Trustee fees accruing in the AppFuels Case after the Effective Date until the closing or dismissal of the AppFuels Case; (iv) retain professionals and other agents; (v) take such steps as are reasonable and necessary to accomplish the Liquidating Trust's purpose; (vi) file all post-Effective Date tax returns on behalf of the Liquidating Trust; and (vii) otherwise perform the functions and take actions provided for or permitted in the Plan, the Liquidating Trust Agreement, all as provided in and subject to the terms and provisions of the Plan, the Confirmation Order and the Liquidating Trust Agreement. The Liquidating Trustee shall be responsible for paying or satisfying all liabilities including: (a) any post-Effective Date expenses necessary or appropriate on the part of

the Liquidating Trust in respect of consummation of the Plan; (b) any post-Effective Date expenses incurred for the benefit of or in connection with the operation of the Liquidating Trust; and (c) any other obligations of the Liquidating Trust expressly set forth in the Plan or the Liquidating Trust Agreement. Without limiting the foregoing, from and after the Effective Date, the Liquidating Trust shall dispose of the assets of the Liquidating Trust in accordance with the provisions of the Plan, the Confirmation Order and the Liquidating Trust Agreement.

       6.3.4   <u>Investment Powers:</u>   The right and power of the Liquidating Trustee to invest the Assets or any other cash transferred to the Liquidating Trust and any income earned by the Liquidating Trust, shall be limited to the right and power to invest such cash in a manner consistent with the Liquidating Trust Agreement or applicable order of the Court and may be further limited to avoid the Liquidating Trust from becoming subject to the Investment Company Act of 1940; provided, however, that the Liquidating Trust may expend the cash of the Liquidating Trust: (i) as reasonably necessary to meet contingent liabilities and to maintain the value of the assets of the Liquidating Trust during the liquidation; (ii) to pay reasonable administrative expenses of the Liquidating Trust that are incurred (including, but not limited to, any taxes imposed on the Liquidating Trust or fees and expenses in connection with the administration and liquidation of the assets of the trust); and (iii) to satisfy other liabilities incurred or assumed by the Liquidating Trust (or to which the assets of the Liquidating Trust are otherwise subject) in accordance with the Plan or the Liquidating Trust Agreement.

       6.3.5   <u>Liability of Liquidating Trustee and AppPremFuels Committee Counsel</u>. Notwithstanding any other provision of the Plan, the Liquidating Trustee and the AppPremFuels Committee Counsel shall not be held personally liable, directly or indirectly, for any decision, action, inaction, activity or inactivity arising from the exercise of its duties as Liquidating Trustee or as the AppPremFuels Committee Counsel, except for fraud, gross negligence or gross mismanagement.

       6.4   <u>Dissolution of the Committee and Appointment of Trust Committee:</u>   The Committee shall be dissolved upon the Effective Date, except that the Debtors, the Committee, AppPremFuels Committee Counsel, or their Professionals or any other interested party may appear at any hearing to consider applications for final allowances of compensation and reimbursement of expenses and to prosecute any objections to such applications, if applicable. The dissolution of the Committee shall have no impact on litigation initiated on or before the Effective Date. Upon the Liquidating Trustee's designation under the Liquidating Trust Agreement, a Trust Committee of three members appointed by the Committee shall be created. Each member of the Trust Committee shall be entitled to one vote on matters that are presented to the Trust Committee for decision.  The Trust Committee shall supervise the Liquidating Trust and the Liquidating Trustee as set forth in the Liquidating Trust Agreement.   The Trust Committee shall continue to exist until the termination of the Liquidating Trust, at which time the Trust Committee shall disband and shall cease to exist.  Any member of the Trust Committee may resign at any time, in which event the Liquidating Trustee shall have the option of appointing a successor member, who shall be an unsecured creditor or representative of an unsecured creditor of AppFuels.

6.5    Cessation of the Conduct of Business of the Debtors; Post-Effective Date Involvement of Professionals:   Upon and after the Effective Date, the CLO, other officers, directors, employees, agents or other representatives of the Debtors will have no rights to operate or liquidate the Debtors' businesses.  After the Effective Date, the Liquidating Trustee shall have full and complete power to act on behalf of AppFuels and the AppPremFuels Committee Counsel will have full and complete power to act on behalf of AppPremFuels, except as such powers are limited by the provisions of this Plan.  The Confirmation Order shall constitute an Order of the Court pursuant to Code §1107(a) limiting the rights, powers and duties of the officers, directors, employees, agents or other representatives of the Debtors, except as provided herein and in the Trust Agreement. The Confirmation Order shall constitute an Order of withdrawal of all Professionals employed by the Debtors as of the Effective Date, except for McBrayer, McGinnis, Leslie and Kirkland, PLLC who may continue to serve as special counsel to the Liquidating Trustee. After the Effective Date, the DelCotto Law Group, PLLC, Development Specialists, Inc., Gess, Mattingly & Atchison, P.S.C. and Diamond McCarthy LLP shall continue to serve as counsel or other professionals to the Liquidating Trustee unless and until such time as the Liquidating Trustee retains alternative counsel or professionals pursuant to Section 6.10 of the Plan. Also after the Effective Date, Miller Griffin & Marks P.S.C. shall continue to serve as AppPremFuels Committee Counsel.

6.6    Tax Treatment of the Liquidating Trust.   Under the terms provided for in the Liquidating Trust Agreement, each Debtor, the Liquidating Trustee and the holders of beneficial interests in the Liquidating Trust will treat the Liquidating Trust as a "liquidating trust" within the meaning of Treasury Regulation § 301.7701-4(d) and any comparable provision of state or local law. Consistent with this treatment, the transfer of assets to the Liquidating Trust will be characterized solely for tax purposes as a transfer of the assets to the holders of Allowed Claims followed by a transfer of the assets by the holders of Allowed Claims to the Liquidating Trust in exchange for beneficial interests in the trust; the holders of beneficial interests in the Liquidating Trust will be treated solely for tax purposes as the grantors and deemed owners of the trust; and the Liquidating Trustee and the holders of beneficial interests in the Liquidating Trust will use consistent valuations for the transferred assets for tax purposes. The Liquidating Trustee shall be authorized to take any action necessary to maintain compliance with this regulation or its successor that does not contradict the terms of the Liquidating Trust Agreement, this Plan or the Confirmation Order.

6.7    Distributions from the Liquidating Trust (and AppPremFuels Funds).  All distributions from the Liquidating Trust to the holders of interests in the Liquidating Trust (and all distributions of the AppPremFuels Funds by the AppPremFuels Funds Committee Counsel) shall be made in accordance with such claimants' respective Pro Rata shares of the beneficial interests held therein at such time and in such amounts as shall be determined by the Liquidating Trustee pursuant to the Liquidating Trust Agreement and/or this Plan. The Liquidating Trustee shall make distributions as when appropriate; however, the Liquidating Trustee shall cause the Liquidating Trust to retain sufficient funds as reasonably necessary for the Liquidating Trust to: (a) meet contingent liabilities and maintain the value of its assets during liquidation; (b) pay reasonable expenses of administering the Liquidating Trust that have been incurred (including, but not limited to, any taxes imposed on the Liquidating Trust or fees and expenses in connection with the post-Effective Date administration and liquidation of the assets of the trust); and (c)

22

satisfy other post-Effective Date liabilities incurred by the Liquidating Trust in accordance with the Plan.  Subject to Section 6.12 (or Section 6.13 in the case of AppPremFuels),the distributions from the Liquidating Trust shall be subject to the following provisions:

6.7.1    Interim Distribution:   Interim distributions to a Class of Claims under the Plan will occur as soon as practicable after (i) all objections to any such Claims have been resolved or reserved for, and (ii) Claims in prior classes have been paid or satisfactory reserves for payment of such Claims and other fees and/or charges required or permitted to be paid under the Plan and/or the Liquidating Trust Agreement have been made.

6.7.2    Final Distribution:    Final Distribution to Creditors under the Plan will occur as soon as practicable after (i) all of the assets (including Causes of Action) are liquidated and all proceeds of the liquidation are deposited into the Liquidating Trust or the AppPremFuels Funds, as their interests may appear, and (ii) all objections to Claims have been resolved.

6.7.3    Reporting Duties; Income Tax and Related Information:   The CLO shall file (or cause to be filed) any statements, returns or disclosures relating to the Debtors that are required by any governmental unit or applicable law, including any tax returns for the pre-Effective Date period, due from the Debtors.   The Liquidating Trustee and/or AppPremFuels Committee Counsel shall pay from the Liquidating Trust and/or the AppPremFuels Funds their respective taxes and costs of the preparation of the CLO's fiduciary tax returns.

6.7.4    Duty to Provide Tax Information by Beneficiaries of the Liquidating Trust:  The Liquidating Trustee shall be authorized to collect such tax information from the holders of beneficial interests in the Liquidating Trust (including, without limitation, social security numbers and/or other tax identification numbers) as in its sole discretion deems necessary to effectuate the Plan.  A distribution may be withheld until such time as a holder of a beneficial interest in the Liquidating Trust provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid to the appropriate authority. If a holder of a beneficial interest in the Liquidating Trust fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months from the date of first notification to the holder of a beneficial interest in the Liquidating Trust of the need for such information, then such distribution shall be treated as an unclaimed distribution in accordance with this Plan.

6.7.5    Disclaimer: The Liquidating Trustee, the AppPremFuels Committee Counsel and its agents and attorneys are under no duty to take any action to either (a) attempt to locate any Creditor, (b) obtain an executed Internal Revenue Service Form W-8 or W-9 from any Creditor, or (c) to issue IRS 1099 forms to the Creditors.

6.7.6    Monitoring of Disbursements. The Trust Committee shall have the right to monitor the collection, accounting, treatment and distribution of all proceeds by the Liquidating Trustee.  The Liquidating Trustee shall make available its books and records to

any member of the Trust Committee at any reasonable time, upon reasonable written notice; provided however, the Liquidating Trustee shall have no obligation to share any information that may be subject to any privilege or may hinder the prosecution of any Cause of Action.

6.7.7    Delivery of Distributions; Undeliverable and Unclaimed Distributions: All distributions under the Plan on Allowed Claims shall be sent to the address of a Creditor as listed on their proof of claim unless the Liquidating Trustee or the AppPremFuels Committee Counsel, as appropriate, has been notified in writing of a change of address. Six months after any distribution date, all undeliverable or unclaimed payments or distributions made to any Creditor under the Plan, including but not limited to, un-negotiated checks or drafts, shall revert to the Liquidating Trust or the AppPremFuels Funds to be redistributed pursuant to the terms of this Plan, and shall be forfeited as to the affected Creditors. Any Creditor whose payment is forfeited under this provision will thereafter be treated as having a Disallowed Claim, and the holder of any such Claim shall not be entitled to any other or further distribution under this Plan on account of such Claim.    IT SHALL BE THE RESPONSIBILITY OF EVERY CREDITOR TO KEEP THE LIQUIDATING TRUSTEE OR THE APPPREMFUELS COMMITTEE COUNSEL, AS APPROPRIATE, ADVISED OF ANY CREDITOR'S CHANGE OF ADDRESS.

6.7.8    Minimum Distributions:  If a distribution to be made to a Creditor holding an Allowed Claim would be $50.00 or less in the aggregate, notwithstanding any contrary provision of this Plan, no such distribution will be made to such holder by the Trust Committee or the AppPremFuels Committee Counsel.

6.7.9    Set Off and Recoupment Rights:  Except as specifically provided in the Plan, no Person shall retain any contractual or statutory right to set off or to recoup any asset in which the Liquidating Trust or the AppPremFuels Committee Counsel has an interest in satisfaction of that Claimant's prepetition Claim. Any right to set off or to recoup a Claim against an Asset, any asset of the Liquidating Trust or the AppPremFuels Funds that is not specifically retained by a Creditor is waived and forever barred.

6.7.10    Allocations of Distributions Between Principal and Interest:  To        the extent that any Allowed Tax Claim entitled to a distribution under the Plan by the Liquidating Trust or the AppPremFuels Committee Counsel is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest, unless otherwise specifically set forth herein.

6.7.11    No Interest on Claims:  Except as specifically provided for Section 6.7.10, interest shall not accrue on any Claims and no Claimant shall be entitled to interest accruing on or after the Petition Date from the Liquidating Trust or the AppPremFuels Funds.

6.8    [Intentionally Omitted].

6.9    Expenses of the Liquidating Trust.  The obligations and expenses of the

24

Liquidating Trust shall be funded by the Assets and any proceeds from the liquidation thereof. The Liquidating Trustee shall cause the Liquidating Trust to retain sufficient funds as reasonably necessary for the Liquidating Trust to: (a) pay the claims mentioned in Article II, supra and to meet contingent liabilities and to maintain the value of its assets during liquidation; (b) pay reasonable expenses of administering the Liquidating Trust that have been incurred (including, but not limited to, any taxes imposed on the Liquidating Trust or fees and expenses in connection with the post-Effective Date administration and liquidation of the assets of the trust); and (c) satisfy other post-Effective Date liabilities incurred by the Liquidating Trust in accordance with the Plan. Except as needed to preserve any privilege or confidential information, the Liquidating Trustee shall furnish an annual budget of said necessary expenses to members of the Trust Committee and to any Interested Party (defined as a Creditor with a beneficial interest in the Liquidating Trust whose Claim is not subject to a counterclaim or offset, and such Creditor is not involved in pending litigation with the Liquidating Trust) requesting same.

