UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION

IN RE:

                                           CASE NO. 09-10343

APPALACHIAN FUELS, LLC                    CHAPTER 11

        DEBTOR

---

**POSITION STATEMENT OF LIQUIDATING TRUSTEE REGARDING APPLICATION OF THE WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIMS**

---

Comes the Liquidating Trustee of the App Fuels Creditors Trust (the "Trustee"), by counsel, and pursuant to the Court's Order [Doc. No. 2282] entered on July 15, 2013, submits the following position statement in regard to the pending application of the West Virginia Department of Environmental Protection ("WVDEP") for allowance of an administrative claim (the "Application") [Doc. No. 2067]:

## INTRODUCTION

The Trustee appreciates the opportunity afforded by the Court to explain why the Application should be summarily denied upon remand from the Bankruptcy Appellate Panel for the Sixth Circuit Court of Appeals (the "BAP"). The existing record, the BAP ruling and applicable law compel denial of the Application. This is so because the WVDEP had (and retains) the burden to prove its administrative claims by a preponderance of the evidence, yet the evidence of record does not satisfy the burden and a "second (or third) bite" of the apple is unfair and unwarranted.

The Application seeks allowance of two distinct types of claims: estimated reclamation and remediation costs under three mining permits issued to KDC (the "Reclamation Claims"), and penalties associated with permits issued to KDC and App Fuels under federal and state water

pollution laws (the "Environmental Claims").    For the Court's convenience, the Trustee is

providing a factual and procedural background of events leading up to the filing and denial of the

Application, as well as the appeal and partial remand of the denial.    Copies of relevant pleadings

are being filed as a separate appendix for the Court's convenience, due to the fact they are

scattered throughout the sizeable record in this case.

      This Court need not engage in a lengthy analysis of the Reclamation Claims if it properly

applies the burden of proof for allowance of administrative claims and distinguishes between the

holding of the BAP and its dicta.    The BAP improperly viewed this Court's prior ruling through

a summary judgment lens, when the appropriate assessment is whether or not the WVDEP met

its burden of proof.    The existence of a genuine issue of material fact is no barrier to denying the

Application, and requiring the Trustee to establish that no genuine issues of material fact exist

stands the applicable burden of proof on its head.    In light of the fact that administrative claims

are to be strictly construed, even if evidence exists which creates a genuine issue of material fact,

the Application must be denied unless the record contains proof establishing all necessary

elements of the claims by a preponderance of the evidence.

      The same standard is applicable to the Environmental Claims.    And the record fails to

establish the validity of the Environmental Claims by a preponderance of the evidence.

Although it is not clear from the Application (and it was the WVDEP's burden to prove the

specifics), it appears that the Environmental Claims a) are based on pre-petition violations; b) are

based on pre-petition obligations or consent orders; c) relate to permits which were sold under

the Sale Order No. 2; d) do not reflect actual costs incurred by the WVDEP; and e) are not

properly authenticated as evidence.    Accordingly, this Court should hold that the WVDEP did

not meet its burden to establish the Environmental Claims by a preponderance of the evidence,

and deny their allowance as administrative claims.

## JURISDICTION AND PROCEDURAL BACKGROUND

### I.  JURISDICTION AND INITIAL FILINGS

1.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

2.      On June 11, 2009, the three Petitioning Creditors, RAMCO Trucking, Inc., Philip Morris USA, Inc., and Kentucky Oil and Refining Company filed an involuntary petition for relief against Appalachian Fuels, LLC ("App Fuels") pursuant to 11 U.S.C. § 303 [Doc. No. 1].

3.      On June 26, 2009, voluntary chapter 11 petitions were filed on behalf of Appalachian Environmental, LLC (Case No. 09-10374); Appalachian Holding Company, Inc. (Case No. 09-10372); Appalachian Premium Fuels, LLC ("AppPremFuels") (Case No. 09-10373); and Kanawha Development Corporation (Case No. 09-10375) ("KDC").

4.      On June 26, 2009, App Fuels filed a motion to convert its case to a Chapter 11 case [Doc. No. 99]; on June 29, 2009, the Chapter 7 Order for Relief [Doc. No. 117] was entered; and on July 2, 2009, the Court entered an Order Converting the case to a Chapter 11 case [Doc. No. 144].

5.      On or about July 14, 2009, Unsecured Creditor Committees were appointed by the U.S. Trustee on behalf of App Fuels ("App Fuels Committee") and AppPremFuels ("AppPremFuels Committee"). [Case No. 09-10343 at Doc. No. 194 and Case No. 09-10373 at Doc. No. 15].

### II.  THE ALLOY SALE MOTION

6.      In the fall of 2009, the Debtors negotiated a sale of the assets associated with a mining complex at Alloy, West Virginia.  The Alloy Sale proposed to transfer 22 permits with total bond exposure of $15,062,112 to the A.T. Massey Coal Company.  The KDC Permits

would remain as property of KDC.  The Debtors' Sale Motion No. 2 – Alloy Complex to A.T.