6.10    Professionals and Employees:    The Liquidating Trust, with the consent of the Trust Committee, and the AppPremFuels Committee Counsel may from time to time retain any professionals, including but not limited to, attorneys, financial advisors or accountants, as may be appropriate under the circumstances. The Liquidating Trustee and the AppPremFuels Committee Counsel shall, in the ordinary course of business and without the necessity for any approval by the Court, pay on behalf of the Liquidating Trust and AppPremFuels Committee Counsel the reasonable and necessary fees and expenses of such professionals retained by the Liquidating Trust and the AppPremFuels Committee Counsel, including but not limited to Miller, Griffin & Marks, PSC. The Liquidating Trust and AppPremFuels Committee Counsel may also hire such employees as the Liquidating Trustee and the AppPremFuels Committee Counsel deems appropriate under the circumstances.

6.11    Conflicts Between Trust and Plan.    If there arises any inconsistencies between the Liquidating Trust Agreement provisions and the provisions of the Plan, the provisions of the Plan shall control.

6.12    Termination of the Liquidating Trust. The Liquidating Trust shall terminate its existence upon the occurrence of the earlier of: (a) the liquidation, administration and distribution of its assets in accordance with the Plan and the full performance of all other duties and functions set forth in the Plan and the Liquidating Trust Agreement; or (b) the fifth anniversary of the date of the formation of the Liquidating Trust, subject to one or more finite extensions approved by the Court; but in no instance shall the Liquidating Trustee unduly prolong the existence of the Liquidating Trust.    If, at the time of termination, there are undistributed funds remaining in the Liquidating Trust and the amount of those funds does not economically justify distribution to Creditors, the Liquidating Trustee, with the consent of the Trust Committee, may distribute those remaining funds to an Internal Revenue Service qualified non-profit charity of its choice with operations in Kentucky and/or West Virginia, so long as it complies with Code §347.

6.13    Termination of the AppPremFuels Estate.    If, at the time of the final distribution of the AppPremFuels Funds, there are undistributed funds remaining and the amount of those funds does not economically justify distribution to Creditors, notwithstanding the provisions of

Code §347, the AppPremFuels Committee Counsel may distribute those remaining funds to an Internal Revenue Service qualified non-profit charity of its choice with operations in Kentucky and/or West Virginia.

6.14    Surcharge:  If any Creditor claims a security interest in the proceeds of any asset or any other cash on deposit in any of the Debtors' accounts as of the Effective Date, the Liquidating Trustee and the AppPremFuels Committee Counsel shall, pursuant to Code §506(c), be entitled to surcharge such claimed collateral for the payment of all Allowed Administrative Claims, the initial funding of the Liquidating Trust and the AppPremFuels Funds, and all subsequent costs of implementing and performing the Plan without further order of the Court.

6.15    ABC Action. Upon agreement between the Liquidating Trustee and James H. Frazier, III, in his capacity as Assignee, the ABC Action may be dismissed by the Assignee.

6.16    Transfer and Prosecution of Causes of Action.  Upon the Effective Date, all Causes of Action shall be, and hereby are transferred, reserved, retained and vested in the Liquidating Trust for the benefit of the Debtors' Creditors, for prosecution on behalf of all of the Debtors estates in the name of the Liquidating Trust. All Causes of Action shall survive and continue Post-Confirmation, free and clear of all liens, claims, interests, encumbrances, defenses of *res judicata*, waiver, laches and estoppel, for investigation, prosecution, enforcement, settlement, abandonment, adjustment, or collection by the Liquidating Trust for the benefit of the Debtors' Creditors in conformity with the terms of this Plan.

6.17    Notice to Targets of Causes of Action.  All Creditors and other parties in interests are hereby expressly advised and notified that the Liquidating Trust shall have the right to investigate, prosecute, enforce, settle, adjust, collect, or otherwise dispose of the Causes of Action.  **ALL CREDITORS, PERSONS, ENTITIES, AND OTHER PARTIES WHO RECEIVED DIRECTLY OR INDIRECTLY, PAYMENTS, OFFSETS, RECOUPMENTS AND/OR REBATES, OR TRANSFERS OF PROPERTY FROM THE DEBTORS WITHIN THE ONE (1) YEAR PERIOD PRECEDING THE PETITION DATE OR WITHIN SUCH LONGER PERIOD OF TIME AS MAY APPLY UNDER APPLICABLE LAW INCLUDING, WITHOUT LIMITATION, PERSONS INCLUDED IN THE LIST OF TARGETS OF CAUSES OF ACTION, ATTACHED AS EXHIBIT 3 TO THE DISCLOSURE STATEMENT (AND INCORPORATED HEREIN BY THIS REFERENCE, THE SAME AS IF SET FORTH AT LENGTH HEREIN), ARE HEREBY NOTIFIED THAT THEY MAY BE SUBJECT TO SUIT TO RECOVER ANY PREFERENCES, FRAUDULENT TRANSFERS, OR OTHER AVOIDABLE TRANSFERS AND TO PURSUE ANY OTHER CAUSES OF ACTION.  The inclusion in or omission of a Person in EXHIBIT 3 to the Disclosure Statement does not mean that a decision has been made to assert, or not to assert, a Cause of Action against such Person. In addition, all officers and current and former officers, directors, shareholders, members, employees, partners, investors, agents, attorneys, accountants, equity holders, responsible parties and any other professional Person of the Debtors, their affiliates, or their parents are hereby notified that they may be subject to an action under applicable law as a result of any action or inaction, decision or lack of decision or transaction or non-transaction, made or incurred pre-petition that resulted, directly or indirectly, in harm to one or more of the**

26

**Debtors. The Committee has filed lawsuits against the listed defendants as set out in Exhibit 3 to the Disclosure Statement and such claims and causes of action (as now asserted or as amended henceforth) are to be transferred, retained and enforced by the Liquidating Trust. The Committee, for the benefit of the Liquidating Trust, has also retained and preserved for enforcement and prosecution potential claims and causes of action (including, but not limited to, negligence, professional malpractice, fraud, breach of fiduciary duty, aiding & abetting breach of fiduciary duty, civil conspiracy, unjust enrichment, fee disgorgement, preference, and fraudulent transfer) against pre-petition professionals arising out of their relationship and/or engagements with the Debtors. The foregoing disclosure is intended to be descriptive and shall not be construed as a limitation on the type of action or potential targets subject to prosecution by the Committee.**

6.18    Reservation of Causes of Action Beyond Confirmation. The Debtors and the Committee specifically reserve the Causes of Action to the Liquidating Trust and expressly reserve such rights to survive beyond Confirmation, the finality of Confirmation, and all other legal effects of Confirmation, provided, however, this reservation shall not mean and shall not be construed to mean that the exclusion of any Person from Exhibit 3 in the Disclosure Statement, frees, releases or exonerates that Person from Causes of Action, and the Liquidating Trust and its attorneys shall have the right to investigate, pursue, prosecute and collect any unknown, but later discovered, Causes of Action against any Person, specifically including the right to add parties to existing adversaries as discovery in those proceedings uncovers additional parties that have received avoidable transfers or have taken acts that have harmed the Debtors.

6.19    Notice in Confirmation Order. The Court shall include in the Confirmation Order appropriate provisions incorporating the terms set forth in Sections 6.16 through 6.18, including but not limited to, the survival of the Causes of Action from the defenses of *res judicata*, waiver, laches, and estoppel; the survival of any other unknown but later discovered cause of action after Confirmation; and the approval of a grant of derivative jurisdiction for the Liquidating Trust to prosecute the Causes of Action.

6.20    Prosecution and Temporary Disallowances by Liquidating Trust. The Claims of a target of a Cause of Action shall be subject to the denial of distribution provisions set forth in Section 5.5, supra, as pertains to the distributions made by the Liquidating Trustee.

6.21    Documents and Privileges. On the Effective Date, the Debtors shall (i) irrevocably transfer, assign and deliver to the Liquidating Trust any and all the right, title and interest in and to any and all papers, documents, maps, records, files, or other communications, whether in paper of electronic format, in its possession or in the possession of its professionals or custodians; and (ii) irrevocably transfer and assign all of their respective rights, title and interests in and to any attorney client privilege, work product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) associated with the Claims and Causes of Action transferred to the Liquidation Trust (collectively, "Privileges"), all of which shall vest in the Liquidating Trustee, in trust, and, consistent with Code § 1123(b)(3)(B), for the benefit of the Liquidating Trust Beneficiaries.

6.22    Discretion to Pursue or Settle. The Liquidating Trustee, with the consent of the

Trust Committee as more fully defined in the Liquidating Trust Agreement, shall have discretion to pursue or not to pursue, to settle or not to settle, or to try or not to try, and/or to appeal or not to appeal the Causes of Action as it determines in the exercise of its business judgment and without any further approval of the Court.

6.23    Payment Over to Liquidating Trustee.    All collections of proceeds from prosecution of the Causes of Action shall be paid or turned over to the Liquidating Trustee. Pursuant to Plan Section 6.2, supra, the Liquidating Trustee shall pay or turn over to the AppPremFuels Committee Counsel the net litigation proceeds from the collections on the litigation of the Causes of Action that are attributable to AppPremFuels, as AppPremFuels' interests may appear.

6.24    Insurance Policies.  Any of the Debtors' insurance policies which provide liability or indemnity coverage to directors, officers, and/or employees with respect to all past, present or future actions, suits, and proceedings against the Debtors or their past or present directors, officers, and/or employees shall remain in full force and effect for their prescribed terms. Nothing contained herein shall constitute or be deemed a waiver of any Cause of Action that the Debtors or their respective estates may hold against any entity, including, without limitation, the insurer under any of the Debtors' policies of insurance.  Nothing in this paragraph shall be interpreted to be an indemnification or guarantee for the benefit of any defendant in the Causes of Action.

6.25    Distributions Relating to Allowed Insurance Claims.  Payments from the Debtor's insurance carrier(s) to a Claimant on an Allowed Insurance Claims shall be deemed to be in full satisfaction of such Creditor's Claim, which Claim shall be disallowed upon receipt by such Creditor of any insurance policy proceeds.  Nothing contained herein shall constitute or be deemed a waiver of any Cause of Action that the Debtors may hold against any Person, including, without limitation, insurers under any policies of insurance for any wrongful settlement or non-settlement decisions, or any reason whatsoever.

6.26    **Stay of Pending Litigation.  Except to the extent that (i) relief from stay has previously been granted or (ii) any Person waives its claim against the Liquidating Trust and/or the AppPremFuels Funds to pursue only any Insurance Claims, then on the Effective Date all prepetition lawsuits, litigation, administrative actions or other proceedings, judicial or administrative, against any of the Debtors or their Assets, shall be permanently stayed, except to the extent that such Debtors' names, as necessary parties under applicable procedural rules, may be used but the judgment shall not be collectible from the Debtors, the Committee, the Liquidating Trust, the AppPremFuels Committee or the AppPremFuels Funds.  Except as set forth in this Article, the entry of the Confirmation Order shall have no effect on any insurance coverage of the Debtors with respect to any Claim.  The Debtors, the Committee, the Liquidating Trustee and/or the AppPremFuels Committee Counsel reserve the right to seek approval and enforcement of an alternative dispute resolution process for the resolution of any Claim or Insurance Claim.  The foregoing shall not be deemed consent to such a process by the Debtors, the Committee, the Liquidating Trustee and/or the AppPremFuels Committee Counsel, or as a waiver of any**

**right to oppose the imposition of such a process by the Debtors, the Committee, the Liquidating Trustee, or the AppPremFuels Committee Counsel by any Person.**

## ARTICLE VII
## EXECUTORY CONTRACTS AND LEASES

7.1    <u>Rejection of Executory Contracts and Unexpired Leases</u>:    Except as otherwise provided in the Confirmation Order or this Plan, on the Effective Date all executory contracts and unexpired leases that existed prepetition between the Debtors and any Person shall be deemed rejected and their resulting rejection claims shall be Unsecured Claims with respect to the appropriate Debtor or Debtors.

## ARTICLE VIII
## VOTING AND REQUEST FOR PLAN CONFIRMATION

8.1    <u>Voting Procedure</u>:  ACCEPTANCE OR REJECTION OF THE PLAN WILL BE DETERMINED BASED UPON THE BALLOTS OF THE CREDITORS HOLDING ALLOWED CLAIMS THAT ACTUALLY VOTE ON THE PLAN. THEREFORE, IT IS IMPORTANT THAT CLAIMANTS EXERCISE THEIR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN.

8.2    <u>Classes Entitled to Vote on the Plan</u>: Except as otherwise provided in this Plan, all Creditors who have an Impaired Claim are entitled to vote to accept or reject the Plan.  Article IV of this Plan identifies those Classes which are or are not impaired as well as those Classes permitted to vote for or against the Plan, those Classes deemed to have accepted the Plan, and those Classes deemed to have rejected the Plan

8.3    <u>Request for Confirmation</u>:  The filing of this Plan in Court shall constitute and be treated as a motion by the Plan proponents for the Court to confirm this Plan.

## ARTICLE IX
## MISCELLANEOUS PLAN PROVISIONS

9.1    <u>Effectuating Documents; Exemption from Certain Transfer Taxes:</u>  The Debtors, the Liquidating Trust and the AppPremFuels Committee Counsel are hereby authorized to execute, deliver, file or record such documents, contracts, releases and other agreements, and take all such further action as may be necessary, to effectuate and further evidence the terms of this Plan.  Pursuant to Code §1146(c), the delivery of any instrument or transfer under, and furtherance of, or in connection with, the Plan, including but not limited to deeds, bills of sale, assignments, or other instruments of transfer, shall not be subject to any stamp tax, real estate tax, or similar transfer tax.

9.2     Closing of the Cases:  After the Effective Date, the Liquidating Trustee and the AppPremFuels Committee Counsel, as appropriate, shall expeditiously move to close the Cases or shall seek dismissal thereof, if either is so allowed by the Court.  Any closing or dismissal of any Case shall be subject to the following conditions authorized by Code § 349(b): (a) said dismissal or closing shall not alter, amend, revoke or supersede the terms of the confirmed Plan; (b) all rights of the Debtors, Creditors or any other Person treated under the Plan shall remain unaffected by said dismissal; (c) the terms of the confirmed Plan shall be binding on all Persons; (d) all orders previously entered by the Court, unless altered by the Plan, shall remain in full force and effect; and (e) the Court shall retain all jurisdiction set forth herein.