Massey Coal Company (the "Alloy Sale Motion") [Doc. No. 417] provided:

> [T]o address, in part, the concerns of the West Virginia Department of Environmental Protection, the Debtors' have agreed to place in escrow (or similar financial arrangement established by the Debtors) $1,129,192 of the purchase price to address the Debtors' reclamation obligations related to these particular permits.  As a result of this arrangement, Lyndon Property Insurance Company ("Lyndon") has agreed to release the Debtors from its corresponding liability to Lyndon on these same permits.  *The net effect of this transaction is to reduce the outstanding reclamation liability of the Debtors by the full $1,129,192 and to assuage the concerns of the West Virginia Department of Environmental Protection.*

[Alloy Sale Motion, ¶ 17 (emphasis added)].

7.    During the approval process of the Alloy Sale, the Debtors responded to an

Objection of the Unsecured Creditors' Committee to Sale Motion No. 2 (the "Debtors'

Response") [Doc. No. 492] and informed the Court that an escrow fund in the amount of

$1,129,192 was negotiated by Massey and the WVDEP and that "Massey and the WVDEP

determined that $1,129,192 would be transferred from Massey to WVDEP to address the

Debtors' reclamation obligations related to particular permits" to avoid an objection to the Alloy

Sale by the WVDEP [Debtors' Response, ¶ 3].  The Debtors' Response continued:

> The Debtors are a party to the WVDEP-Massey agreement solely because the Debtors will serve as a conduit for the $1,129,192 from Massey to WVDEP; the funds were never offered to the Debtors and are not, and cannot be, a part of the Debtors' estates. The net result of this transaction is that (i) the Debtors' reclamation obligations to WVDEP are reduced by $1,129,192, (ii) *the concerns of the WVDEP as to the effect of the sale transaction on reclamation are assuaged* so that (iii) the Massey Sale can go through, subject to approval by this Court.

[Debtors' Response, ¶ 4 (emphasis added)].

8.    Counsel for WVDEP attended the hearing to approve the Alloy Sale and did not

raise an objection to the sale.  In fact, the WVDEP supported the sale and indicated that it was

pleased with the reclamation fund being established pursuant to the APA.  This was the

WVDEP's first opportunity to address the basis for the claims in the Application, and they

actively participated in the sale process and negotiated a substantial escrow payment to deal with

reclamation issues. On September 29, 2009, the Court entered Sale Order No. 2 – A.T. Massey

Coal Company (A) Approving Asset Purchase Agreement, (B) Authorizing Sale of Designated

Assets Free and Clear of All Liens, Claims, Interests and Other Encumbrances, and (c)

Authorizing Assumption and Assignment of Certain Agreements (the "Alloy Sale Order") [Doc.

No. 548].  Paragraph Q of the Alloy Sale Order provides:

> Q.      The *Debtors shall be required to place in escrow* (or a similar financial
> arrangement established by the Debtors) $1,112,692 out of the Purchase
> Price of $5,112,692, *in order to address certain reclamation obligations
> arising from mining permits*, as issued by and as due and owing to the
> West Virginia Department of Environmental Protection, but not otherwise
> included in the Purchased Assets.  As a result, Lyndon Property Insurance
> Company ("Lyndon") shall also release the Debtors from any
> corresponding liability to Lyndon related to these same permits.  For the
> reasons set forth in the Sale Motion, the earmarking of certain of the sale
> proceeds for this purpose provides a benefit to the estate.

[Alloy Sale Order, ¶ Q (emphasis added)].  The Alloy Sale Order further ordered, in part, that:

> 20.     The Debtors are hereby authorized and directed to make all payments
> required to be made pursuant to the APA.  *As contemplated by the Sale
> Motion, the Debtors shall earmark the sum of $1,129,192 for an escrow
> account (or a similar financial arrangement established by the Debtors)
> for certain reclamation obligations and is to be used to replace the bonds
> posted in the total amount of $979,172* under those permits identified and
> issued by the West Virginia Department of Environmental Protection as
> H-631, O-14-81 and O-38-84 as such permits are not a part of the
> Purchased Assets, and to make such other payments that are necessary to
> implement the Closing.

[Alloy Sale Order, ¶ 20].

## III.    PLAN, DISCLOSURE STATEMENT AND SUBSTANTIVE CONSOLIDATION

9.      On August 11, 2011, the Debtors', App Fuels Committee's and AppPremFuels

Committee's Joint Plan of Orderly Liquidation and Distribution [Doc. No. 1709] (the "Joint

Plan") was filed.  The Debtors' and Committees' Joint Disclosure Statement to Accompany Joint

Plan of Orderly Liquidation and Distribution [Doc. No. 1710] (the "Joint Disclosure Statement")

was filed the same day.

10.     On October 5, 2011, the WVDEP filed its Objections to the Joint Disclosure Statement [Doc. No. 1842].  The WVDEP argued the Joint Disclosure Statement did not address outstanding reclamation liability associated with three "unsold" KDC permits, to wit: Permit Nos. H-0631; O-14-81; and O-38-84 (the "KDC Permits").