9.3     Modification of Plan:  The Debtors, the Committee and the AppPremFuels Committee may jointly propose amendments to or modifications of this Plan under Code §1127 at any time prior to the Confirmation and may jointly revoke or withdraw the Plan at any time prior to the Confirmation Hearing.  After the Effective Date, the Liquidating Trustee and the AppPremFuels Committee Counsel may jointly remedy any defects or omissions and may reconcile any inconsistencies in this Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of this Plan so long as the interests of the Creditors are not materially and adversely affected.

9.4     Sufficiency of Copies of Confirmation Order:  Upon Confirmation of this Plan, a true and correct copy of the Confirmation Order shall be legally sufficient evidence of the terms, provisions and effects of this Plan for all purposes in any subsequent judicial proceeding or official record.

9.5     Binding Effect:  The rights and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the heirs, successors, and/or assigns of such Person.

9.6     Notice of Default:  In the event of any alleged default under the Plan or the Liquidating Trust Agreement, any Claimant or party-in-interest must give a written default notice to the Liquidating Trustee and/or the AppPremFuels Committee Counsel, specifying the nature of the default.  Upon receipt of the default notice, the Liquidating Trustee and/or the AppPremFuels Committee Counsel shall have thirty (30) days thereafter to cure such default. If such default has not been cured within the applicable time period, the default may be brought to the attention of the Court for appropriate court action.

9.7     No Admissions or Waivers:  Neither the filing of this Plan or the Disclosure Statement (as either may be modified or amended) nor the taking of any action, or the failure to take any action, by the Debtors, the Committee, the AppPremFuels Committee or a Creditor with respect to the Plan or Disclosure Statement is, or shall be deemed, an admission or waiver of any of the Debtors', their estates, or the Committee's or the AppPremFuels Committee's rights or defenses.  In the event Confirmation does not occur or the Plan does not become effective, no statement contained herein or in the Disclosure Statement may be used or relied on in any manner as against the Debtors, their estates, the Committee or the AppPremFuels Committee in any suit, action, proceeding or controversy within or outside of the Bankruptcy Cases.  The Debtors, their estates, the AppPremFuels Committee and the Committee further reserve any and

30

all of their respective rights against all Persons in the event the Plan is not confirmed or does not become effective.

9.8    Quarterly Reports; Final Report:  The Liquidating Trustee shall file with the U.S. Trustee all quarterly reports until such time as the AppFuels' case is closed or dismissed and serve copies of the same on all such parties requesting a copy of same.  The AppPremFuels' Committee Counsel shall file with the U.S. Trustee all quarterly reports until such time as the AppPremFuels' case is closed or dismissed and serve copies of the same on all such parties requesting a copy of same.  Upon the termination of the Liquidating Trust, the Liquidating Trustee shall file a final report of distribution with the Court; upon the exhaustion of the AppPremFuels Funds, the AppPremFuels Committee Counsel shall file a final report of distribution with the Court.

9.9    Retiree Benefit Plans:  The Debtors have no retiree benefit plans, funds or programs as defined in Code § 1114(d), for the purpose of providing payments for retired employees and their spouses and dependants.

9.10    Reference to Pleadings:  All references to docket entries or pleadings in this Plan shall refer to docket entries in the case of Appalachian Fuels, LLC, Case No. 09-10343, except as otherwise specifically provided.

# ARTICLE X
# EFFECT OF PLAN CONFIRMATION, RELEASES, AND INJUNCTIONS/STAYS

10.1    Subordination Rights:  The classification and manner of satisfying all Claims and Interests and the respective distributions and treatments hereunder take into account and/or conform to the relative priority and rights of the Claims in each Class of the Debtors in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, Code § 510(b) or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan.  The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all persons and entities from enforcing or attempting to enforce any such contractual, legal and equitable subordination rights satisfied, compromised and settled in this manner.

10.2    **Injunctions:  Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against all Persons from taking any actions to commence or continue any action or proceeding that arose before the Effective Date against or affecting the Liquidating Trust or the Assets or against the AppPremFuels Funds.    The Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Plan except as provided for in the Plan.**

10.3    Exculpation for Post-Petition Events and Limitation of Liability:  The CLO in his capacity as CLO of the Debtors, the Committee, the AppPremFuels Committee and any of their

31

respective members and Professionals shall not have or incur any liability to, or be subject to any right of action by, the Debtors, the Liquidating Trustee, AppPremFuels Committee Counsel or any holder of a Claim or Interest, or any other party in interest or any of their respective agents, shareholders, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, (a) any act taken or omitted to be taken on or after the Petition Date, (b) the Disclosure Statement, the Plan, and the documents necessary to effectuate the Plan, (c) the solicitation of acceptances and rejections of the Plan, (d) the Debtors' Bankruptcy Cases, (e) the administration of the Plan, (f) the distribution of property under the Plan, (g) any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or the Bankruptcy Cases, or (h) any sale pursuant to or after the Plan, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain such jurisdiction over any matter arising under the Bankruptcy Code, or arising in or related to the Chapter 11 Cases or the Plan after Confirmation and after the Effective Date, and any other matter or proceeding that is within the   Court's jurisdiction pursuant to 28 U.S.C. § 1334 or 28 U.S.C. § 157, including, without limitation, jurisdiction: (a) to hear and determine all controversies relating to or concerning the classification or allowance of Claims, including Professional Fees, disputed, contingent, or unliquidated Claims; (b) to determine and fix all Claims arising from the rejection of any executory contracts or leases; (c) to hear any pending motions for rejection, assumption or assignment of any executory contract or lease and to fix and determine any amounts alleged due and owing thereunder in order to cure defaults; (d) to enable the Debtors, Committee, the AppPremFuels Committee Counsel or the Liquidating Trustee to commence all and consummate any proceedings which they may bring prior to the closing of the bankruptcy cases to set aside any liens or encumbrances, to recover any assets, or damages to which the Debtors, Committee, AppPremFuels Committee Counsel, or Liquidating Trustee may be entitled under applicable provisions of the Bankruptcy Code or other federal, state, or local law; (e) decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, including Causes of Action and objections to Claims, involving a Debtor, the Committee, or the AppPremFuels Committee that may be pending as of the Effective Date, or that may be filed by the Liquidating Trustee or the AppPremFuels Committee Counsel after the Effective Date; provided, however, the Liquidating Trustee reserves the right to prosecute Causes of Action in all proper jurisdictions; (f) to recover all Assets and properties of the Debtors, wherever located; (g) to permit amendments to the Schedules; (h) to make such orders as are necessary or appropriate to carry out the provisions of this Plan, including ruling on motions regarding the liquidation of the Assets and the AppPremFuels Funds contemplated hereunder; (i) to modify this Plan pursuant to the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure at the request of the Liquidating Trustee or the AppPremFuels Committee; (j) to hear any matters regarding interpretation, implementation or consummation of the Plan and to correct any defect, cure any

32

omission, or reconcile any inconsistency in this Plan or the Confirmation Order; (k) to decide issues concerning federal tax liability, reporting and withholding which may arise in connection with the Confirmation or consummation of this Plan; (l) to enter final decrees closing these Chapter 11 Cases.  Nothing herein limits the Court's powers under Code §105 and Bankruptcy Rule 9011.

## ARTICLE XII
## NOTICES

Except as otherwise specified, all notices and requests shall be given by any written means, including but not limited to electronic mail, facsimile, first class mail, express mail or similar overnight delivery service and hand-delivery letters, and any such notices or requests shall be deemed to have been given when received.  Notices shall be delivered as follows:

To the Liquidating Trustee:                          With a copy to:

Development Specialists, Inc                          DelCotto Law Group PLLC
Attn: William A. Brandt, Jr.                          Attn:  T. Kent Barber, Esq.
70 West Madison Street, Suite 2300                    200 North Upper Street
Chicago, IL 60602-4250                                Lexington, KY  40507
Facsimile: (312) 263-1180                             Facsimile: (859) 281-1179


To the AppPremFuels Committee Counsel:

Donald R. Rose, Esq.
Miller Griffin & Marks
271 W. Short Street, Suite 600
Lexington, KY 40507
Facsimile: (859) 259-1562


To Trust Committee:                          With a copy to:

[Committee] Member 1]                        [Counsel for Committee Member 1]

[Committee] Member 2]                        [Counsel for Committee Member 2]

[Committee] Member 3]                        [Counsel for Committee Member 3]


APPALACHIAN FUELS, LLC

APPALACHIAN HOLDING COMPANY, INC.

33

APPALACHIAN PREMIUM FUELS, LLC.

APPALACHIAN ENVIRONMENTAL, LLC.

KANAWHA DEVELOPMENT CORPORATION

APPALACHIAN COAL HOLDINGS, INC.

SOUTHERN EAGLE ENERGY, LLC.

By:   /s/ James H. Frazier, III
      CHIEF LIQUIDATING OFFICER FOR
      THE DEBTORS


THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF APPALACHIAN FUELS, LLC

By:   /s/ William H. Schwarzschild
      CHAIRMAN, COUNSEL FOR
      PHILIP MORRIS USA INC.


THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF APPALACHIAN PREMIUM
FUELS, LLC

By:   /s/ Dick Smith
      CHAIRMAN


TENDERED BY:

BUNCH & BROCK
/s/ W. Thomas Bunch, Esq.
W. Thomas Bunch, Esq.
Matthew B. Bunch, Esq.
Peter J.W. Brackney, Esq.
805 Security Trust Building
271 West Short Street
Lexington, Kentucky 40507
Telephone:  (859) 254-5522
Facsimile:   (859) 233-1434

wtb@bunchlaw.com
matt@bunchlaw.com
peter@bunchlaw.com
ATTORNEYS FOR THE DEBTOR

## CREDITORS TRUST AGREEMENT

This Creditors Trust Agreement (the "Liquidating Trust Agreement"), is being entered into as of August __, 2011, by and between Appalachian Fuels, LLC (Case No. 09-10343) ("App Fuels"), on its own behalf and together with its direct and indirect subsidiaries and affiliated entities Appalachian Holding Company, Inc. (Case No. 09-10372), Appalachian Premium Fuels, LLC (Case No. 09-10373), Appalachian Environmental, LLC (Case No. 09-10374), Kanawha Development Corporation (Case No. 09-10375), Appalachian Coal Holdings (Case No. 09-10405), Inc, and Southern Eagle Energy, LLC (Case No. 09-10406) (collectively the "Debtors"), as debtors and debtors-in-possession in the chapter 11 cases pending in the United States Bankruptcy Court for the Eastern District of Kentucky, Ashland Division (the "Bankruptcy Court"), (jointly administered as Case No. 09-10343), and Development Specialists, Inc.  solely in its capacity as trustee under this Liquidating Trust Agreement (the "Liquidating Trustee").  The Debtors', Appalachian Fuels, LLC Committee's and Appalachian Premium Fuels, LLC Committee's Joint Plan of Orderly Liquidation and Distribution (the "Plan")[1] was confirmed by the Bankruptcy Court's order, entered on the docket on August ___, 2011 [ECF No. ___] (the "Confirmation Order") and provides, *inter alia*, for:

(a)    The transfer (the "Transfer") of all right, title and interest of the Debtors in the Assets (the "Liquidating Trust Assets") to the Creditors Trust (the "Liquidating Trust") on the Effective Date for distribution to the holders of Allowed Claims of AppFuels (the "Beneficiaries") pursuant to and in accordance with this Liquidating Trust Agreement, the Plan and the Confirmation Order;

(b)    The treatment of the Transfer for federal income tax purposes as the transfer of the Liquidating Trust Assets by the Debtors to the Beneficiaries followed by the transfer of such assets by the Beneficiaries to the Liquidating Trust in exchange for their respective beneficial interests therein;

(c)    The treatment for all purposes, including federal income tax purposes, of the Beneficiaries as the deemed owners of their respective Liquidating Trust Assets and as the grantors of the Liquidating Trust;

(d)    The treatment of the Liquidating Trust as a grantor trust for federal income tax purposes;

(e)    The valuation of the Liquidating Trust Assets by the Liquidating Trustee and the use of such valuations by the Liquidating Trustee and the Beneficiaries for all federal income tax purposes;

(f)    The management of the Liquidating Trust Assets by the Liquidating Trustee; and

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings given to them in the Plan.

(g)      The distribution of the Liquidating Trust Assets or the proceeds thereof to the Beneficiaries as set forth in the Plan, the Confirmation Order and this Liquidating Trust Agreement.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order and in consideration of the mutual agreements of the parties contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

Section 1.1    <u>Purpose of the Liquidating Trust</u>.    Each Debtor and the Liquidating Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the Bankruptcy Code, applicable tax statutes, rules and regulations, to the extent incorporated in this Liquidating Trust Agreement, hereby settle the Liquidating Trust on behalf of and for the sole benefit of the Beneficiaries and for the sole purpose of liquidating the Liquidating Trust Assets and distributing the Liquidating Trust Assets or proceeds thereof to the Beneficiaries pursuant to the Plan and in accordance with Treas. Reg. § 301.7701-4(d).    The Liquidating Trust has no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the sole purpose of the Liquidating Trust.    It shall not be the objective or purpose of this Liquidating Trust to, and the Liquidating Trustee shall have no authority to, conduct a trade or business except as reasonable and necessary to, and consistent with, the liquidation of the Liquidating Trust Assets.    In particular, the Liquidating Trust, through the Liquidating Trustee, will do the following: (a) accept and place all Liquidating Trust Assets into the Liquidating Trust; (b) litigate and enforce all Causes of Action, claims and interests belonging to the Debtors, Debtors in Possession and/or the Estates in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, including without limitation, Avoidance Actions, (c) administer the Estates and Assets, (d) object to and resolve all Disputed Claims, (e) make all distributions in accordance with the Plan to the extent such distributions are to be made from the Liquidating Trust Assets including the payment of United States Trustee fees accruing in the Chapter 11 Cases after the Effective Date until the termination of the Liquidating Trust, (f) take all actions and executing all agreements, instruments, and other documents necessary to implement the provisions of the Plan, (g) retain professionals and other agents, and (h) take such steps as are reasonable and necessary to accomplish the Liquidating Trust's purpose, all as provided in, and subject to the terms and provisions of, the Plan, the Confirmation Order and this Liquidating Trust Agreement.    The Liquidating Trust Assets shall be held for the exclusive and sole benefit of the Beneficiaries and shall only be used to fund distributions to such Beneficiaries in accordance with the Plan and to fund payment of costs, fees, and expenses incurred in connection with the administration of the Liquidating Trust or the Plan.