11.     On October 7, 2011, a hearing was held to approve the Joint Disclosure Statement during which the Court ordered that an amended disclosure statement, with certain additions, be filed [Doc. No. 1854].

12.     On October 12, 2011, the Debtors', App Fuels Committee's, and AppPremFuels, Committee's First Amended Joint Plan of Orderly Liquidation and Distribution [Doc. No. 1862] (the "Amended Plan") and the Debtors' and Committees' Joint Disclosure Statement to Accompany First Amended Joint Plan of Orderly Liquidation and Distribution [Doc. No. 1863] (the "Amended Disclosure Statement") were filed

13.     On October 16, 2011, the Court entered the Order Approving the Amended Joint Disclosure Statement; Authorization to Solicit Creditors' Votes on the Joint Plan; and Notice of Confirmation Hearing Date [Doc. No. 1878].

14.     On November 29, 2011, the WVDEP filed a Motion for Substantive Consolidation [Doc. No. 1955] (the "Sub Con Motion").  This was another opportunity the WVDEP had to assert and resolve its claims – a second bite of the apple.

15.     On December 7, 2011, the WVDEP filed its Objection to Debtors' and Committees' Amended Joint Plan of Orderly Liquidation and Distribution [Doc. No. 1986] ("Plan Objection"). The Plan Objection represents yet another opportunity for the WVDEP to resolve its claims – a third bite of the apple.

16.     On December 9, 2011, the Court held a hearing to address the Sub Con Motion and various objections to the Amended Plan and Amended Disclosure Statement.  At the hearing, the WVDEP withdrew its Sub Con Motion and its Plan Objection.  The Court ruled that an agreed order of confirmation, with the signatures of objecting parties, should be tendered [Doc. No. 2001].

17.     On December 19, 2011, the Court entered the Agreed Order of Confirmation of Debtors' and Committees' Plan of Orderly Liquidation and Distribution [Doc. No. 2031] (the "Confirmation Order").  The WVDEP executed and agreed to the terms of the Confirmation Order. [Doc. No. 2031 at p. 17].

18.     The Confirmation Order states that upon the Effective Date, no substantive consolidation of the Debtors shall be deemed to occur or to have occurred and each Debtor shall be treated in its separate case in conformity with the terms of the Plan.

19.     The Amended Plan became effective on January 3, 2012 ["Effective Date"]. [Doc. No. 2031].

20.     The App Fuels Creditors Trust was established on the Effective Date. [Doc. No. 1862 at § 6.3].

## IV.     THE WVDEP APPLICATION

21.     Section 2.1.2 of the Amended Plan provides that requests for payment of administrative claims must be filed within thirty (30) days after the Effective Date.  [Doc. No. 1862]. On January 13, 2012, in conformity with the Amended Plan and the Confirmation Order, WVDEP timely filed the Application. [Doc. No. 2067].  The Application is the WVDEP's fourth opportunity to present its claims – more than any other creditor and unnecessarily consuming Trust resources which the Trustee seeks to preserve for all creditors.

22.     On February 3, 2012, the Official Committee of Unsecured Creditors of Appalachian Premium Fuels, LLC (the "App Premium Committee") and the Trustee filed their respective objections to the Application [Doc. Nos. 2101 and 2104].

23.     On February 10, 2012, the Bankruptcy Court held a hearing to discuss a proposed bifurcation procedure at which the WVDEP appeared by telephone.   [Doc. No. 2119].   The WVDEP did not object to the process proposed by the Court [Doc. No. 2223] and on February 13, 2012, the Court entered an Order setting forth a briefing schedule to resolve the threshold liability issue (the "Briefing Order") [Doc. No. 2120]. The Briefing Order clearly stated that the WVDEP's Response should be limited solely to the issue of whether the claims based on outstanding reclamation obligations are joint liabilities of Appalachian Fuels and/or Appalachian Premium Fuels.   [Doc. No. 2120, ¶ (i)].   WVDEP did not object to the Briefing Order at the hearing [Doc. No. 2223], nor did it make a subsequent request for an additional hearing.

24.     On February 24, 2012, the WVDEP filed its response to the objections filed by the App Premium Committee and the Trustee [Doc. No. 2144] and on March 5, 2012, both the App Premium Committee and the Trustee filed their replies to the WVDEP's response. [Doc. Nos. 2150 and 2151].

25.     On June 25, 2012, the Bankruptcy Court entered its Order denying the WVDEP's Application [Doc. No. 2203] (the "Denial Order").  The WVDEP filed a Notice of Appeal of the Denial Order on July 6, 2012, naming both the App Premium Committee and the Trustee as appellees.  [Doc. No. 2206].

## V.     THE APPEAL

26.     The Bankruptcy Appellate Panel for the Sixth Circuit Court of Appeals (the "BAP") docketed the appeal and assigned Case No. 12-8026 on July 6, 2012.

27.     The App Premium Committee filed a Motion to Dismiss on August 2, 2102, based on the WVDEP's failure to file a notice of appeal in the App Premium case.  The WVDEP filed a response on August 14, 2012, and on August 28, 2012, the BAP overruled the Motion to Dismiss.