Section 1.2    <u>Rights of Debtors</u>.    The Debtors shall have no claim to or right or interest in, whether direct, residual, contingent or otherwise, in the Liquidating Trust Assets once such assets have been transferred to the Liquidating Trust.

Section 1.3    <u>Name of the Liquidating Trust</u>.    The Liquidating Trust established hereby shall be known as the "App Fuels Creditors Trust."    In connection with the exercise of its

Section 1.4    Transfer of Assets to Create Liquidating Trust.    Effective as of the Effective Date, the Debtors hereby grant, release, transfer, convey and deliver to the Liquidating Trustee and its successors, to be held in trust and to be applied as specified in the Plan, the Confirmation Order, and this Liquidating Trust Agreement, the Liquidating Trust Assets. Through the transfer of each Estate's assets, and except as otherwise provided herein or in the Plan, such assets are Liquidating Trust Assets and the Liquidating Trust has the sole and exclusive right, title and interest in and possession of the Liquidating Trust Assets.

Section 1.5    Acceptance by Liquidating Trustee. The Liquidating Trustee hereby accepts and confirms the following: (a) the appointment to serve as Liquidating Trustee; (b) the Transfer of the Liquidating Trust Assets, and all right, title and interest therein, to the Liquidating Trust; and (c) the obligations and duties imposed on it by this Liquidating Trust Agreement.   The Liquidating Trustee agrees to receive, hold, administer and distribute the Liquidating Trust Assets and the income derived therefrom, and to reconcile, administer and satisfy Claims pursuant to the terms of the Plan, the Confirmation Order and this Liquidating Trust Agreement.

## ARTICLE II
## TERMINATION OF TRUST

Section 2.1    Maximum Term.  The Liquidating Trust shall terminate its existence upon the occurrence of the complete liquidation, administration and distribution of its assets in accordance with the Plan and the full performance of all other duties and functions set forth in the Plan and this Liquidating Trust Agreement.  Notwithstanding the foregoing, the Liquidating Trust shall terminate no later than the fifth anniversary of the Effective Date (the "Initial Liquidating Trust Term"); provided, however, that, if necessary to accomplish the liquidating purpose of the Liquidating Trust, the Liquidating Trustee may extend the term of the Liquidating Trust for up to an additional two years (the "Supplemental Liquidating Trust Term") by (a) filing a notice of its intent to extend the term of the Liquidating Trust with the Bankruptcy Court, (b) serving such notice on the United States Trustee, the Beneficiaries and the members of the Trust Committee (as defined below), (c) providing the United States Trustee, the Beneficiaries and the members of the Trust Committee at least ten days to object to the requested extension prior to the termination of the Initial Liquidating Trust Term, and (d) receiving approval for the Supplemental Liquidating Trust Term by an order of the Bankruptcy Court within six months of the beginning of the Supplemental Liquidating Trust Term.  The Liquidating Trustee may, if the Initial Liquidating Trust Term has expired, seek entry of an order from the Bankruptcy Court providing for a reinstatement and implementation of the Supplemental Liquidating Trust Term.

Section 2.2    Winding Up and Discharge of the Liquidating Trustee.  For purposes of winding up the affairs of the Liquidating Trust at its termination, the Liquidating Trustee shall continue to act as Liquidating Trustee until its duties have been fully discharged.  After doing so, the Liquidating Trustee, its agents, professionals and employees, if any, shall have no further duties or obligations hereunder, except as required by this Liquidating Trust Agreement, the Plan, the Confirmation Order or applicable law concerning the termination of a trust.

3

Section 2.3     Unclaimed Distributions.     All unclaimed payments or distributions made to any Creditor under the Plan, including but not limited to, unnegotiated checks or drafts, shall revert, after six months, to the Liquidating Trustee to be redistributed pursuant to the Plan, and shall be forfeited as to the affected Creditors.   Any Creditor whose payment is forfeited under this provision will thereafter be treated as having a Disallowed Claim.   At such time as the Liquidating Trustee has declared and made the final distribution to allowed beneficial interests in the Liquidating Trust, and when six months from that final distribution is made, any unclaimed funds shall be deemed forfeited by the creditor not claiming such funds.   Thereafter, the Liquidating Trustee shall be authorized to distribute any such remaining unclaimed funds to any not-for-profit tax exempt institution of the Liquidating Trustee's choice, so long as it complies with 11 U.S.C. §347.

## ARTICLE III
## OBLIGATIONS OF THE LIQUIDATING TRUSTEE

Section 3.1     Establishment and Maintenance of Accounts and Reserves.   On the Effective Date, or as soon thereafter as practicable, the Liquidating Trustee shall establish accounts and reserves at an institution(s) approved by the United States Trustee.   In addition, as soon as practicable after the Effective Date, the Debtors shall close all of their operating accounts and transfer the proceeds to the Liquidating Trustee to fund distributions, expenses and reserves required by the Plan, the Liquidating Trust and/or by Court Order.   Changes in the amounts maintained in any account or reserve may be made at any time thereafter in the discretion of the Liquidating Trustee in consultation with the Trust Committee.

Section 3.2     Disputed Claims Reserve.

(a)     Prior to making each of the distributions under the Plan, the Liquidating Trustee shall create and fund an account or accounts, to the extent that sufficient assets are available, with an amount of cash equal to the distributions to which holders of Disputed Claims would be entitled under the Plan as of such date if such Disputed Claims were Allowed Claims (the "Disputed Claims Reserves"); provided, however, that the Liquidating Trustee may at any time file a motion(s) pursuant to section 502(c) of the Bankruptcy Code for an order(s) estimating and limiting the amount of cash which shall be deposited in any Disputed Claims Reserves in respect of any Disputed Claims, with notice and an opportunity to be heard to the affected holders of such Disputed Claims.

(b)     After a Final Order has been entered or other final resolution has been reached with respect to any given Disputed Claim for which cash was reserved in a Disputed Claims Reserve, the balance, if any, of cash remaining in such Disputed Claims Reserve on account of such Disputed Claim, after making any distribution to which the holder of such Claims may have become entitled by virtue of such Final Order or other final resolution, shall be transferred to any other account established by the Liquidating Trustee.

Section 3.3     Use of Assets.   All cash or other property held or collected by the Liquidating Trustee shall be used solely for the purposes contemplated by the Plan or this Liquidating Trust Agreement.

4

Section 3.4    <u>Distributions</u>.  The Liquidating Trustee will distribute at least annually to the Beneficiaries the net income of the Liquidating Trust plus all net proceeds from the liquidation of the Liquidating Trust Assets in excess of the amounts reasonably necessary to maintain the value of the Liquidating Trust Assets or to meet claims or contingent liabilities (including Disputed Claims).

## ARTICLE IV
## POWERS AND DUTIES OF THE LIQUIDATING TRUSTEE

Section 4.1    <u>Duties of Liquidating Trustee</u>.  The Liquidating Trustee shall have such duties and responsibilities as are specified in the Plan, the Confirmation Order and this Liquidating Trust Agreement.

Section 4.2    <u>Authority of Liquidating Trustee</u>.    The Liquidating Trust and the Liquidating Trustee shall be vested with the property, rights, interests, and powers of the Debtors transferred to the Liquidating Trust, as specified in the Plan or the Confirmation Order.  The Liquidating Trustee shall make continuing efforts to dispose of the Liquidating Trust Assets, make timely distributions and not unduly prolong the duration of the Liquidating Trust.  The Liquidating Trustee's rights and authority include, without limitation, all of the following:

(a)    to hold legal title to any and all rights of the holders of Liquidation Trust Interests in or arising from the Liquidation Trust Assets, including, without limitation, collecting and receiving any and all money and other property belonging to the Liquidation Trust (including, without limitation, any Liquidation Trust Proceeds) and, subject to the approval of the Liquidation Trust Committee, the right to vote any claim or interest relating to a Liquidation Trust Claim in a case under the Bankruptcy Code and receive any distribution thereon;

(b)    in consultation with the Trust Committee, to perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, (i) commencing, prosecuting or settling causes of action, (ii) enforcing contracts, (iii) asserting claims, defenses, offsets and privileges, (iv) interposing and prosecuting objections to Claims and (v) asserting rights which may run with the land, or otherwise affect the rights, obligations, or property of the Debtors,

(c)    receive and hold any and all the right, title and interest in and to any and all papers, documents, maps, records, files, or other communications, whether in paper of electronic format, in the Debtors' possession or in the possession of the Debtors' professionals or custodians

(d)    receive, control, manage and dispose of all Liquidating Trust Assets for the benefit of the Beneficiaries who may receive distributions under the Plan;

(e)    act as custodian of the Liquidating Trust Assets and liquidate and reduce such assets to cash at such time as the Liquidating Trustee deems appropriate to accomplish the purpose of the Liquidating Trust, in accordance with the terms of the Plan and the Liquidating Trust Agreement;

(f)    calculate and pay all distributions required or permitted to be made from the Liquidating Trust Assets under the Plan, this Liquidating Trust Agreement and/or orders of the Bankruptcy Court;

(g)    subject to the provisions of the Plan and this Liquidating Trust Agreement, establish, fund, and/or administer the Disputed Claims Reserve and such other reserves and accounts as may be authorized by this Liquidating Trust Agreement, the Plan, or order of the Bankruptcy Court;

(h)    employ, supervise and compensate attorneys, accountants, financial advisors and other professionals or other persons retained to represent the interests of and serve on behalf of the Liquidating Trust (the "Trust Professionals") and waive any conflicts of interest as deemed necessary or appropriate in its discretion.  The Liquidating Trustee may commit the Liquidating Trust to and shall pay such Trust Professionals reasonable compensation for services rendered and expenses incurred.  A law firm or other professional shall not be disqualified from being employed by the Liquidating Trustee solely because of its current or prior retention as counsel or professional to the Debtors or the Committee in the Chapter 11 Cases;

(i)    file the tax returns described in Section 7.4 in the manner described therein;

(j)    object to, assert counterclaims to, or seek to recharacterize, reclassify or subordinate Claims filed against any of the Debtors and compromise and settle, abandon or dismiss any and all Disputed Claims in accordance with the terms of the Plan;

(k)    seek estimation of contingent or unliquidated Claims under section 502(c) of the Bankruptcy Code;

(l)    seek determination of tax liability under section 505 of the Bankruptcy Code;

(m)    prosecute, settle, dismiss, abandon or otherwise dispose of any and all Causes of Action of the Debtors or their Estates constituting Assets, including, without limitation, all Causes of Action arising under sections 510, 542 through 551 and 553 of the Bankruptcy Code in accordance with section 1123(b)(3)(B) of the Bankruptcy Code;

(n)    pay all expenses and make other necessary payments relating to the Liquidating Trust Assets;

(o)    assert or waive any privilege or defense of the Debtors related to the Liquidating Trust Assets;

(p)    seek the examination of any entity under Bankruptcy Rule 2004;

(q)    perform any and all acts necessary or appropriate for the conservation and protection of the Liquidating Trust Assets;

(r)     exercise all powers and rights, and take all actions contemplated by or provided for under this Liquidating Trust Agreement; and

(s)     take any and all other actions necessary or appropriate to implement or consummate the Plan and the provisions of this Liquidating Trust Agreement.

Section 4.3     <u>Limitations on the Liquidating Trustee</u>.  Notwithstanding anything in this Liquidating Trust Agreement to the contrary, the Liquidating Trustee, in its capacity as such, shall not do or undertake any of the following:  (i) guaranty any debt; (ii) loan Liquidating Trust Assets; (iii) purchase Liquidating Trust Assets from the Liquidating Trust; (iv) transfer Liquidating Trust Assets to another trust with respect to which the Liquidating Trustee serves as trustee; or (v) except as otherwise reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, invest Liquidating Trust Assets other than in short-term, liquid investments, such as bank demand and time deposits, short-term bank or saving institution certificates of deposit or Treasury Bills.

Section 4.4     <u>Liquidating Trustee and Conflicts of Interest</u>.  If the Liquidating Trustee determines, in the exercise of its reasonable discretion, that it has a material conflict of interest with respect to the settlement of a Claim, the resolution or prosecution of a Cause of Action, or any other matter, the Liquidating Trustee may select a designee to act on behalf of the Liquidating Trust solely with respect to such matter (the "Designee"), with such Designee's authority to act on behalf of the Liquidating Trust to terminate upon the matter's conclusion.  If the Designee files a pleading, motion or other filing with a court or tribunal on behalf of the Liquidating Trust, it shall do so in its own name as "Designee of the App Fuels Creditors Trust."

Section 4.5     <u>Register of Beneficiaries</u>.  The Debtors shall provide the Liquidating Trustee with a register of the names, addresses and amounts of Allowed Claims of the Beneficiaries (the "Register") as of the close of business on the Effective Date.  Thereafter, the Register will be maintained by the Liquidating Trustee, and changes thereto will be made upon notification proper under this Liquidating Trust Agreement submitted to the Liquidating Trustee. The Liquidating Trustee shall not be liable for relying on the accuracy of the Register, provided that he has properly maintained the Register in accordance with this Liquidating Trust Agreement.