28.     The WVDEP filed its initial brief on October 3, 2012; the Trustee and the App Premium Committee filed their respective briefs on October 22, 2012; and the WVDEP filed its reply brief on November 8, 2012.

29.     The BAP held oral arguments on February 12, 2013, and on April 19, 2013, issued its opinion affirming in part, and vacating and remanding in part.

30.     On May 3, 2013, both the WVDEP and the Trustee filed Motions for Rehearing with the BAP.  On May 10, 2012, the WVDEP filed its Objection to the Trustee's Motion for a Rehearing, and the Trustee and App Premium Committee filed their respective Objections to the WVDEP Motion for Rehearing.  On May 20, 2013, the BAP issued an Order denying both Motions for Rehearing.

## THE BAP OPINION

31.     The BAP decision is a reported opinion. *In re Appalachian Fuels, LLC*, 439 B.R. 1, (6th Cir. BAP 2013).  The BAP recognized the appropriate standard of review for the Denial Order was an abuse of discretion standard. *Id.,* at 6, citing *In re HNRC Dissolution Co.*, 396 B.R. 461 (6th Cir. BAP 2008).  Three possibilities exist for finding an abuse of discretion:  erroneous factual findings, erroneous legal standards, or improper application of the law.  *Id.,* citing *In re Murray, Inc.*, 392 B.R. 288 (6th Cir. BAP 2008).  To the extent the BAP vacated and remanded the Denial Order, it did so because of the use of an erroneous legal standard. *Id.,* at p. 15 ("…none of the parties properly focused on the elements needed to establish AppFuels' and AppPremFuels' liability for the reclamation obligations associated with the permits owned by

their affiliate KDC.).

32.    The BAP recognized the Application sought allowance of two distinct types of

claims: claims for costs associated with reclamation under three mining permits issued to

Kanawha Development Corporation ("KDC") governed by federal and state surface mining laws

(the "Reclamation Claims"), and claims for penalties associated with permits issued to KDC and

App Fuels itself under federal and state water pollution laws (the "Environmental Claims").

Different statutes apply to these different claims, and the Reclamation Claims deal only with

permits issued to KDC, while the Environmental Claims deal with permits issued to both App

Fuels and KDC.

33.    The BAP engaged in a lengthy and detailed recitation of the facts.  *Id.,* at pp. 6-

15.  However, the BAP did not rule that this Court made any erroneous findings of fact, nor does

the decision require any additional factual findings.  The BAP noted the parties presented the

issue of whether an evidentiary hearing was afforded, required or waived upon the initial

consideration of the Application, but did not vacate or remand on this issue.  *Id.*, at pp. 24-25.  In

fact, the BAP explained:

> What is relevant is whether the evidence **in the record** established that AppFuels
> or AppPremFuels might have operated the coal mining activities under the KDC
> Mining permits within the meaning of the SMCRA and the WVSCMRA.

*Id.,* at 24 (emphasis supplied).[1]  The Trustee submits that the use of "might have" by the BAP is

an improper modification of the WVDEP's evidentiary burden, which must affirmatively prove

by a preponderance of the evidence that AppFuels operated under the KDC Permits.  Notably,

the BAP affirmed the initial denial of liability on the Reclamation Claims as to AppPremFuels

---

[1]  The Trustee acknowledges that the BAP concluded a genuine issue of material fact existed as to "whether
AppFuels performed coal mining and reclamation operations under the KDC Mining permits."  However, that
conclusion went beyond the appropriate scope of the BAP's review once they determined an erroneous legal
standard had been used.  It is this Court's prerogative to apply the correct standard to the facts in the record and
make the determination of the WVDEP has fulfilled the required burden of proof.

on the same factual record, implying no additional evidence was necessary to apply the correct

legal standard.

34.     The Environmental Claims consist of postpetition penalties under certain KDC

and App Fuels mining permits and NPDES permits. *Id.,* at p. 7.  The gist of the BAP's basis for

remanding the previous denial of the Application as it relates to the Environmental Claims is that

this Court erred by failing to address them in the first instance once it determined no joint and

several liability existed on the Reclamation Claims.   *Id.,* at p. 30. ("…the bankruptcy court

abused its discretion when it denied administrative expense claims that were independent of the

threshold question of whether WVDEP's arguments for joint and several liability failed as a

matter of law.).  However, this is no basis for reopening the evidentiary process.  The Court can

evaluate the evidence under the appropriate legal standard to determine whether or not the

WVDEP established these claims by a preponderance of the evidence.   The record will

demonstrate it did not, and the denial of the Environmental Claims should stand on remand.