Section 4.6     <u>Books and Records</u>.  The Liquidating Trustee also shall maintain in respect of the Liquidating Trust and the Beneficiaries, books and records relating to the Liquidating Trust Assets and income realized therefrom and the payment of expenses of and claims against or assumed by the Liquidating Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof.  Such books and records shall be maintained in a manner consistent with the Plan and this Liquidating Trust Agreement.  Except as expressly provided in this Liquidating Trust Agreement, the Plan or the Confirmation Order, nothing in the Liquidating Trust Agreement is intended to require the Liquidating Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for making any payment or distribution out of the Liquidating Trust Assets.

Section 4.7    Final Accounting of Liquidating Trustee. The Liquidating Trustee shall within ninety days after the termination of the Liquidating Trust or its resignation, removal, or liquidation (in which case, the obligation contained in this Section shall pass to the Successor Liquidating Trustee), render a final accounting containing at least the following information:

(a)    A description of the Liquidating Trust Assets and their disposition;

(b)    A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with the Liquidating Trust and the Liquidating Trust Assets during the Liquidating Trustee's term of service, including their source and nature;

(c)    Separate entries for all receipts of principal and income;

(d)    The ending balance of all Liquidating Trust Assets as of the date of the Liquidating Trustee's accounting, including the cash balance on hand and the name and location of the depository where it is kept;

(e)    All known liabilities owed by the Liquidating Trust; and

(f)    The then current Register of Allowed and Disputed Claims.

The final accounting shall be filed with the Bankruptcy Court.

## ARTICLE V
## LIABILITY OF LIQUIDATING TRUSTEE

Section 5.1    Appointment.  The Liquidating Trustee is Development Specialists, Inc. serving solely in the capacity as Liquidating Trustee of the App Fuels Creditors Trust and not otherwise.

Section 5.2    Resignation.  The Liquidating Trustee may resign by giving not less than sixty (60) days' prior written notice thereof to the Trust Committee and the United States Trustee; provided, however, that such resignation shall not become effective until the appointment and Bankruptcy Court approval of a successor Liquidating Trustee in accordance with Section 5.4 hereof.  If a Liquidating Trustee resigns from its position hereunder, subject to a final accounting, such Liquidating Trustee shall be entitled to all accrued but unpaid fees, expenses, and other compensation to the extent incurred, arising or relating to events occurring before such resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Liquidating Trustee.

Section 5.3    Removal.  At any time upon the request of the Trust Committee through a motion filed in the Bankruptcy Court, the Bankruptcy Court may remove the Liquidating Trustee, including any successor Liquidating Trustee or Designee, for cause.  For purposes of this Section 5.3, "cause" shall mean:  (a) an act of fraud, embezzlement, or theft in connection with the Liquidating Trustee's duties or in the course of its employment in such capacity, (b) the intentional wrongful damage to the Liquidating Trust Assets, (c) the intentional wrongful disclosure of confidential information of the Liquidating Trust resulting in material harm to the

Section 5.4    Appointment of Successor Liquidating Trustee.  In the event of a vacancy by reason of the closure or immediate removal of the Liquidating Trustee or prospective vacancy by reason of resignation or removal, the Trust Committee shall have the right to nominate the successor Liquidating Trustee, but the Bankruptcy Court shall be vested with final authority to appoint the successor Liquidating Trustee consistent with the best interests of the Beneficiaries of the Liquidating Trust.  Every successor Liquidating Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and the retiring Liquidating Trustee, if any, an instrument accepting such appointment subject to the terms and provisions hereof.  The successor Liquidating Trustee, without any further act, shall become vested with all the rights, powers and duties of the Liquidating Trustee; provided, however, that no Liquidating Trustee shall be liable for the acts or omissions of any prior or later Liquidating Trustee.

Section 5.5    Continuity.  The closure of Development Specialists, Inc., resignation or removal of the Liquidating Trustee shall not terminate the Liquidating Trust or revoke any existing agency (other than any agency of such Liquidating Trustee as a Liquidating Trustee) created pursuant to the Liquidating Trust Agreement or invalidate any action theretofore taken by the Liquidating Trustee, and the successor Liquidating Trustee agrees that the provisions of the Liquidating Trust Agreement shall be binding on and inure to the benefit of each successor Liquidating Trustee and all its heirs and legal and personal representatives, successors or assigns. In the event of the resignation or removal of the Liquidating Trustee, such Liquidating Trustee shall (a) execute and deliver by the effective date of its resignation or removal such documents, instruments and other writings as may be reasonably required to effect the termination of such Liquidating Trustee's capacity under this Liquidating Trust Agreement and (b) assist and cooperate in effecting the assumption of such Liquidating Trustee's obligations and functions by the successor Liquidating Trustee.  If, for any reason, the Liquidating Trustee fails to execute the documents described in clause (a) of the preceding sentence, the Bankruptcy Court may enter such orders as are necessary to effect termination of such Liquidating Trustee's capacity under this Liquidating Trust Agreement.

Section 5.6    Compensation.  The Liquidating Trustee shall be compensated on an hourly basis based on its normal and customary rates for such services and shall be entitled to reimbursement of expenses incurred.  Any Trust Professionals or agents retained or utilized by

provided, however, that the members of the Trust Committee shall have the right to be reimbursed by the Liquidating Trust for any actual and reasonable out of pocket expenses incurred in serving on the Trust Committee upon submitting proof of the incurrence of such expenses to the Liquidating Trustee. The Trust Professionals shall transmit all invoices detailing their services and expenses to each member of the Trust Committee. The Trust Committee shall have five (5) business days to notify the Trust Professional of an objection to such invoice. If no objection to the invoice is made, the Liquidating Trustee shall be authorized to remit payment to the Trust Professional. If objection is made to an invoice the Liquidating Trustee, Trust Committee, and Trust Professional shall attempt to reach an amicable resolution to the dispute, but if no resolution is made after thirty (30) days from the date such objection is made, the Trust Professional may submit the dispute to the Bankruptcy Court for determination of the appropriate amount to be paid.

Section 5.7    Indemnification; Limitation of Liability etc.

(a)    The Liquidating Trust shall indemnify and hold harmless each of (i) the Liquidating Trustee, (ii) the Trust Professionals, and (iii) each member of the Trust Committee and its/their heirs, legal representatives and permitted assigns (collectively, the "Indemnified Parties"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust Agreement, the Estates or the implementation or administration of the Plan, except to the extent it is finally determined by a final and non-appealable order of a court of competent jurisdiction that such Indemnified Party was grossly negligent or acted in bad faith or in a manner known to be not in, or opposed to, the best interests of the Beneficiaries, or, with respect to any criminal action or proceeding, had reasonable cause to believe its conduct was unlawful. To the extent the Liquidating Trust indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring and participating in the defense of the claims giving rise to the right of indemnification shall be paid from the Liquidating Trust Assets.

(b)    Each of the Indemnified Parties, whether or not acting upon the advice of counsel, shall incur no liability because of any error of law or fact, mistake of judgment or any matter or thing done or omitted under this Liquidating Trust Agreement except to the extent it is finally determined by a final and non-appealable order of a court of competent jurisdiction that such Indemnified Party was grossly negligent or acted in bad faith or known to be not in, or opposed to, the best interests of the Beneficiaries, or, with respect to any criminal action or proceeding, such Indemnified Party had reasonable cause to believe its conduct was unlawful. Anything done or suffered in good faith by an Indemnified Party in accordance with the advice

(c)        Any Person acting on behalf of Development Specialists, Inc. in its capacity as Liquidating Trustee, a Trust Professional or a member of the Trust Committee shall not be liable for acts or defaults of any other person acting at any other time in any such capacity. Each Indemnified Party shall be protected and free from liability in acting upon any notice, request, consent, certificate, declaration, guarantee, affidavit or other paper or document or signature reasonably believed by it to be genuine and to have been signed by the proper party or parties or by the party or parties purporting to have signed the same.

(d)        No provision of this Liquidating Trust Agreement shall require any Indemnified Party to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if they shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to him.

(e)        Notwithstanding anything to the contrary in this Liquidating Trust Agreement, each of the Indemnified Parties shall be entitled to deduct and withhold from the Trust's assets and any amounts otherwise payable to any Beneficiary pursuant to this Liquidating Trust Agreement such amounts as may be owed by the Liquidating Trust or the Beneficiaries to the Indemnified Parties as expenses or other liabilities under Section 5.6 or this Section 5.7.

Section 5.8      Insurance.  The Liquidating Trustee shall be authorized to obtain all reasonably necessary insurance coverage for itself and the Trust Professionals, including, but not limited to, coverage with respect to (i) any property that is or may in the future become the property of the Liquidating Trust, and (ii) the liabilities, duties and obligations of the Liquidating Trustee and the Trust Professionals (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may, at the sole option of the Liquidating Trustee, remain in effect for a reasonable period after the conclusion of the Liquidating Trustee's service, and the costs and expenses of such insurance coverage shall be an expense for which the Liquidating Trustee is entitled to reimbursement hereunder.

Section 5.9      Reliance by Liquidating Trustee.  The Liquidating Trustee may rely, and shall be fully protected in acting or refraining from acting, if it relies upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Liquidating Trustee reasonably believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of cables, telecopies, e-mails and telexes, to have been sent by the proper party or parties, and the Liquidating Trustee may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein.  The Liquidating Trustee may consult with counsel and other professionals with respect to matters in their area of expertise (and the reasonable fees and expenses of such counsel shall be an expense for which the Liquidating Trustee is entitled to reimbursement hereunder), and any advice of counsel reasonably relief upon shall be full and complete authorization and protection in respect of any action taken or not taken by the Liquidating Trustee.  The Liquidating Trustee shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon.  The

Section 5.10    <u>Reliance by Persons Dealing with the Liquidating Trustee</u>.  In the absence of actual knowledge to the contrary, any person dealing with the Liquidating Trustee shall be entitled to rely on the authority of the Liquidating Trustee to act on behalf of the Liquidating Trust and shall have no obligation to inquire into the existence of such authority.

**ARTICLE VI**
**BENEFICIARIES**

Section 6.1    <u>Beneficial Interest Only</u>.  The ownership of a beneficial interest in the Liquidating Trust shall not entitle any Beneficiary under the Liquidating Trust to any title in or to the Liquidating Trust Assets or to any right to call for a partition or division of the Liquidating Trust Assets or to require an accounting, except as specifically provided by this Liquidating Trust Agreement.

Section 6.2    <u>Evidence of Beneficial Interest</u>.  Ownership of a beneficial interest in the Liquidating Trust Assets shall not be evidenced by any certificate, security or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.

Section 6.3    <u>Registration of Beneficial Interest</u>.  The Liquidating Trustee shall cause the Register to be kept at its office or at such other place or places as may be designated by the Liquidating Trustee from time to time. The Register shall reflect the ownership of the beneficial interests of the Beneficiaries.

Section 6.4    <u>Absolute Owners</u>.  The Liquidating Trustee may deem and treat the Beneficiaries reflected as the owner of a beneficial interest on the Register as the absolute owner thereof for the purposes of receiving distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

Section 6.5    <u>Standing of Beneficiary</u>.  Except as expressly provided in the Liquidating Trust Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Liquidating Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than the Liquidating Trustee) upon or with respect to the Liquidating Trust Assets.

# ARTICLE VII
# TAXES

Section 7.1    Income Tax Treatment.   The Debtors, the Liquidating Trustee and the Beneficiaries shall treat the Liquidating Trust as a "liquidating trust" within the meaning of Treasury Regulation § 301.7701-4(d) and any comparable provision of state or local law.  For income tax purposes, the Debtors, the Trustee and the Beneficiaries shall treat the transfer of the Liquidating Trust Assets by the Debtors to the respective Beneficiaries, followed by the transfer of such assets by the Beneficiaries to the Liquidating Trust in exchange for their beneficial interests therein.  The Beneficiaries shall be treated for tax purposes as the grantors and deemed owners of their respective shares of the Liquidating Trust Assets, and shall include in their taxable incomes their allocable share of each item of the Liquidating Trust's income, gain, deduction, loss and credit.   All items shall be allocated by the Liquidating Trustee to the Beneficiaries using any reasonable allocation method.

Section 7.2    Valuation of Liquidating Trust Assets.   As soon as reasonably possible after the Effective Date, the Liquidating Trustee shall, in consultation with the Trust Committee, determine the fair market value of each Liquidating Trust Asset other than Cash based on a good faith determination and the advice of any professional retained by the Liquidating Trustee for such purpose.  The Liquidating Trustee shall then, as soon as reasonably possible after such determination, notify each Beneficiary of the value of such holder's interest in the Liquidating Trust.  The Liquidating Trustee and the Beneficiaries shall use such values consistently for all federal income tax purposes.

Section 7.3    Disputed Claims Reserve.   The Liquidating Trustee may elect to treat the Disputed Claims Reserve as a discrete trust taxed as a "disputed ownership fund" described in Treasury Regulation § 1.468B-9, in which event no item of income, gain, deduction, loss or credit attributable to the Liquidating Trust Assets held in the Disputed Claims Reserve shall be taxed to a Beneficiary unless and until such Beneficiary receives a distribution from the Disputed Claims Reserve.

Section 7.4    Tax Returns.   The Liquidating Trustee shall timely file all tax returns required to be filed by the Liquidating Trust on the basis that the Liquidating Trust is a grantor trust pursuant to Treasury Regulation § 1.671-4(a).  If the Liquidating Trustee elects to treat the Disputed Claims Reserve as a disputed ownership fund, it shall timely file all tax returns required to be filed by a disputed ownership fund.  As soon as reasonably possible after the close of each calendar year, the Liquidating Trustee shall send each Beneficiary a statement setting forth such Beneficiary's share of the Liquidating Trust's income, gain, deduction, loss and credit for the year and shall instruct the holder to report all such items on his, her or its tax return for such year and pay any tax due with respect thereto.  The Liquidating Trustee shall not prepare or file any Debtor tax return.