35.     The BAP summarized its ruling as follows:

To recap, we hold:

(1) that the parties and the bankruptcy court failed to properly analyze AppFuels'
and AppPremFuels' potential liability for the reclamation obligations
associated with the permits owned by their affiliate, KDC;

(2) that WVDEP's administrative expense claims against AppFuels and
AppPremFuels were properly denied to the extent claims were based on the
theory of AppFuels' and AppPremFuels' derivative liability for the debts of
their affiliate, KDC, either as a result of veil piercing under state law or
substantive consolidation under federal common law;

(3) that the bankruptcy court abused its discretion when it denied WVDEP's
administrative expense claims against AppFuels to the extent the claims were
based on the theory of AppFuels' direct liability for the reclamation
obligations associated with the permits owned by AppFuels' affiliate, KDC;

(4) that the bankruptcy court did not abuse its discretion when it denied
WVDEP's direct liability administrative expense claims against
AppPremFuels; and

(5) that the bankruptcy court also abused its discretion when it denied WVDEP's administrative expense claims against AppFuels that were independent of the threshold question of whether AppFuels should be jointly and severally liable for the reclamation obligations associated with the permits owned by its affiliate, KDC, (for example, stipulated penalties for postpetition discharges purportedly due under an administrative consent order between AppFuels and WVDEP).

36.    Moreover, the BAP ruling delineated the issues to be addressed on remand:

Upon remand, the bankruptcy court will need to determine AppFuels' liability for administrative expense claims to the extent the claims are based on the theory of

• AppFuels' direct liability for the reclamation obligations associated with the permits owned by KDC; or

• AppFuels' direct liability for other environmental obligations unrelated to the reclamation obligations associated with the permits owned by KDC (for example, stipulated penalties for postpetition discharges purportedly due under an administrative consent order between AppFuels and WVDEP).

Depending upon the bankruptcy court's ruling, the bankruptcy court may also need to address secondary issues that were not a part of its threshold determination, such as

• whether WVDEP's environmental claims are properly administrative expense claims as opposed to prepetition claims; and

• the amount of such claims.

*Id.,* at pp. 30-31.  Thus, liability is the threshold issue, followed by the nature of the claims asserted, then the amount of the claims.  A decision in favor of the Trustee at any of these junctures moots the need to address the subsequent issue.  This approach not only follows the BAP's direction, it is the most efficient method of resolution, which is critical in light of the Trustee's ongoing obligation to preserve and maximize the Estate's resource for all creditors.  Accordingly, the Trustee reserves all rights to address secondary issues such as the administrative basis for the claims and their amount pending a determination of whether or not AppFuels has liability for the claims in the first instance.

## ARGUMENT

### I.      THE BAP DISREGARDED THE PROPER STANDARD OF EVIDENCE

The BAP's remand to allow this Court to evaluate the AppFuels' direct liability for the Reclamation Claims and Environmental Claims fails to give proper weight to the WVDEP's burden of proof associated with their Application.  Simply stated, the BAP's primary criticism of the Bankruptcy Court's prior ruling was the existence of genuine issues of material fact concerning WVDEP's claims.  However, this conflates a summary judgment standard (no genuine issues of material fact) with the appropriate standard when considering administrative expense claims—a preponderance of the evidence. This shift in the evidentiary standard is of great significance because it shifts the burden of proof from the claimant who *should* have the burden (WVDEP), to the non-moving party, in this case the Trustee, to establish the absence of a genuine issue of material fact.

Section § 503(b)(1)(A) of the Bankruptcy Code grants priority status for claims that provide for "the actual, necessary costs and expenses of preserving the estate. . ."  "The purpose of [this priority] is to facilitate the rehabilitation of insolvent businesses by encouraging third parties to provide those businesses with necessary goods and services." *National Union Fire Ins. Co. v. VP Bldgs., Inc.*,  606 F.3d 835, 838 (6th Cir. 2010), quoting *In re United Trucking Service, Inc.,* 851 F.2d 159, 161 (6th Cir. 1988), citing *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir. 1976).  However, "[c]laims for administrative expenses under § 503(b) are strictly construed because priority claims reduce the funds available for creditors and other claimants." *National Union*, 606 F.3d at 838, quoting *In re Federated Dept. Stores, Inc.,* 270 F.3d 994, 1000 (6th Cir. 2001).

"[A] debt qualifies as an 'actual, necessary' administrative expense only if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the

estate." *National Union*, 606 F.3d at 838, quoting *In re Eagle-Picher Industries, Inc.,* 447 F.3d 461, 464 (6th Cir. 2006), quoting *Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.),* 126 F.3d 811, 816 (6th Cir. 1997)); see also *In re HNRC Dissolution Co.*, 343 B.R. 839 (Bankr. E.D. Ky. 2006) *aff'd,* 536 F.3d 683 (6th Cir. 2008).

The party seeking allowance of an administrative expense has the burden of demonstrating entitlement to an administrative expense priority by a preponderance of the evidence. *In re Liberty Fibers Corp.* 383 B.R. 713, 717 (Bankr. E.D. Tenn. 2008); *see also In re HNRC Dissolution Co.,* 343 B.R. 839, at 842-43. Speculation is insufficient to satisfy the preponderance of the evidence standard. *U.S. v. Storey,* 640 F.3d 739, 745 (6th Cir. 2011), citing *U.S. v. Burke,* 252 Fed.Appx. 49, 54 (6th Cir. 2007). The evidence offered by the WVDEP is not only speculative, it utterly fails to establish liability on behalf of AppFuels by a preponderance of the evidence.