Section 7.5    Tax Withholding.   The Liquidating Trustee shall withhold and pay over to the appropriate taxing authority any amount required to be withheld from any payment made pursuant to this Agreement or the Plan.  Any tax withheld shall be treated as distributed to the Beneficiary for purposes of this Agreement.  The Liquidating Trustee may require that each Beneficiary certify such Beneficiary's taxpayer identification number, and that payments to such

## ARTICLE VIII
## POST-CONFIRMATION TRUST COMMITTEE

Section 8.1    <u>Creation of the Trust Committee</u>.    Immediately upon the Liquidating Trustee's entry into this Liquidating Trust Agreement, a post-confirmation trust committee for the Liquidating Trust shall come into existence (the "Trust Committee").  The Trust Committee shall consist of the following members:  _____, _____, and _____.  _____, _____, and _____shall each be entitled to one vote on matters that are presented to the Trust Committee for decision.

Section 8.2    <u>Consultation with the Trust Committee</u>.  The Liquidating Trustee shall consult with the Trust Committee from time to time concerning the administration of the Liquidating Trust Assets including, but not limited to, the prosecution or settlement of Causes of Action; <u>provided</u>, <u>however</u>, that, other than as set forth in Section 8.3 below, the Liquidating Trustee has the sole discretion to make decisions on behalf of the Liquidating Trust and is not bound to follow any recommendations made by the Trust Committee.

Section 8.3    <u>Prosecution or Settlement of Significant Causes of Action</u>.    For any Causes of Action constituting Liquidating Trust Assets involving: (a) more than $500,000, or (b) any officers, directors or other insiders of the Debtors or their respective professionals (a "Significant Cause of Action"), the Trust Committee shall have the right to approve substantial actions and decisions in connection with such Significant Causes of Action, including, but not limited to, selection of counsel and any decision to prosecute, not to prosecute or to settle any Significant Cause of Action.  If the Liquidating Trustee in good faith disagrees with the Trust Committee, the Liquidating Trustee may seek relief from the Bankruptcy Court on notice to the Trust Committee.

Section 8.4    <u>Existence of Trust Committee and Resignation of Members</u>.  The Trust Committee shall continue to exist until the termination of the Liquidating Trust, at which time the Trust Committee shall disband and shall cease to exist.  Any member of the Trust Committee may resign at any time, in which event the Liquidating Trustee shall have the option of appointing a successor member, who shall be an unsecured creditor, or representative of an unsecured creditor of the Debtors.  The provisions of Sections 5.6 and 5.7 of this Liquidating Trust Agreement shall apply to any such successor, and shall survive such resignation with respect to any former member.

## ARTICLE IX
## MISCELLANEOUS PROVISIONS

Section 9.1    <u>Definitions</u>.  Unless the context otherwise requires, a capitalized term used but not defined herein shall have the meaning given to such term in the Plan.

Section 9.2    <u>Descriptive Headings</u>.  The headings contained in this Liquidating Trust Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Liquidating Trust Agreement.

14

Section 9.3    Amendment.    This Liquidating Trust Agreement may not be amended except by an instrument executed by the Liquidating Trustee with the approval of the Trust Committee and the Bankruptcy Court following the Effective Date.

Section 9.4    Governing Law.    This Liquidating Trust Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky without regard to the rules of conflict of laws of the Commonwealth of Kentucky or any other jurisdiction.

Section 9.5    Counterparts; Effectiveness.    This Liquidating Trust Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.    This Liquidating Trust Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.

Section 9.6    Severability; Validity.    If any provision of this Liquidating Trust Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Liquidating Trust Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, and to such end, the provisions of this Liquidating Trust Agreement are agreed to be severable.

Section 9.7    No Waiver by Liquidating Trustee.    No failure by the Liquidating Trustee to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

Section 9.8    Preservation of Privilege and Defenses.    In connection with the rights, claims, and Causes of Action that constitute Liquidating Trust Assets and any objections to Disputed Claims prosecuted or resolved by the Liquidating Trustee in accordance with the Plan (including, without limitation, all defenses, counterclaims, setoffs and recoupments belonging to the Debtors), any applicable privilege or immunity of the Debtors, including, without limitation, any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral) shall vest in the Liquidating Trust.

Section 9.9    No Bond.    Notwithstanding any state law to the contrary, the Liquidating Trustee (including any successor Liquidating Trustee) shall be exempt from giving any bond or other security in any jurisdiction.

Section 9.10    Notices.    Any notice or other communication hereunder shall be in writing and shall be deemed given upon (a) confirmation of receipt of a facsimile transmission, (b) confirmed delivery by a standard overnight carrier or when delivered by hand, or (c) the expiration of five (5) Business Days after the day when mailed by registered or certified mail (postage prepaid, return receipt requested), addressed to the respective parties at the following addresses (or such other address for a party as shall be specified by like notice):

If the Liquidating Trustee, to:

Development Specialists, Inc
Attn: William A. Brandt, Jr.

70 West Madison Street, Suite 2300
Chicago, IL 60602-4250
Facsimile:  (312) 263-1180


With a copy to:

T. Kent Barber, Esq.
DelCotto Law Group PLLC
200 North Upper Street
Lexington, KY  40507
Telephone: (859) 231 5800
Facsimile:  (859) 281-1179


Section 9.11    Irrevocability. The Liquidating Trust is irrevocable.

Section 9.12    Relationship to Plan.  The Liquidating Trustee shall have full power and authority to take any action consistent with the purposes and provisions of the Plan.  However, in the event that the provisions of this Liquidating Trust Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control.

Section 9.13    Retention of Jurisdiction.   As provided in Article XI of the Plan, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including, but not limited to, interpreting and implementing the provisions of this Liquidating Trust Agreement.

Section 9.14    Successors or Assigns. The terms of the Liquidating Trust Agreement shall be binding upon, and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Liquidating Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized representatives all as of the date first above written.

APPALACHIAN FUELS, LLC

By:  _____

Title:  _____


APPALACHIAN HOLDING COMPANY, INC.

By:  _____

16

Its: _____

APPALACHIAN PREMIUM FUELS, LLC.

By: _____

Its: _____

APPALACHIAN ENVIRONMENTAL, LLC.

By: _____

Its: _____

KANAWHA DEVELOPMENT CORPORATION

By: _____

Its: _____

APPALACHIAN COAL HOLDINGS, INC.

By: _____

Its: _____

SOUTHERN EAGLE ENERGY, LLC.

By: _____

Its: _____

DEVELOPMENT SPECIALISTS, INC., SOLELY
IN ITS CAPACITY AS LIQUIDATING
TRUSTEE OF THE APP FUELS CREDITORS
TRUST

By: _____

17

William A. Brandt, Jr

Z:\Clients\Appalachian Fuels LLC\Appalachian Fuels Committee\Pleadings\Plan and Discl Statement docs\App Fuels Trust Agmt V4
20110727.doc

Article 6.16 of the Plan preserves all causes of action not expressly waived, relinquished, released, compromised or settled pursuant to the Plan. The attached list is a nonexclusive list of entities against whom the Debtors, or the Liquidation Trust, as applicable, shall retain causes of action. Failure to include an entity on the attached list shall not constitute a release of such entity and shall not indicate that causes of action against such entity have not been retained.

For avoidance of doubt, unless expressly released pursuant to the Plan in their capacities as such, entities not listed on the attached list are not released and the Debtors and the Liquidation Trust, as applicable, expressly retain all causes of action of any kind whatsoever against all such entities, including without limitation the categories of causes of action set forth below.

Failure to attribute any specific cause of action to a particular entity on the attached list shall not under any circumstance be interpreted to mean that such cause of action is not retained against such entity. All possible causes of action, including causes of action not listed below, are retained against all entities not expressly released pursuant the Plan in their capacities as such.