It is important to note that the BAP found no abuse of discretion in this Court's previous factual findings. In fact, the BAP based its affirmance of the Denial Order as it relates to AppPremFuels on the existing record. Accordingly, the Trustee submits that had it not been for the BAP's decision to shift the evidentiary standard, the prior Court's ruling would have been upheld. This makes a determination of the appropriate evidentiary standard a critical decision by this Court.

## A.   THE PREPONDERANCE OF THE EVIDENCE DOES NOT ESTABLISH THAT APP FUELS ENGAGED IN COAL MINING ACTIVITY UNDER THE KDC PERMITS

The threshold issue on the Reclamation Claims is whether App Fuels has direct liability for them under the proper legal standard, as the permits were undeniably issued to and held by KDC and KDC only. The BAP Opinion provides as follows on this issue:

> Whether AppFuels or AppPremFuels can be held directly liable depends on the
> evidence in the record and the language of the specific environmental statutes at

issue here—the Surface Mining Control and Reclamation Act; the West Virginia Surface Coal Mining and Reclamation Act; the Federal Water Pollution Control Act Amendments of 1972, commonly referred to as the Clean Water Act; and the West Virginia Water Pollution Control Act.

*In re Appalachian Fuels, LLC,* 439 B.R. 1, 22 (6th Cir. BAP 2013).   After reviewing the applicable West Virginia and federal statutes, the BAP endeavored to apply them to the existing record.   In so doing, the BAP not only went beyond its authority on appeal, but improperly lessened the evidentiary burden born by the WVDEP.   The BAP recognized the determination should be made on the evidence in the record, but required only proof that AppFuels "might" have operated under the KDC permits.   *Id.,* at 24.   Where, as here, the elements of a claim must be established by a preponderance of the evidence, proving that AppFuels "might" have operated under the KDC permits is insufficient as a matter of law.   Accordingly, this Court should evaluate the evidence in the record under the correct evidentiary standard, and if the evidence does not establish that AppFuels operated under the KDC permits, the Reclamation Claims should be denied.

### B.   THE WVDEP HAS NOT MET ITS BURDEN TO PROVE THE VALIDITY OF THE ENVIRONMENTAL CLAIMS

The WVDEP attached two unauthenticated exhibits to the Application as evidence. Exhibit 1 is an estimate to complete reclamation and remediation under the KDC permits, and relates only to the Reclamation Claims.   Exhibit 2 consists of a four-page document titled "Blocklist Report" with AppFuels' name at the top, an additional four pages which appear to have a permit number at the top with no reference to AppFuels; and a one page document titled "DMR's not filed," which makes no reference to AppFuels.   Admittedly, the WVDEP submitted additional documentation with its Response to the Objections of AppFuels' and AppPremFuels' [Doc. No. 2144], but these documents contain a mix of a) pre-petition penalties, demands for delinquent penalties and new penalty assessments, some of which relate to permits which were

sold to the A.T. Massey Coal Co. as part of Sale No. 2;[2] b) emails from Mr. Rudolph; c) legal authorities; d) information about the various debtors from the Kentucky and West Virginia Secretary of State offices; and e) a portion of the transcript from the confirmation hearing. None of the documents related to the Environmental Claims are authenticated. Despite the plethora of paperwork submitted by the WVDEP, they have not established App Fuels' liability for, the nature of, or precise amount of the Environmental Claims. They have failed to prove these claims by a preponderance of the evidence. Rather, the documents submitted show that (1) a significant portion of the claims sought are pre-petition, and therefore cannot constitute administrative claims; and (2) WVDEP is estopped from claiming a significant portion of the claims because the agency neither sought their recover prior to transfer of the related permits, nor seeks them from the current owners of the permits.

**1. Neither pre-petition claims nor claims arising after the closing of Sale No. 2 are entitled to administrative status.**

Much of the information contained in the documents submitted by the WVDEP proves the Environmental Claims are not entitled to administrative status. First, several of the violations occurred pre-petition, and do not qualify for administrative treatment. Second, a number of the fines and assessments were imposed well after the closing of asset purchase agreements for the subject permits. As such, those fines and penalties are the responsibility of applicable purchaser. See, Asset Purchase Agreement [Doc. No. 552, Exh. A, §§ 2.3[3]; 7.2(g)[4]],

---

[2] Sale No. 2 closed on 9/30/09 [Doc. No. 576], at which time the buyer assumed responsibilities for compliance with the laws and regulations applicable to the transferred permits.

[3] "At closing, Buyer will assume only the following Liabilities and obligations of the Sellers, and no others (the "Assumed Liabilities"): (ii) all Liabilities related to the Purchased Assets for reclamation prescribed by Law, contract or otherwise."

[4] "Conditions Precedent to Performance by Buyer. (g) Reclamation Agreement with Seller, WVDEP and Buyer. Seller, WVDEP and Buyer shall enter into an agreement prior to closing whereby Seller, WVDEP and Buyer will agree to terms and provisions regarding certain permits (sic) violations and reclamation plans."