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Adv. Proc. No. 11-01003 | Official Committee of Unsecured Creditors v. Bowie Resources, LLC, et. al. | An action by the Committee, on behalf of the Debtors' Estates, to avoid and recover cash, valuable machinery and other assets that were fraudulently transferred to Defendants Bowie, Paonia, and Cedars in the months and years leading up to the Debtors' bankruptcy filings. In the alternative, preference claims are asserted.  The other defendants received subsequent transfers from initial transferees. | Bowie Resources, LLC; Paonia Resources, LLC; Cedars Energy, LLC; Sentinel Energy LLC; Rickmeier Advisors, Inc.; Rickmeier Partners, L.P.; Halas Energy LLC; John Siegel, Jr.; Steven Rickmeier; Greenebaum Doll & McDonald PLLC; and Minquest-Tugal Mining Company, LLC | Avoidance of fraudulent transfers under the Bankruptcy Code (actual and constructive); Avoidance of fraudulent transfers under state law (actual and constructive); Avoidance of preferential transfers under the Bankruptcy Code; Avoidance of preferential transfers under state law; Recovery of the value of the avoided transfers. |
| Adv. Proc. No. 11-01004 | Official Committee of Unsecured Creditors v. Lyndon Property Insurance Co. and Cumberland Surety, Inc. | A turnover action by the Committee, on behalf of the Debtors' Estates, to recover more than $15 million in property of the estate which is currently held by Lyndon, who has refused to return such property despite multiple requests.  Alternatively, the action seeks to recover funds fraudulently transferred from Appalachian Fuels (or in the alternative preferences).  Additionally, the action seeks to recover from Defendants Lyndon and Cumberland expenses incurred by the Debtors' estates as a result of Lyndon's insistence on proceeding in a Chapter 11 proceeding rather than a Chapter 7. | Lyndon Property Insurance Co.; Cumberland Surety, Inc. | Turnover of estate property; Avoidance of fraudulent transfers under the Bankruptcy Code (actual and constructive); Avoidance of fraudulent transfers under state law (actual and constructive); Recovery of the value of the avoided transfers; Surcharge under the Bankruptcy Code; Objection to proof of claim; Declaratory relief; Injunctive relief; Breach of contract relief; Business tort relief. |
| Adv. Proc. No. 11-01063 | Official Committee of Unsecured Creditors v. Abbott Mine Sales and Service Incorporated | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | Abbott Mine Sales and Service Incorporated | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01058 | Official Committee of Unsecured Creditors v. David Fred Adams | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | ADAMS, DAVID FRED | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Adv. Proc. No. 11-01041 | Official Committee of Unsecured Creditors of Appalachian Fuels v. Energy Coal Resources, Inc. et al | An Action by the Committee on behalf of the Debtors' Estates to recover fraudulent transfers and tort damages incurred by the Debtors as part of the overarching conspiracy by the Debtors' insiders to denude and abuse the debtors corporate form in order to enrich themselves to the detriment of the Debtors' legitimate creditors. The Action also seeks to disallow the claims of the Debtors' insiders In the alternative the action seeks to recover preferential payments made to or on behalf of the Debtors' insiders. | Larry Addington; Energy Coal Resources, Inc.; Illinois Fuel Company, LLC; Machinery Sales And Service LLC; Addington Aviation, LLC; Addington Land Company; Appalachian Machinery, Inc.; Agrosil Energy, LLC; Horsepower Leasing, LLC; Task Trucking, Inc.; Pyramid Island Development, Inc.; Midwestern Biofuels, LLC; Carbon Fuels Illinois, LLC; Big Sandy Properties, LLC; EBA Development LLC; American Reclamation Co., LLC; Gulf Coast Aggregates, LLC; Stephen Addington; Bruce Addington; Robert Addington; Erik Addington; John C. Smith; Kathy Reid; Estate Of Larry Michael Addington; Jeffery Muncy; Frank Bennett; Gregory Mason; Julie Hudson; Larry Austin Dickerson; David Jones; Gregory Stumbo; Mark Garrett Smith; Business Aircraft Leasing, Inc.; Jet Support Services, Inc.; Tristate Airport Authority; Branch Banking And Trust Co. | Breach of fiduciary duty; Aiding and abetting breach of fiduciary duty; Corporate waste; Aiding and abetting corporate waste; Unlawful distribution; Aiding and abetting unlawful distribution; Civil conspiracy; Turnover of estate property; Avoidance of fraudulent transfers under the Bankruptcy Code (actual and constructive); Avoidance of fraudulent transfers under state law (actual and constructive); Avoidance of post-petition transfers under the Bankruptcy Code; Avoidance of preferential transfers under the Bankruptcy Code; Avoidance of preferential transfers under state law; Recovery of the value of the avoided transfers; Objection to proof of claim |
| N/A | N/A | An action by the Committee on behalf of the Debtors' Estates against the Debtors former professionals to recover payments made to them for which the Debtors received no value because of the professional's fundamental unwaiveable conflict and the fact that some of the work was not performed for the Debtors, but instead the Debtors' insiders. The action also seeks to recover damages proximately caused by the professional's malpractice and aiding and abetting of other Insiders breaches of fiduciary duty. The parties have entered into a tolling agreement and are undergoing settlement discussions. The tolling agreement expires August 22, 2011. Absent a negotiated settlement by that time, the Liquidating Trustee shall sue FBT for the causes of action arising out of their representation of the Debtors. With leave of Court, FBT will be added to Adv. Proc. No. 11-01041, *Official Committee of Unsecured Creditors of Appalachian Fuels v. Energy Coal Resources, Inc., et al.* Otherwise, the complaint against FBT will be brought as a standalone action. | Frost Brown Todd, LLC; Adam Kegley; Brian Mattingly; Ron Gold; Jeff Hallos; Warren Hoffmann; Wade Jefferson; Thomas D. Flanigan; Medrith Lee Norman | Avoidance of fraudulent transfers under the Bankruptcy Code (actual and constructive); Avoidance of fraudulent transfers under state law (actual and constructive); Avoidance of preferential transfers under the Bankruptcy Code; Avoidance of preferential transfers under State law; Malpractice; Breach of fiduciary duty; Aiding and abetting breach of fiduciary duty; Aiding and abetting corporate waste; Civil conspiracy |
| Adv. Proc. No. 11-01059 | Official Committee of Unsecured Creditors v. Eddie Adams | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | ADAMS, EDDIE | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01068 | Official Committee of Unsecured Creditors v. Randy Adams | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | ADAMS, RANDY | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Adv. Proc. No. 11-01067 | Official Committee of Unsecured Creditors v. Tony & Mabel Adams | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | ADAMS, TONY & MABEL | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01018 | Official Committee of Unsecured Creditors v. AFCO Credit Corporation | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | AFCO CREDIT CORPORATION | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01046 | Official Committee of Unsecured Creditors v. Airgas-Mid America, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | AIRGAS - MID AMERICA, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01043 | Official Committee of Unsecured Creditors v. American Block Company, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | AMERICAN BLOCK COMPANY, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01080 | Official Committee of Unsecured Creditors v. Analabs, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | ANALABS, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01049 | Official Committee of Unsecured Creditors v. Appalachian Power Company | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | APPALACHIAN POWER COMPANY | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01019 | Official Committee of Unsecured Creditors v. AT&T Mobility LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | AT&T MOBILITY LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Adv. Proc. No. 11-01075 | Official Committee of Unsecured Creditors v. Atlas Copco Customer Finance USA LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | ATLAS COPCO CUSTOMER FINANCE USA LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01078 | Official Committee of Unsecured Creditors v. Big Sandy Company, L.P. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | BIG SANDY COMPANY, L.P. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01024 | Official Committee of Unsecured Creditors v. Brake Supply Company, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | BRAKE SUPPLY COMPANY, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01065 | Official Committee of Unsecured Creditors v. Bruin Body Shop | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | BRUIN BODY SHOP | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01053 | Official Committee of Unsecured Creditors v. Sandra Burnette | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | BURNETTE, SANDRA | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01052 | Official Committee of Unsecured Creditors v. BWC Trucking, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | BWC TRUCKING, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01012 | Official Committee of Unsecured Creditors v. Cananwill, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | CANANWILL, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Adv. Proc. No. 11-01073 | Official Committee of Unsecured Creditors v. Caremark, L.L.C. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | CAREMARK, L.L.C. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01064 | Official Committee of Unsecured Creditors v. CES Electrical, LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | CES ELECTRICAL, LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01050 | Official Committee of Unsecured Creditors v. Chevron U.S.A. Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | CHEVRON U.S.A. INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01079 | Official Committee of Unsecured Creditors v. Cheyenne Resources, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | Cheyenne Resources, Inc. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01035 | Official Committee of Unsecured Creditors v. Conveyor Manufacturing & Supply, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | CONVEYOR MANUFACTURING & SUPPLY, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01084 | Official Committee of Unsecured Creditors v. Dynamic Blast Solutions, LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | DYNAMIC BLAST SOLUTIONS, LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01026 | Official Committee of Unsecured Creditors v. Eagle Carbon, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | EAGLE CARBON, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Adv. Proc. No. 11-01036 | Official Committee of Unsecured Creditors v. East Kentucky Hose & Mine Supply, LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | EAST KENTUCKY HOSE & MINE SUPPLY, LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01013 | Official Committee of Unsecured Creditors v. Enterprise Fleet Management, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | ENTERPRISE FLEET MANAGEMENT, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01037 | Official Committee of Unsecured Creditors v. Ernst & Young LLP | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | ERNST & YOUNG LLP | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01048 | Official Committee of Unsecured Creditors v. Fastenal Company | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | FASTENAL COMPANY | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01061 | Official Committee of Unsecured Creditors v. Flip's Auto Repair | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | FLIP'S AUTO REPAIR | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01022 | Official Committee of Unsecured Creditors v. Fuchs Lubricants Co. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | FUCHS LUBRICANTS CO. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01034 | Official Committee of Unsecured Creditors v. GE Transportation Finance, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | GE TRANSPORTATION FINANCE, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Adv. Proc. No. 11-01083 | Official Committee of Unsecured Creditors v. Goodman, Allen & Filetti, P.L.L.C. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | GOODMAN, ALLEN & FILETTI, P.L.L.C | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01054 | Official Committee of Unsecured Creditors v. Henderson Associates | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | HENDERSON ASSOCIATES | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01074 | Official Committee of Unsecured Creditors v. Higgins Chev. Co. Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | HIGGINS CHEV. CO. INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01044 | Official Committee of Unsecured Creditors v. Industrial Supply Company of Knoxville | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | INDUSTRIAL SUPPLY COMPANY OF KNOXVILLE | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01088 | Official Committee of Unsecured Creditors v. Jet Aviation St. Louis, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | JET AVIATION ST. LOUIS, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01085 | Official Committee of Unsecured Creditors v. JPS LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | JPS LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01020 | Official Committee of Unsecured Creditors v. Kelly's Radiator Service, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | KELLY'S RADIATOR SERVICE, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Adv. Proc. No. 11-01076 | Official Committee of Unsecured Creditors v. Kentucky Power Company | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | KENTUCKY POWER COMPANY | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01023 | Official Committee of Unsecured Creditors v. Komatsu Financial Limited Partnership | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | KOMATSU FINANCIAL LIMITED PARTNERSHIP | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01042 | Official Committee of Unsecured Creditors v. Lusk Disposal Service, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | LUSK DISPOSAL SERVICE, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01062 | Official Committee of Unsecured Creditors v. M.D. Services, PLLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | M.D. SERVICES, PLLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01027 | Official Committee of Unsecured Creditors v. Marquette Equipment Finance, LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | MARQUETTE EQUIPMENT FINANCE, LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01028 | Official Committee of Unsecured Creditors v. Maxxim Rebuild Co., LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | MAXXIM REBUILD CO., LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01066 | Official Committee of Unsecured Creditors v. Bill G. Maynard | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | MAYNARD, BILL G. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Adv. Proc. No. 11-01029 | Official Committee of Unsecured Creditors v. McCoy Elkhorn Coal Corporation | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | MCCOY ELKHORN COAL CORPORATION | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01060 | Official Committee of Unsecured Creditors v. MCW Lumber Company, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | MCW LUMBER COMPANY, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01021 | Official Committee of Unsecured Creditors v. Metlife, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | METLIFE, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01055 | Official Committee of Unsecured Creditors v. Miller's Truck Washing | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | MILLER'S TRUCK WASHING | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01070 | Official Committee of Unsecured Creditors v. Mine Safety & Health Administration | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | MINE SAFETY & HEALTH ADMINISTRATION | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01015 | Official Committee of Unsecured Creditors v. Mining Service, LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | MINING SERVICE, LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01014 | Official Committee of Unsecured Creditors v. Morris Anderson & Associates, LTD. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | MORRIS ANDERSON & ASSOCIATES, LTD. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Adv. Proc. No. 11-01072 | Official Committee of Unsecured Creditors v. Mountain Aggregates, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | MOUNTAIN AGGREGATES, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01069 | Official Committee of Unsecured Creditors v. Mountaineer Mine Rescue Association, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | MOUNTAINEER MINE RESCUE ASSOCIATION, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01016 | Official Committee of Unsecured Creditors v. Nalco Company | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | NALCO COMPANY | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01071 | Official Committee of Unsecured Creditors v. Office of Surface Mining | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | OFFICE OF SURFACE MINING | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01033 | Official Committee of Unsecured Creditors v. PDQ Air, LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | PDQ AIR, LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01030 | Official Committee of Unsecured Creditors v. Peters Equipment Company, LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | PETERS EQUIPMENT COMPANY, LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01056 | Official Committee of Unsecured Creditors v. Platts | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | PLATTS | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Adv. Proc. No.11-01047 | Official Committee of Unsecured Creditors v. Riggs Machine & Fabricating, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | RIGGS MACHINE & FABRICATING, INC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01082 | Official Committee of Unsecured Creditors v. Rosen, Rosen & Hagood, LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | ROSEN, ROSEN & HAGOOD, LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01081 | Official Committee of Unsecured Creditors v. Selby, Epperly & Associates | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | SELBY, EPPERLY & ASSOCIATES | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01057 | Official Committee of Unsecured Creditors v. S.W.A.T. Security | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | S.W.A.T. SECURITY | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01017 | Official Committee of Unsecured Creditors v. Speedway LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | SPEEDWAY LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01038 | Official Committee of Unsecured Creditors v. The Hannon Company | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | THE HANNON COMPANY | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01045 | Official Committee of Unsecured Creditors v. Tri-State Bit & Supply, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | TRI-STATE BIT & SUPPLY, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Adv. Proc. No. 11-01031 | Official Committee of Unsecured Creditors v. U.S. Financial, LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | U.S. FINANCIAL, LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01032 | Official Committee of Unsecured Creditors v. Visa, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | VISA, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01086 | Official Committee of Unsecured Creditors v. West Virginia Alloys, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | WEST VIRGINIA ALLOYS, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01039 | Official Committee of Unsecured Creditors v. West Virginia Environmental Services, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | WEST VIRGINIA ENVIRONMENTAL SERVICES, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01077 | Official Committee of Unsecured Creditors v. Wham Steam Cleaning, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | WHAM STEAM CLEANING, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01051 | Official Committee of Unsecured Creditors v. Whayne Supply Company | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | WHAYNE SUPPLY COMPANY | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Adv. Proc. No. 11-01040 | Official Committee of Unsecured Creditors v. Windstream Kentucky East, LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | WINDSTREAM KENTUCKY EAST, LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Adv. Proc. No. 11-01025 | Official Committee of Unsecured Creditors v. World Fuel Services Corporation | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | WORLD FUEL SERVICES CORPORATION | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. 4-Way Trucking, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | 4-WAY TRUCKING, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. AAA Electrical Construction, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | AAA ELECTRICAL CONSTRUCTION INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Austin Powder Company | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | AUSTIN POWDER COMPANY | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Big Branch Holding Company | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | BIG BRANCH HOLDING COMPANY | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. BrickStreet Mutual Insurance Company | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | BRICKSTREET MUTUAL INSURANCE COMPANY | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. BRIJ Image & Information, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | BRIJ IMAGE & INFORMATION, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. C&M Giant Tire, LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | C&M GIANT TIRE, LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Caterpillar Financial Services Corporation | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | CATERPILLAR FINANCIAL SERVICES CORPORATION | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. Celtic Marine Corporation | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | CELTIC MARINE CORPORATION | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Delta Dental of Kentucky, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | DELTA DENTAL OF KENTUCKY, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Brian Dickerson | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | DICKERSON, BRIAN | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. First National Capital Corporation | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | FIRST NATIONAL CAPITAL CORPORATION | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Shelia J. Fraley | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | FRALEY, SHELIA J. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Hayton Glass Company | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | HAYTON GLASS COMPANY | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Jerry W. Wicker, L.S. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | JERRY W. WICKER, L.S. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Kentucky Energy Sales, LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | KENTUCKY ENERGY SALES, LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Kentucky Oil and Refining Company | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | KENTUCKY OIL AND REFINING COMPANY | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Morgan E. Michel | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | MICHEL, MORGAN E. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Mountaineer Investigations & Security, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | MOUNTAINEER INVESTIGATIONS & SECURITY, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Newbridge Services, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer. The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | NEWBRIDGE SERVICES, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Norfolk Southern Corporation | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | NORFOLK SOUTHERN CORPORATION | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Oracle America, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | ORACLE AMERICA, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Penn Virginia Operating Co., LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | PENN VIRGINIA OPERATING CO., LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Public Service Commission of West Virginia | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | PUBLIC SERVICE COMMISSION OF WEST VIRIGINIA | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Quality Magnetite, LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | QUALITY MAGNETITE, LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. R.D. Allen Belt Service, LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | R.D. ALLEN BELT SERVICE, LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Raleigh Mine and Industrial Supply, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | RALEIGH MINE AND INDUSTRIAL SUPPLY, INC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Ramco Trucking, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | RAMCO TRUCKING, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Raw Material Services, LP | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | RAW MATERIAL SERVICES, LP | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Republic Industries International, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | REPUBLIC INDUSTRIES INTERNATIONAL, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Rivereagle Corp. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | RIVEREAGLE CORP. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Robertson, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | ROBERTSON, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Rudd Equipment Company, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | RUDD EQUIPMENT COMPANY, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Service Office Supply & Printing, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transferred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | SERVICE OFFICE SUPPLY & PRINTING, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. SGS North America, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | SGS NORTH AMERICA INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Keith A. Smith | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | SMITH, KEITH A. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Standard Hydraulics, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | STANDARD HYDRAULICS, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Turner Technology, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | TURNER TECHNOLOGY, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. U.S. Bearing and Power Transmission Corporation | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | U.S. BEARING AND POWER TRANSMISSION CORPORATION | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. Universal Total Lubricants, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | UNIVERSAL TOTAL LUBRICANTS, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Vericoals, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | VERICOALS, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Wells Fargo Equuipment Finance, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | WELLS FARGO EQUIPMENT FINANCE, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Wells Fargo Insurance Services of West Virginia, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | WELLS FARGO INSURANCE SERVICES OF WEST VIRGINIA, INC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Wells Fargo Third Party Administrators, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | WELLS FARGO THIRD PARTY ADMINISTRATORS, INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Winding Gulf Coal Sales, LLC | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | WINDING GULF COAL SALES, LLC | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |
| Tolling Agreement | In re Appalachian Fuels, LLC et al. v. Worldwide Equipment, Inc. | An action by the Committee on behalf of the Debtors Estates' against the defendant which received a preferential transfer.  The action seeks to recover funds that were preferentially transerred from the Debtors to the defendant in the 90 days preceeding the filing of the Debtors' petition and/or order for relief. | WORLDWIDE EQUIPMENT INC. | Preferential Transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