In regard to the second item in Exhibit 2 to the Application, this appears to be a list of "DMR Exceedances" for two different permits (WV1020412 and WV1015877).  Except for four entries on the last page, all occurred pre-petition.  Of the four entries on the last page, two occurred after Sale No. 2 closed, although it is not clear if this permit was transferred as part of Sale No. 2.  Surely, this does not satisfy the WVDEP's burden to establish by a preponderance of the evidence that these charges qualify for administrative claim treatment.

The last page of Exhibit 2 to the Application purports to be a list of penalties assessed for failing to file DMR's on four permits for the period from October, 2009 through September, 2011,[5] with a monthly penalty of $10,000.  First, the Trustee submits that the WVDEP has incurred no costs associated with the assessed penalties and they have in no way benefitted the AppFuels' estate.  Second, they are again unauthenticated and not valid as evidence.  Third, they appear to derive from a Consent Order between the WVDEP and AppFuels' dated April 30, 2009.  See, Doc. No. 2144, Exhibit 1, at pp. 5-12.  If so, these penalties would appear to be the result of a prepetition obligation, and accordingly would not qualify for treatment as an administrative expense.

## 2. The WVDEP should be Estopped from Asserting Claims Connected With Sale No. 2

The impact of Sale No. 2 upon the Environmental Claims merits additional attention. The Order for Relief was entered in AppFuels' case on June 29, 2009.  The motion to approve Sale No. 2 was filed on September 4, 2009 [Doc. No. 417].  After resolving numerous objections, the sale was approved on September 28, 2009 [Doc. Nos. 548, 552], and closed on September 30, 2009 [Doc. No. 576].  A cursory comparison of the Blocklist Report and the list of permits included in Sale No. 2 reveals the following permits were transferred to the A.T.

---

[5] The Trustee in no way admits that the document is valid proof for this assumption, but the assumption must be voiced in order to be refuted.

Massey Coal Company:  H063200, O301907; O304391; S300296; S300691; S300888; S303390; S304589; S600988; S602389; U300904; U301290; and U301807.  Digging a little deeper into the Blocklist Report for these specific permits reveals few, if any, assessments during the period between the Order for Relief and the closing of Sale No. 2.  As a result, liability for such assessments rests with A.T. Massey Coal Company under the terms of the Asset Purchase Agreement.

The WVDEP was an active participant in the process of approving Sale No. 2 and its participation resulted in a substantial amount of money being escrowed to deal with the KDC permits which were not transferred.  The Trustee, as successor to the Official Committee of Unsecured Creditors, relied upon the escrow of funds and the terms of the Asset Purchase Agreement as a resolution of the WVDEP's claims arising from the permits being transferred, as well as the KDC permits being retained.  As set forth above, the Order approving Sale No. 2 specifically addressed the reclamation obligations arising from the KDC permits, and the Asset Purchase Agreement addressed obligations to the WVDEP arising from the transferred permits. The Trustee would be severely prejudiced if the WVDEP was allowed to go behind the terms of Sale Order No. 2 and the Asset Purchase Agreement and be allowed an administrative claim. The facts establish a classic case of estoppel:  (1) WVDEP and the Committee were adverse in the prior proceeding; (2) the Committee (now Trustee) detrimentally relied on WVDEP's prior position; and (3) the Trustee would now be prejudiced if the opponent changed positions. *Teledyne Industries, Inc. v. NLRB*, 911 F.2d 1214 (6th Cir. 1990).  Consequently, the Environmental Claims should be disallowed as administrative claims.

Sale No. 2 was the WVDEP's first bite at AppFuels' assets, and it took a million dollar bite. The WVDEP took advantages of multiple other opportunities to enhance its recovery to the detriment of other creditors – seeking substantive consolidation, objecting to confirmation of the

Plan. Instead of taking full advantage of those opportunities, WVDEP seeks yet again to enhance its recovery through the Application. Equity and fairness, as well as the legal reasons set forth herein, demand the Application be denied.

In summary, the record does not contain valid evidence sufficient to prove the Environmental Claims by a preponderance of the evidence – the burden the WVDEP must meet. Indeed, the evidence appears to establish that many of the Environmental Claims are not entitled to administrative treatment because they are prepetition or for time periods after the transfer of permits to A.T. Massey Coal Company pursuant to Sale No. 2. To the extent the WVDEP seeks to recover from the Liquidating Trust for obligations which were assumed by A.T. Massey Coal Company, they continue their pattern of conduct seeking to diminish the assets of the Trust available to creditors who have properly documented and pursued their claims. For these reasons, among others, the Application must be denied as it relates to the Environmental Claims.

## II.    ADDITIONAL ISSUES MUST BE ADDRESSED ONLY IF LIABILITY EXISTS

The Trustee submits that this Court ruled properly in its previous determination that no liability existed against Appalachian Fuels for the Reclamation or Environmental Claims, and asks the Court to so rule in this instance. However, if the Court finds that such liability does exist, the BAP provided clear direction on the follow-up issue:  whether such claims are administrative claims or pre-petition claims. *Id.,* at 31. The BAP's recognition of this issue as one this Court "may need to address" suggests that App Fuels liability, if any, is the threshold issue to be addressed.