| Adversary # | Case Style | Description of Case | Defendants | Causes of Action |
|---|---|---|---|---|
| N/A | N/A | The following parties were either, officers or directors of the Debtors; insiders of the Debtors; counterparties of the Debtors who may have received the Debtor's property for less than reasonable equivalent value or without valuable consideration; parties who had knowledge of the wrongful activity of the debtors; and/or parties who committed torts against the Debtors. The Debtors and the Liquidation Trust, as applicable, expressly retain all causes of action of any kind whatsoever against all of the following entities, including without limitation the categories of causes of action set forth as follows. | MSS Properties; MST Resources; Brent Tackett; Kentucky Consulting Sales; Addington Corporate Center, LLC; Addington Enterprises, Inc.; Addington Exploration, LLC; Addington International, LLC; Addington Land Company, LLC; Addington Properties LLP; Addington Racing, Inc.; Addington USA, LLC; Belize River Fruit Company Bowie Orchards, LLC; Carbon Fuels Properties, LLC; Caribbean Colors, Inc.; Caribbean Investment Group Ltd.; Caribbean Medical Holding Ltd.; Caye Chapel Ventures Ltd.; Compressus, Inc.; Consolidated Technology Corporation; DTX Technologies, LLC; Eastern Terminals Land Company, LLC; EnviroEnergy LLC; Enviropower LLC; Fountain Investments, LLC; Gulf Coast Aggregates LLC; Hannah Jo Smith Research for Leukemia Foundation, Inc.; J Lynn Ventures LLC; Larry Addington Peoples Bank Trust; Mining Machinery Services, LLC; Town Square Bank, Inc.; Town Square Financial Corporation; Ultra Energy Resources, LLC; Wabash Land Holding Company; Western Caribbean University LLC; Bowie Resources Management Partner, LLC; Energy Coal Trade, LLC; Heritage Bank; Community Trust Bank; Bill Adams; Bill Patterson; Christine L. Nickelson | Breach of fiduciary duty; Aiding and abetting breach of fiduciary duty; Corporate waste; Aiding and abetting corporate waste; Unlawful distribution; Aiding and abetting unlawful distribution; Civil conspiracy; Turnover of estate property; Avoidance of fraudulent transfers under the Bankruptcy Code (actual and constructive); Avoidance of fraudulent transfers under state law (actual and constructive); Avoidance of preferential transfers under state law; Avoidance of preferential transfers under the Bankruptcy Code; Avoidance of post-petition transfers under the Bankruptcy Code; Recovery of the value of the avoided transfers; Objection to proof of claim |

**APPALACHIAN FUELS, LLC.**
Allocation of Proceeds from Asset Sales and Cost Allocation

| | Appalachian Fuels | Appalachian Premium Fuels | TOTAL |
|---|---|---|---|
| **Sale No.1** | | | |
| Ritchie Bros. Auction Net Proceeds | $ 4,901,519 | $ 20,000 | $ 4,921,519 |
| Less: Allocation of Debtor Expenses | (1,618,099) | (6,602) | (1,624,702) |
| Less: Allocation of Professional Fees | (1,301,598) | (5,311) | (1,306,909) |
| Net Proceeds | $ 1,981,821 | $ 8,087 | $ 1,989,908 |
| **Sale No.2** | | | |
| Alloy Sale Net Proceeds | 923,721 | 1,962,908 | 2,886,629 |
| Less: Allocation of Debtor Expenses | (304,941) | (647,999) | (952,940) |
| Less: Allocation of Professional Fees | (245,294) | (521,250) | (766,544) |
| Net Proceeds | $ 373,486 | $ 793,659 | $ 1,167,145 |
| **Sale No.3** | | | |
| Dante Sale Net Proceeds | 5,343,797 | | 5,343,797 |
| Less: Allocation of Debtor Expenses | (1,764,105) | - | (1,764,105) |
| Less: Allocation of Professional Fees | (1,419,045) | - | (1,419,045) |
| Net Proceeds | $ 2,160,647 | $ - | $ 2,160,647 |
| **Sale No.4** | | | |
| Bent Mnt / Bevins Branch Sale Net Proceeds | 350,000 | | 350,000 |
| Less: Allocation of Debtor Expenses | (115,543) | - | (115,543) |
| Less: Allocation of Professional Fees | (92,943) | - | (92,943) |
| Net Proceeds | $ 141,515 | $ - | $ 141,515 |
| **Sale No.5** | | | |
| M-21/ Hannco Transaction Sale Net Proceeds | 10,000 | | 10,000 |
| Less: Allocation of Debtor Expenses | (3,301) | - | (3,301) |
| Less: Allocation of Professional Fees | (2,656) | - | (2,656) |
| Net Proceeds | $ 4,043 | $ - | $ 4,043 |
| **Sale No. 6** | | | |
| Add'l Equipment Sale Proceeds | 208,599 | 616,401 | 825,000 |
| Less: Allocation of Debtor Expenses | (68,863) | (203,488) | (272,351) |
| Less: Allocation of Professional Fees | (55,393) | (163,685) | (219,079) |
| Net Proceeds | $ 84,342 | $ 249,228 | $ 333,571 |
| **Add'l Receipts** | | | |
| Add'l Receipts | 7,728,266 | | 7,728,266 |
| Less: Allocation of Debtor Expenses | (2,551,268) | - | (2,551,268) |
| Less: Allocation of Professional Fees | (2,052,236) | - | (2,052,236) |
| Net Proceeds | $ 3,124,762 | $ - | $ 3,124,762 |
| **TOTALS** Proceeds / Receipts | $ 19,465,903 | $ 2,599,309 | $ 22,065,212 |
| Less: Allocation of Debtor Expenses | $ (6,426,120) | $ (858,089) | $ (7,284,209) |
| Less: Allocation of Professional Fees | $ (5,169,165) | $ (690,247) | $ (5,859,412) |
| Net Proceeds | $ 7,870,617 | $ 1,050,973 | $ 8,921,591 |

**Appalachian Fuels, LLC**
**Projected Liquidation Analysis Under Chapter 11 Plan\***
Prepared as of August 8, 2011

| | | Low Range<br>Estimated Liquidation<br>Value | | High Range<br>Estimated Liquidation<br>Value |
|---|---|---|---|---|
| **Distributable Assets** | | | | |
| Beginning Cash | $ | 7,870,000 | $ | 7,870,000 |
| | | | | |
| Potential Preference Recoveries\*\* | $ | 260,000 | $ | 440,000 |
| | | | | |
| Causes of Action\*\*\* | Unknown | | Unknown | |
| | | | | |
| **Total Estimated Assets** | | | | |
| | | | | |
| **Estimated Claims (subject to objections and refinement)** | | | | |
| Secured Claims | $ | 146,000 | $ | 146,000 |
| Administrative Expenses | | 100,000 | | 50,000 |
| Pre-Confirmation Professional Fees (net of retainers/escrows) | | 350,000 | | 220,000 |
| Post-Confirmation Professional Fees (estimated to Dec-2012, excluding litigation costs) | | 600,000 | | 400,000 |
| Quarterly U.S. Trustee Fees Post-Confirmation | | 50,000 | | 50,000 |
| Priority Wage & Benefit Claims | | 2,975,000 | | 1,875,000 |
| Priority Tax Claims | | 520,000 | | 400,000 |
| Other Priority Claims | | 320,000 | | 200,000 |
| | | | | |
| Total Estimated Administrative Expenses and Priority Claims | $ | 5,061,000 | $ | 3,341,000 |
| | | | | |
| Potential Available for Unsecured | $ | 3,069,000 | $ | 4,969,000 |
| | | | | |
| Estimated Unsecured Claims (subject to future objections, reclassification of<br>secured claims and deficiency claims) | $ | 288,000,000 | $ | 288,000,000 |
| | | | | |
| **Estimated Percentage Distribution** | | 1.1% | | 1.7% |

\* The primary purpose of the Projected Liquidation Analysis Under Chapter 11 Plan and the Projected Liquidation Analysis under Chapter 7 is to demonstrate that a liquidation in Chapter 11 will generate a greater return to unsecured creditors than will a liquidation in Chapter 7. This conclusion is based on the assumption that a Chapter 7 liquidation will add expense, consisting primarily of Chapter 7 trustee's fees and any additional expenses and related costs in the liquidation of the Assets and the investigation and prosecution of Causes of Action and is likely to save only the amount of United States Trustee's quarterly fees. Neither analysis is or should be relied upon to be a representation regarding the amounts that ultimately will be available for distribution to unsecured creditors. Such amounts can and likely will vary considerably depending upon numerous factors, including the amount of any recoveries from Recovery Actions and Causes of Action, the costs of litigation and collection, and the aggregate amount of Allowed Claims.

\*\* Potential Recovery Action Recoveries estimate is based on a review of transfers made during the ninety-day period preceding the bankruptcy commencement. The Committee is in the process of prosecution Recovery Actions. The allocation between the AppFuel and AppPrem Estate is allocated in the same percentage of the sale proceeds (88%/12%).

\*\*\* Notes on Causes of Action - To date, the Committee has recovered $1.1 million ($1,100,000) from litigation in adversary proceedings. The remaining claims asserted and to be asserted seek damages against all defendants and potential targets for losses proximately caused to the Estate in amounts, in the aggregate, in excess of one hundred million dollars ($100,000,000). The amounts of any and all actual recoveries from these claims currently is unknown and cannot yet be estimated. Factors that can significantly impact ultimate recoveries include, without limitation, (a) the extent and amount of any settlements; (b) risks inherent in any trials; (c) which cases are ultimately tried before any juries; (d) new case law decisions that may be handed down in various jurisdictions relating to certain anticipated defenses to claims; (e) defenses raised by, inter alia, discovery proceedings not anticipated at this time; and (f) the ability of various defendants to satisfy any judgments obtained (e.g. collectability).

**Appalachian Premium Fuels, LLC**
**Projected Liquidation Analysis Under Chapter 11 Plan***
Prepared as of August 8, 2011

| | Low Range Estimated Liquidation Value | | High Range Estimated Liquidation Value | |
|---|---|---|---|---|
| **Distributable Assets** | | | | |
| Beginning Cash | $ | 1,050,000 | $ | 1,050,000 |
| | | | | |
| Potential Preference Recoveries** | $ | 40,000 | $ | 60,000 |
| | | | | |
| Causes of Action*** | Unknown | | Unknown | |
| | | | | |
| **Total Estimated Assets** | | | | |
| | | | | |
| **Estimated Claims (subject to objections and refinement)** | | | | |
| Secured Claims | $ | 1,975,000 | $ | 1,975,000 |
| Administrative Expenses | | - | | - |
| Pre-Confirmation Professional Fees (net of retainers/escrows) | | 50,000 | | 30,000 |
| Post-Confirmation Professional Fees (estimated to Dec-2012, excluding litigation costs) | | 100,000 | | 50,000 |
| Quarterly U.S. Trustee Fees Post-Confirmation | | 7,500 | | 7,500 |
| Priority Wage & Benefit Claims | | 330,000 | | 330,000 |
| Priority Tax Claims | | 590,000 | | 590,000 |
| Other Priority Claims | | - | | - |
| | | | | |
| Total Estimated Administrative Expenses and Priority Claims | $ | 3,052,500 | $ | 2,982,500 |
| | | | | |
| Potential Available for Unsecured | $ | (1,962,500) | $ | (1,872,500) |
| | | | | |
| Estimated Unsecured Claims (subject to future objections, reclassification of secured claims and deficiency claims) | $ | 9,300,000 | $ | 9,300,000 |
| | | | | |
| **Estimated Percentage Distribution** | | 0.0% | | 0.0% |

\* The primary purpose of the Projected Liquidation Analysis Under Chapter 11 Plan and the Projected Liquidation Analysis under Chapter 7 is to demonstrate that a liquidation in Chapter 11 will generate a greater return to unsecured creditors than will a liquidation in Chapter 7. This conclusion is based on the assumption that a Chapter 7 liquidation will add expense, consisting primarily of Chapter 7 trustee's fees and any additional expenses and related costs in the liquidation of the Assets and the investigation and prosecution of Causes of Action and is likely to save only the amount of United States Trustee's quarterly fees. Neither analysis is or should be relied upon to be a representation regarding the amounts that ultimately will be available for distribution to unsecured creditors. Such amounts can and likely will vary considerably depending upon numerous factors, including the amount of any recoveries from Recovery Actions and Causes of Action, the costs of litigation and collection, and the aggregate amount of Allowed Claims.

\*\* Potential Recovery Action Recoveries estimate is based on a review of transfers made during the ninety-day period preceding the bankruptcy commencement. The Committee is in the process of prosecution Recovery Actions. The allocation between the AppFuel and AppPrem Estate is allocated in the same percentage of the sale proceeds (88%/12%).

\*\*\* Notes on Causes of Action - To date, the Committee has recovered $1.1 million ($1,100,000) from litigation in adversary proceedings. The remaining claims asserted and to be asserted seek damages against all defendants and potential targets for losses proximately caused to the Estate in amounts, in the aggregate, in excess of one hundred million dollars ($100,000,000). The amounts of any and all actual recoveries from these claims currently is unknown and cannot yet be estimated. Factors that can significantly impact ultimate recoveries include, without limitation, (a) the extent and amount of any settlements; (b) risks inherent in any trials; (c) which cases are ultimately tried before any juries; (d) new case law decisions that may be handed down in various jurisdictions relating to certain anticipated defenses to claims; (e) defenses raised by, inter alia, discovery proceedings not anticipated at this time; and (f) the ability of various defendants to satisfy any judgments obtained (e.g. collectability).