Not only does the BAP decision suggest addressing the remaining issues related to the Application in a particular order, logic compels it. If, and only if, the Court determines that App Fuels has liability for any portion of the various claims set forth in the Application, does their status become relevant. Although the Trustee has scratched the surface of this issue in relation to

the Environmental Claims, requiring the Trustee to address issues beyond the threshold liability

issue in depth would result in an unnecessary expenditure of limited Estate resources, to the

detriment of the creditor body.  Accordingly, the Trustee requests that this issue be preserved and

addressed only in the event the Court determines on the record before it that App Fuels has any

liability at all under the Reclamation Claims or the Environmental Claims.

There are other significant issues which may merit consideration if the Court determines

that the WVDEP met its initial preponderance of the evidence burden to establish liability.

These include, but are not limited to (i) whether the *Reading v. Brown*, 391 U.S. 471 (1968)

exception applies; (ii) whether *In re Wall Tube & Metals Products Co.*, 831 F.2d 118 (6th Cir.

1987) is applicable in this proceeding; (iii) whether the state law or regulation "is reasonably

calculated to protect the public health or safety from imminent and identifiable harm;" (iv)

whether the liability at issue arose post petition; (v) whether the failure of WVDEP to conduct

post petition work prohibits the Application; (vi) what effect that the Debtor was not operating

has on the Application; (vii) how the amounts sought by the WVDEP are affected because this

case is now post confirmation.  The Trustee reserves all rights to further address these legal

issues if the Court determines the Trust may be liable under the Application.

## III.    CLAIM AMOUNTS

The BAP also recognized this issue as one that may need to be addressed, depending on

the resolution of other, preliminary issues.  While issues of liability and claim status turn on

application of the law to evidence already in the record, the proper amount of any claim which

may be allowed (administrative or unsecured) is a fact-driven exercise.  As a result, the Trustee

would likely incur substantial costs for additional investigation, expert witnesses, etc.  To fulfill

his duty to preserve and maximize the Estate for creditors, the Trustee requests that the actual

amount of any administrative claim allowed on behalf of the WVDEP be preserved as the final

issue to be resolved, contingent upon final resolution of the preliminary issues of direct liability and claim status for both the Reclamation Claims and the Environmental Claims.

## CONCLUSION

The WVDEP had, and retains the burden of establishing each aspect and element of its claim by a preponderance of the evidence.  To the extent the BAP vacated and remanded the initial Denial Order of the Application, it did not change the applicable standard of proof, although dicta in the BAP decision attempts to do so.  The Trustee raised this flaw in his Motion for Rehearing, and is compelled to bring it to the attention of this Court to avert an unwarranted shift in the burden of proof.

The BAP decision did, however, recognize through numerous references to the record in this Court that the Application should be determined on the existing record, and that WVDEP had appropriate opportunities to submit evidence in support of the Application.  Thus, this Court should simply apply the law to the facts before it, not to determine if a genuine issue of material fact exists, but to determine if the WVDEP has established its claim by a preponderance of the evidence.  The Trustee submits that this Court should not allow WVDEP yet another opportunity to submit evidence in support of its claim. To do so would provide WVDEP with yet another in a long line of opportunities to prove its claim, which is be unfair to all other creditors who will be given a single opportunity to establish their entitlement to asserted claims.

The evidence before the Court, while voluminous, is insufficient.  It fails to establish by a preponderance of the evidence that AppFuels was involved in operating under the KDC permits, and in fact illustrates why WVDEP's application should fail.[6] As this Court previously held, the failure to establish this threshold fact precludes any imposition of direct liability, and requires

---

[6] While some portion of the evidence in support of the Environmental Claims at least refers to AppFuels, the evidence is not validly authenticated, and even a preliminary evaluation of the penalties assessed shows them to be a mix of prepetition claims, claims arising from permits transferred pursuant to Sale No. 2 for post-closing time frames, or claims which could (and should) have been resolved in conjunction with the approval and closing of Sale No. 2.

disallowance of the Reclamation Claims portion of the Application.  In short, the WVDEP has

simply not sustained its burden of proof.  Accordingly, the Trustee requests that the Application

be denied.

Respectfully submitted,

DELCOTTO LAW GROUP PLLC


/s/  Dean A. Langdon, Esq
KY Bar No. 40104
200 North Upper Street
Lexington, Kentucky 40507
Telephone:  (859) 231-5800
Facsimile:   (859) 281-1179
dlangdon@dlgfirm.com
COUNSEL FOR THE
LIQUIDATING TRUSTEE


## CERTIFICATE OF SERVICE

This document has been electronically filed and served via the Court's ECF System on
September 15, 2013.

/s/ Dean A. Langdon, Esq.
COUNSEL FOR THE
LIQUIDATING TRUSTEE

\Pleadings\WVDEP App Pos Stmt VF 20130915.doc